## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DONNY PHILLIPS,

      Plaintiff,

vs.                              Case No. 3:22-cv-00997-BJD-LLL

RICKY DIXON, in his capacity as
Secretary of the Florida Department
of Corrections, CENTURION OF
FLORIDA, LLC, MHM HEALTH
PROFESSIONALS, LLC, ALEXIS
FIGUEROA, M.D., ELIZABETH
HOLMES, BRITTNEY CANNON,
CONNIE LYNN ADAMS, SGT.
SAVONIA RICHARDSON-GRAHAM,
SGT. DEBRA ALDRIDGE, and OFCR.
TERESSA FILLMORE HAWTHORNE,

      Defendants.

_____/

## DEFENDANTS CENTURION OF FLORIDA, LLC AND MHM HEALTH PROFESSIONALS, LLC'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendants Centurion of Florida, LLC ("Centurion") and MHM Health Professionals ("MHM"), (collectively, the "Centurion Defendants") move to dismiss Plaintiff Donny Phillips's Amended Complaint.

## INTRODUCTION

This is at least the third federal lawsuit filed by Mr. Phillips in which he alleges his constitutional rights have been violated while in the custody of the Florida

1

Department of Corrections ("FDC") relating to his incontinence of bladder and bowel. *See Phillips v. Pittman*, 1:15-cv-110 (N.D. Fla.) ("*Phillips I*"), *Phillips v. Jones*, et al, 4:18-cv-139 (N.D. Fla) ("*Phillips II*"). In each lawsuit, Mr. Phillips alleges he suffered from various medical conditions causing frequent urination and incontinence requiring him to wear adult diapers. *Phillips I* at ECF No. 44 at 2; *Phillips II* at ECF No. 392 at 1. In each of these lawsuits, Mr. Phillips also alleged he was wrongfully refused, or provided insufficient medical supplies and diapers. *See, e.g., Phillips I* at ECF No. 30 (Am. Compl.) at ¶¶ 15-17, 44, 52; *Phillips II* at ECF No. 311 (Third Am. Compl.) at ¶¶ 22, 62-64, 71-72, 75.

For example, in *Phillips II*, Mr. Phillips asserted claims against Centurion of Florida, LLC ("Centurion") and certain individual providers for deliberate indifference and first amendment retaliation. The deliberate indifference claims against the individuals were ultimately dismissed because Mr. Phillips's "allegations— while serious and concerning—would not support a claim that the individuals acted with conduct worse than gross negligence." *See Phillips II* at ECF No. 310 at 15–16; *see also id.* at ECF No. 344 (confirming the same). As to Centurion, summary judgment was granted because Mr. Phillips did not "establish a policy of deliberate indifference that caused [his] injury." *See id.* at ECF No. 392 at 13–16.

Moreover, the retaliation claims against all but one of the providers were dismissed because while Mr. Phillips contended he was "denied an adequate supply of diapers," "there [was] no facts alleged that would support a finding of a causal relationship between that act and Phillips's speech." *See id.* at ECF No. 310 at 17. For

the provider who was not dismissed, there were allegations—not present in this lawsuit—in which the provider had allegedly threatened to put Mr. Phillips in confinement for complaining about being denied accommodations. *Id*. Mr. Phillips thereafter executed a Settlement Agreement and Release on February 9, 2022 (the "Settlement Agreement"), which resulted in the complete dismissal of that lawsuit. *See id*. at ECF No. 445.

In this lawsuit, Mr. Phillips again alleges that various medical and correctional personnel continue to deny him appropriate medical care and accommodations arising from his incontinence of bladder and bowel.  In a single count, Mr. Phillips alleges the Centurion Defendants violated his constitutional right to receive adequate medical care for a serious medical condition due to certain undefined policies and practices. Mr. Phillips, however, relies solely on his own experience to suggest the existence of the supposed policies or practices, which is insufficient to raise the specter of an unconstitutional custom. Because Mr. Phillips fails to plausibly allege he was injured by an unconstitutional policy, practice, or custom of the Centurion Defendants, the Amended Complaint fails to state a claim against them and must be dismissed.

## **BACKGROUND**

### **A. Allegations from Amended Complaint.**

Mr. Phillips alleges he is a chronically ill, disabled inmate who suffers from bladder and bowel incontinence. ECF No. 25 at ¶ 20. Mr. Phillips claims he was denied, or provided insufficient quantities of, pull-up diapers and other sanitary

accommodations,[1] which caused recurrent cellulitis and other skin irritations. *Id*. at ¶ 27. Generally, Mr. Phillips complains he these denials were "part of a campaign of retaliatory actions by both medical and corrections staff as punishment for [his] frequent grievances and insistence on decent treatment." *Id*. at ¶ 28.

Mr. Phillips, however, acknowledges he received diapers and sanitary supplies at various times while at Suwanee. *See generally id.* For example, Mr. Phillips alleges he received diapers on November 9, 10, and 11, 2020, and received 12 diapers on November 13, 2020. *Id*. at ¶ 43(g-j); *see also id.* at ¶ 50 (admitting he receives diapers, but prefers pull-ups). He also alleges he was "*frequently* given diapers," although he claimed they were "too big or too small." *Id*. at ¶ 51 (emphasis added). He also acknowledges he was given a 4-ounce cleanser to address his condition; although he preferred an 8-ounce cleanser. *Id*. at ¶ 72. Finally, he admits he was given Bacitracin ointment and antibiotics for his cellulitis. *Id*. at ¶¶ 73, 82.

As to the Centurion Defendants, the allegations are scant. Mr. Phillips generally alleges the Centurion Defendants "cover[ed] up Plaintiff's serious medical impairments and hid[] his issues in his medical records to minimize the services he receive[d]." ECF No. 25 at ¶ 55. He also alleges the following eight different policies and practices exist "at FDC":

> (a) commonly disregard reports by patients of objectively serious symptoms or fabricate reports;
> (b) refuse to provide adequate treatment to patients;
> (c) refuse to provide medication, medical devices, and lab work;

---

[1] These sanitary accommodations include wipes, antiseptic soap, and barrier creams. ECF No. 25 at ¶ 52.

(d) fail to create sensible treatment plans for patients whose health status requires the same;
(e) fail to ensure continuity of care;
(f) prioritize profits at the expense of constitutionally adequate care;
(g) fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; and
(h) refuse and/or fail to provide any medical care whatsoever for defined medical problems.

*Id.* at ¶ 112.

Mr. Phillips also claims the Centurion Defendants "failed to provide adequate training and supervision" of healthcare providers. *Id.* at ¶ 113. Mr. Phillips cites no facts supporting the existence of these policies or failures to train and supervise. *Id.* And he does not allege how any of the supposed policies, customs, and practices referenced in the Amended Complaint, or the alleged failure to train and supervise, caused alleged violations of the Eighth Amendment. *See generally id.*

Lastly, Mr. Phillips alleges the Centurion Defendants violated his constitutional rights "through the actions and failures to act by individuals with final policymaking authority for them." *Id.* at ¶ 116. Mr. Phillips does not identify what individuals allegedly exercised final policymaking authority on behalf of the Centurion Defendants, or what actions of such unidentified final policymakers violated Mr. Phillips's Eighth Amendment rights.

## MOTION TO DISMISS STANDARD

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be construed

in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). When a plaintiff proceeds pro se, the court must liberally construe the allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*

## **ARGUMENT**

Mr. Phillips's claim against the Centurion Defendants (Count II) must be dismissed for three reasons. *First,* his claim is barred by the Settlement Agreement he entered into during the 2018 Lawsuit. *Second*, Mr. Phillips failed to exhaust his administrative remedies. And *third*, he failed to adequately plead a policy, practice, or custom of the Centurion Defendants violated his Eighth Amendment rights.

I.    **Mr. Phillips' claim against the Centurion Defendants is barred by the Settlement Agreement.**

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, "the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, Case No: 2:19-cv-35-FtM-29UAM, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement.").

Consequently, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. So, when determining the res judicata effect of a settlement agreement, Courts should "attempt to effectuate the parties' intent," which requires Courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id.* at 1290.

In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod*, 550 F. App'x at 812 (11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that res judicata determination in cases of dismissal pursuant to a settlement agreement is governed by "traditional rules of contract interpretation"). Chief among the rules of contract interpretation, of course, is that the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis. *Norfolk*, 371 F.3d at 1290 ("Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document ...."); *see also Sherrod*, 550 F. App'x at 812

("Under Florida law, '[w]ords in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

Here, the intent to preclude the claims now asserted in this suit is readily ascertainable from the Settlement Agreement. The Settlement Agreement contains a broad release of all claims "that were or could have been asserted against RELEASEE" in the 2018 Lawsuit.[2] The term "releasee" is broadly defined to include Centurion and its employees and agents. Mr. Phillips agreed to "release all claims against any provider with prejudice . . . ." And, Mr. Phillips agreed to "indemnify, defend, and hold harmless RELEASEE against any and all past, present, and future claim . . . arising from the claims in [2018 Lawsuit]."

The term "releasee" is broadly defined to include Centurion and its parent companies and co-subsidiaries. In the Amended Complaint, Centurion and MHM are described as co-subsidiaries of the parent company, Centene Corporation. ECF No. 25 at ¶¶ 10–11. As such, both Centurion and MHM are released under the Settlement Agreement.

The Settlement Agreement from the 2018 Lawsuit was entered into by Mr. Phillips on February 9, 2022, and a stipulation of dismissal with prejudice was entered two days later. Now, in this suit, Mr. Phillips alleges he was denied proper sanitary

---

[2] The Settlement Agreement's confidentiality provision permits the disclosure of the agreement's terms to the extent necessary to establish that a particular dispute was resolved. The Settlement Agreement will be provided upon request should the Court choose to conduct an *in camera* review.

accommodations upon his transfer to Suwanee C.I. on October 15, 2020. ECF No. 25 at ¶ 43. The conduct at issue in this suit arose almost a year and half before the Settlement Agreement was executed. Mr. Phillips could and should have raised these claims against Centurion during the 2018 Lawsuit.

Instead, by filing this lawsuit, Mr. Phillips has demonstrated he is intent on engaging in a piecemeal, never-ending chain of lawsuits revolving around the same general complaint about the quantity and type of supplies he believes is necessary address his incontinence of bladder and bowel. The 2018 Lawsuit was resolved to end both that lawsuit and prevent future claims against the Centurion Defendants. *See Farese v. Scherer*, 297 F. App'x 923, 926 (11th Cir. 2008) ("Florida law allows releases of liability for future [] conduct, if the release explicitly states that it covers future conduct." (citing *Zinz v. Concordia Props., Inc.*, 694 So.2d 120, 121 (Fla. Dist. Ct. App. 1997)).

Mr. Phillips cannot proceed on claims he already settled. *Sherrod*, 550 F. App'x at 812 ("[O]nce a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places upon him." (quoting *Fineberg v. Kline*, 542 So.2d 1002, 1004 (Fla. Dist. Ct. App. 1988)). The claims against Centurion Defendants are precluded by the Settlement Agreement.

## II.    **Mr. Phillips failed to exhaust his administrative remedies.**

Mr. Phillips did not fully exhaust his claims. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is a strictly interpreted and mandatory "precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000)

(per curiam); *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (explaining the PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion").

Proper exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citations omitted). While the process may "vary from system to system and claim to claim … it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

FDC's grievance procedure is detailed in Florida Administrative Code Section 33-103. It requires prisoners to: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the [FDC]." *Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015). These steps must be completed timely and in order. *See* Fla. Admin. Code r. 33-103.011(4); *Bracero v. Sec., Fla. Dept. of Corr.*, 748 F. App'x 200, 202 (11th Cir. 2018) (explaining three-step process).

As the Eleventh Circuit has explained, analyzing exhaustion is a two-step process. First, the Court must look to the allegations in the motion to dismiss and the response, and if the plaintiff's versions show a failure to exhaust, the Court must dismiss. *Dimanche*, 783 F.3d at 1210 (11th Cir. 2015) (citation omitted). But, if the parties' versions differ, then the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*

Here, several of Mr. Phillips's claims remain unexhausted, which must be dismissed. As grievance records obtained from FDC show, each of Mr. Phillips's formal grievances were either denied or returned without action. Ex. A (formal grievance log). Therefore, Mr. Phillips was required to appeal the denied grievances to properly exhaust his claims.

Mr. Phillips has submitted seven grievance appeals since his arrival at Suwannee, which can be summarized as follows:

- Grievance Nos. 21-6-00623 and 21-6-29605 grieved Dr. Figueroa's alleged failure to issue shower and bathroom passes (Ex. B at 1–2, 7–8);

- Grievance No. 21-6-0113 grieved lack of access to a substance abuse program (*Id.* at 3–4);

- Grievance Nos. 21-6-27325[3], 22-6-09259[4], and 22-6-22895[5] grieved that Mr. Phillips had not received A&D ointment and other prescribed medications (*Id.* at 5–6, 11–12, 13–14); and

- Grievance # 21-6-34454 grieved that security prevented Mr. Phillips from going to medical to get his supplies in an act of retaliation and that Nurse Adams told him that his sick-call requests were lost (*Id.* at 9–10).

Beyond that, Mr. Phillips's grievance appeals do not mention pull-up diapers or otherwise complain that the regular diapers he received were insufficient. *See generally* Ex. B. He also does not grieve anything related to an impaired inmate assistant. *See*

---

[3] While grievance No. 21-6-37325 does grieve that Mr. Phillips had not received his prescribed A&D ointment, he does not attribute this to the Medical Defendants. Ex. B at 5–6. Instead, Mr. Phillips describes the efforts taken by the Medical Defendants to get his A&D ointment. *Id.*

[4] Grievance No. 22-6-09259 was returned without action and generally grieved the failure to provide prescribed medications. Ex. B at 11–12.

[5] Grievance No. 22-6-28895 grieves that Mr. Phillips did not received medications (prescribed by Dr. Figueroa) because the medical department room ran out of supplies. Ex. B. at 13–14.

*id.*; ECF No. 25 at ¶ 143. Further, Mr. Phillips did not grieve through an appeal that any action of the Medical Defendants caused him to sit in his own dirty diapers for extended periods of time—instead, he attributes that to security. *See* Ex. B at 9–10. Finally, Mr. Phillips did not grieve that the Medical Defendants either retaliated or conspired against him. *See generally id.* Thus, these unexhausted claims are due to be dismissed.

## III. Mr. Phillips fails to state a policy and practice claim against the Centurion Defendants.

Mr. Phillips's claim against the Centurion Defendants (Count II) must be dismissed for at least three reasons. *First*, Mr. Phillips's allegations of policies, customs, and practices are conclusory and, thus, inadequate. *Second*, Mr. Phillips's allegations are based solely on his own experiences, so he fails to allege a widespread custom about which the Centurion Defendants consciously disregarded known risks. And *third*, Mr. Phillips fails to plead factual allegations about how each of the alleged policies, practices, and customs were the moving force behind Eighth Amendment violations.

## A. Deliberate indifference to serious medical need standard against entity.

Mr. Phillips argues the Centurion Defendants violated his Eighth Amendment rights related to the medical treatment he was provided. ECF No. 25 at 23 (Count II). This is commonly called a claim for deliberate indifference to a serious medical need.

Private contractors who provide medical care for prisons act under the color of law for purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th

Cir. 1985) (citations omitted). But a medical contractor cannot be liable under theories of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort."); *accord Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) ("Liability under § 1983 may not be based on the doctrine of *respondeat superior*."); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability.").

Instead, a plaintiff may successfully state a § 1983 claim and show liability of a government entity "only where the [government entity] itself causes the constitutional violation" through implementation of an official policy or custom. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Moreover, a plaintiff must show the entity's action was "taken with the requisite degree of culpability ... with deliberate indifference to its known or obvious consequences." *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) (quoting *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375–76 (11th Cir. 2000)).

To establish that an official policy or custom[6] of the government entity causes the constitutional violation, a plaintiff must show it was the "moving force" behind

---

[6] A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

the alleged constitutional deprivation. *See Monell* 436 U.S. at 693–94; *accord Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) ("To hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" (quotations omitted)).

A § 1983 plaintiff generally has two methods to establish a policy: "identify either (1) an officially promulgated []policy or (2) an unofficial custom or practice [] shown through the repeated acts of a final policymaker for the county." *Grech*, 335 F.3d at 1329. "Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation," most plaintiff must show the existence of a custom or practice permitting the alleged constitutional violation. *Id.* "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *McDowell*, 392 F.3d at 1290.

As the Eleventh Circuit recently explained, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability on a governmental entity as part of either a policy or custom unless the challenged policy itself is unconstitutional." *Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (internal quotations omitted). In other words, "a single instance of allegedly wrongful conduct cannot establish an unconstitutional policy or custom." *Id.* at 1290.

14

Further, "random acts or isolated incidents are insufficient to establish a custom or policy." *Id.* at *6 (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)). "Rather, a plaintiff must establish the existence of a pattern of similar violations." *Id.* (citing *Craig*, 643 F.3d at 1310).

The existence of a policy or custom must be established "before satisfying the discrete requisites of [a plaintiff's] deliberate indifference claims." *Id.* at *5.

A deliberate indifference claim involves both an objective and subjective component. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). First, a prisoner must demonstrate "an objectively serious medical need." *Id.* Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland*, 53 F.4th at 1287 (citing *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015)) (internal quotations omitted).

**B.     Policy, practice, and custom allegations are unsupported by facts.**

Mr. Phillips's policy and custom allegations are not supported by factual allegations, but instead are conclusory allegations of generalized policies. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). Mr. Phillips's conclusory allegations are improper.

Mr. Phillips generally alleges certain policies or customs exist, but the allegations are not supported by facts. This is precisely the pleading issue the Supreme Court discussed in *Iqbal*. 556 U.S. at 681 (discussing requirements for pleading a governmental policy and concluding "the allegations are conclusory and not entitled to be assumed true."); *accord Grider v. Cook*, 522 F. App'x 544, 548 (11th Cir. 2013) (affirming dismissal of complaint because the plaintiff "did not provide any specific facts about any policy or custom that resulted in his alleged constitutional deprivation."); *Campbell v. City of Jacksonville*, No. 3:17-CV-914-J-34JRK, 2018 WL 1463352, at *16 (M.D. Fla. Mar. 23, 2018) (Howard, J.) (holding plaintiff had not adequately pleaded *Monell* liability where she pleaded "no facts suggesting how these broad alleged failures actually constitute municipal policy, custom or practice."); *Morgan v. Tucker*, No. 3:13-CV-81-J-34PDB, 2016 WL 1089994, at *6 (M.D. Fla. Mar. 21, 2016) (Howard, J.) ("The Court concludes that Morgan's boilerplate and conclusory allegations of Corizon's policy or custom—devoid of any factual development—are insufficient to state a § 1983 claim."). Absent factual support, Mr. Phillips has not plausibly pleaded a policy or custom of the Centurion Defendants.

For example, Mr. Phillips's allegation that the Centurion Defendants had a policy of not providing treatment for financial gain is also wholly unsupported. *See* ECF No. 25 at ¶ 100. This Court has previously rejected nearly identical conclusory allegations. *Scayles v. Inch*, No. 3:19-CV-1311-MMH-PDB, 2022 WL 35991, at *9

16

(M.D. Fla. Jan. 4, 2022) (Howard, J.) ("As it relates to Plaintiffs' assertion that Centurion has a policy to deliberately delay diagnosis and treatment … in order to save money, Plaintiffs present only legal conclusions devoid of any well pled allegations of fact in support of that conclusion."). And, importantly, Mr. Phillips fails to allege how any Centurion policy that does in fact consider cost-saving measures constitutes deliberate indifference in this case. *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1277 (11th Cir. 2020) (explaining that prison officials are not prohibited from considering cost because "[h]ealthcare can be expensive . . . [w]hat a topsy-turvy world it would be if incarcerated inmates were somehow immune from that cold— and sometimes cruel-reality"). So, the Court should dismiss Mr. Phillips's allegations of a policy of denying or delaying treatment based on financial motives, which is unsupported by any factual allegations.

Similarly, Mr. Phillips has not established liability for failure to train or supervise. "[T]o hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *O'Kelley v. Craig*, 781 F. App'x 888, 898 (11th Cir. 2019). The causal connection can be satisfied by showing a "supervisor's policy or custom results in deliberate indifference to constitutional rights." *Id.* But, again, conclusory allegations are not enough. *Id.* at 899 (affirming dismissal because plaintiff did not "offer any specifics of current training or whether the Sheriff was aware of any similar prior incidents, so we cannot infer that he was on notice that current training was inadequate."); *accord Roy v. Ivy*, 53 F.4th

1338, 1352 (11th Cir. 2022) (affirming dismissal of supervisory liability claim because inmate "did not plead specific facts," inmate's allegations were speculative, and inmate "only alleged isolated incidents of unconstitutional misconduct, not 'a persistent and wide-spread practice.'"); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015) (affirming dismissal of failure to train claim where plaintiff alleged "the Sheriff's Office was 'on notice' of the need" to train, but "no facts [we]re alleged to support that conclusion."). Because Mr. Phillips makes no factual allegations about how the Centurion Defendants failed to train or supervise, his conclusory allegations is insufficient to state a claim.

Lastly, as it relates to the final policymaker allegations, the Court should reject such a theory because Mr. Phillips has not identified a final policymaker. *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989) (noting that under this delegation theory of liability, "the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit."); *accord Viera v. City of Lake Worth, Fla.*, 853 F. App'x 356, 359–60 (11th Cir. 2021) (affirming dismissal because plaintiffs failed to allege sufficient facts establishing individuals were final policymakers). Moreover, Mr. Phillips has not alleged for which actions of the unidentified final policymaker he is attempting to hold the Centurion Defendants liable. That alone renders the allegations insufficient. *Cf. White v. Berger*, 709 Fed. Appx. 532, 540 (11th Cir. 2017) ("To prevent municipal liability 'from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's [allegedly] inadequate decision and the particular injury alleged.'").

18

Because his allegations of policies, customs, and practices are conclusory, Mr. Phillips has not stated a claim against the Centurion Defendants.

**C.  Mr. Phillips's own alleged experiences are insufficient to plead existence of policies, practices, and customs of the Centurion Defendants.**

To the extent Mr. Phillips points to any facts to support the existence of a policy, practice, or custom of the Centurion Defendants, Mr. Phillips relies solely on his own experience, which is insufficient to state a claim. Mr. Phillips's Amended Complaint focuses exclusively on the alleged medical treatment he has received as a prisoner. *See generally* ECF No. 25. He makes no allegations regarding the medical treatment provided to any other inmate. *Id.* Mr. Phillips's policy and custom allegations are based, at best, on his own medical care.

As the Eleventh Circuit has repeatedly explained, "[t]hat is not enough." *Floyd v. City of Miami Beach*, 730 F. App'x 838, 842 (11th Cir. 2018) (holding plaintiff failed to state a claim and explaining the plaintiff's "own experience is inadequate by itself because '[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.'" (citing *Craig*, 643 F.3d at 1312)); *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 957 (11th Cir. 2019) (same). Rather, "it is established law that proof of a single incident of unconstitutional activity is not sufficient to demonstrate a policy or custom for purposes of § 1983 liability." *Ireland*, 53 F.4th at 1290; *accord Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) ("A pattern of similar constitutional violations is ordinarily necessary because a single violation is not so

19

pervasive as to amount to a custom." (cleaned up)). Nor are multiple delays experienced by Mr. Phillips sufficient to establish a policy, practice, or custom. *Roy*, 53 F.4th at 1351 ("To the extent that Roy contends he can show an unconstitutional custom or practice by Wexford based solely on the multiple delays that he experienced, this contention is meritless.").

Concomitantly, Mr. Phillips's failure to plead anything beyond his own experiences means he also has not alleged the Centurion Defendants were aware of a serious risk of harm to him due to the alleged policies, customs, or practices. *Calvin v. Jones*, No. 3:19-CV-916-J-34MCR, 2020 WL 4428468, at *9 (M.D. Fla. July 31, 2020) (Howard, J.) ("Calvin's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Corizon had notice of violations and made a 'conscious choice' to disregard them."); *accord Davis v. Sec'y, Dep't of Corr.*, No. 3:15-CV-649-J-34JRK, 2017 WL 1885366, at *11 (M.D. Fla. May 9, 2017) (Howard, J.) (same). So, the scant allegations of the Amended Complaint fail to establish the existence of a policy, practice, or custom, and fail to establish the Centurion Defendants deliberately or consciously disregarded their known consequences.

Because Mr. Phillips's Amended Complaint relies solely on his own experience or isolated incidents, he has not plausibly pleaded the existence of a policy, practice, or custom of the Centurion Defendants to which they were deliberately indifferent.

**D.    Mr. Phillips has not pleaded alleged policies, practices, and customs were moving force behind alleged violations of Eighth Amendment.**

Mr. Phillips also has not adequately alleged any of the policies were the moving force behind a constitutional deprivation. To prevent *Monell* liability from collapsing into *respondeat superior*, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Brown*, 520 U.S. at 410; *Davis*, 2017 WL 1885366, at *11 (holding a prisoner "must plead that an official policy or a custom or practice of [FDC's healthcare contractor] was the moving force behind the alleged federal constitutional violation.").

"At the motion to dismiss stage, a plaintiff must allege facts showing that the municipality caused the constitutional violation." *Ford v. Gualtieri*, No. 8:17-CV-2957-T-17TBM, 2018 WL 11216671, at *4 (M.D. Fla. June 12, 2018). Failure to plead facts plausibly supporting an allegation that a specific policy or custom was the moving force behind a constitutional violation is grounds for dismissal. *Davis*, 2017 WL 1885366, at *11; *Ratley v. Inch*, No. 3:21-CV-598-MMH-LLL, 2022 WL 2209897, at *11 (M.D. Fla. June 21, 2022) (Howard, J.) (dismissing claim against Centurion where prisoner "asserted no facts showing that a policy, custom, or practice of Centurion was the moving force behind any violation of his federal constitutional rights.").

Here, Mr. Phillips fails to plausibly allege *how* any policy, custom, or practice of the Centurion Defendants was the moving force behind a violation of his constitutional rights. This failure requires dismissal. *See Scayles*, 2022 WL 35991, at *9 (granting motion to dismiss where complaint failed to allege the purported

21

unconstitutional policies were the "impetus" for the alleged deficiencies in his medical treatment).

As discussed above, Mr. Phillips identifies a number of policies, practices, and customs in the Amended Complaint, which are largely duplicative, can be condensed into three primary buckets:

> (1) prioritizing profits at the expense of constitutionally adequate care; and
>
> (2) denying medical care to prisoners with serious medical needs.[7]

But as set forth above, Mr. Phillips's Amended Complaint lacks any factual allegations that show such a policy, custom, or practice was the driving force behind any alleged violation of his constitutional rights. *See Scayles*, 2022 WL 35991, at *9.

First, Mr. Phillips has not pled how the Centurion Defendants' consideration of costs when making policies led to the specific constitutional violations complained of in the Amended Complaint. *McDowell*, 392 F.3d at 1292 ("The County's liability cannot be dependent on the scant likelihood that its budget decisions would trickle down the administrative facets and deprive a person of his constitutional rights. Instead, liability must be premised on a finding that '*this*' budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered."). Indeed, the Eleventh Circuit and this Court have recognized it is not unconstitutional to consider cost when it

---

[7] This bucket generally includes Mr. Phillips's claims of policies including disregarding reports of objectively serious symptoms; refusing to provide adequate treatment; refusing to conduct or obtain diagnostic tests and bloodwork for patients; failing to create sensible treatment plans; failing to ensure continuity of care; failing or refuse to arrange treatment at outside facilities; and refusing and/or failing to provide any medical care whatsoever for defined medical problems.

comes to prisoner healthcare. *See Hoffer*, 973 F.3d at 1277; *Scayles*, 2022 WL 35991, at *9. So, Mr. Phillips has not pleaded how this alleged policy led to a violation of his constitutional rights.

Finally, Mr. Phillips pleaded no facts demonstrating an alleged policy of denying medical care to inmates caused a constitutional harm. Mr. Phillips admits he was given diapers, cleansers, antibiotics, and Bacitracin ointments. ECF No. 25 at ¶¶ 43(j), 50, 72–73, 82. Although it may have not been the pull-diapers he wanted, that Mr. Phillips received such care belies allegations that the above-referenced policies, customs, and practices even exist, much less that they were the moving force behind his alleged constitutional violations. *Cf. Scayles*, 2022 WL 35991, at *9 (concluding allegations of treatment undermine existence of policy supporting *Monell* liability); *see also Keohane*, 952 F.3d at 1266 ("a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment.").

In sum, Mr. Phillips did not plead facts that any of the policies, practices, or customs identified in the Amended Complaint were the moving force behind any alleged constitutional violation. Thus, he failed to plead a claim for deliberate indifference.

## **CONCLUSION**

As an initial matter, the Settlement Agreement precludes further litigation on this matter. But even further, many of Mr. Phillips's remain unexhausted. He makes only conclusory allegations regarding the existence of policies, practices, or customs

for which he at best relies on only his own personal experiences. But even if he had adequately pleaded the existence of policies, practices, and customs, he fails to tie them to his alleged constitutional violations, also requiring dismissal. Further, Mr. Phillips's allegations of the treatment belie the existence of unconstitutional policies, practices, or customs, or the Centurion Defendants' deliberate indifference. So, the Court should conclude Mr. Phillips's failed to state a claim against the Centurion Defendants and dismiss the claim against them.

DATED: January 31, 2023

*/s/ Jacob B. Hanson*
Brian A. Wahl (FBN 95777)
R. Craig Mayfield, Esq. (FBN 429643)
Jacob B. Hanson, Esq. (FBN91453)
W. Blair Castle, Esq. (FBN 1031504)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL  33602
Telephone: (813) 559-5500 | Fax:(813) 229-5946
Primary Email:    bwahl@bradley.com
Primary Email:    cmayfield@bradley.com
Primary Email:    jhanson@bradley.com
Primary Email:    bcastle@bradley.com
***Attorneys for Defendants Centurion of Florida, LLC and MHM Health Professionals, LLC, Alexis Figueroa, M.D., Elizabeth Holmes, and Brittney Cannon***