## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DONNY PHILLIPS,

     Plaintiff,

vs.                           Case No. 3:22-cv-00997-BJD-LLL

RICKY DIXON, in his capacity as
Secretary of the Florida Department
of Corrections, CENTURION OF
FLORIDA, LLC, MHM HEALTH
PROFESSIONALS, LLC, ALEXIS
FIGUEROA, M.D., ELIZABETH
HOLMES, BRITTNEY CANNON,
CONNIE LYNN ADAMS, SGT.
SAVONIA RICHARDSON-GRAHAM,
SGT. DEBRA ALDRIDGE, and OFCR,
TERESSA FILLMORE HAWTHORNE,

     Defendants.

_____/

## DEFENDANT CONNIE LYNN ADAMS'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Connie Lynn Adams ("Nurse Adams") moves to dismiss Plaintiff Donny Phillips's Amended Complaint.

## INTRODUCTION

This is at least the third federal lawsuit filed by Mr. Phillips in which he alleges his constitutional rights have been violated while in the custody of the Florida Department of Corrections ("FDC") relating to his incontinence of bladder and bowel. *See Phillips v. Pittman*, 1:15-cv-110 (N.D. Fla.) ("*Phillips I*"), *Phillips v. Jones*, et al, 4:18-

1

cv-139 (N.D. Fla) ("*Phillips II*"). In each lawsuit, Mr. Phillips alleges he suffered from various medical conditions causing frequent urination and incontinence requiring him to wear adult diapers. *Phillips I* at ECF No. 44 at 2; *Phillips II* at ECF No. 392 at 1. In each of these lawsuits, Mr. Phillips also alleged he was wrongfully refused, or provided insufficient medical supplies and diapers. *See, e.g., Phillips I* at ECF No. 30 (Am. Compl.) at ¶¶ 15-17, 44, 52; *Phillips II* at ECF No. 311 (Third Am. Compl.) at ¶¶ 22, 62-64, 71-72, 75.

For example, in *Phillips II*, Mr. Phillips asserted claims against Centurion of Florida, LLC ("Centurion") and certain individual providers for deliberate indifference and first amendment retaliation. The deliberate indifference claims against the individuals were ultimately dismissed because Mr. Phillips's "allegations—while serious and concerning—would not support a claim that the individuals acted with conduct worse than gross negligence." *See Phillips II* at ECF No. 310 at 15–16; *see also id.* at ECF No. 344 (confirming the same). As to Centurion, summary judgment was granted because Mr. Phillips did not "establish a policy of deliberate indifference that caused [his] injury." *See id.* at ECF No. 392 at 13–16.

Moreover, the retaliation claims against all but one of the providers were dismissed because while Mr. Phillips contended he was "denied an adequate supply of diapers," "there [was] no facts alleged that would support a finding of a causal relationship between that act and Phillips's speech." *See id.* at ECF No. 310 at 17. For the provider who was not dismissed, there were allegations—not present in this lawsuit—in which the provider had allegedly threatened to put Mr. Phillips in

2

confinement for complaining about being denied accommodations. *Id.* Mr. Phillips thereafter executed a Settlement Agreement and Release on February 9, 2022 (the "Settlement Agreement"), which resulted in the complete dismissal of that lawsuit. *See id.* at ECF No. 445.

In this lawsuit, Mr. Phillips again alleges that various medical and correctional personnel continue to deny him appropriate medical care and accommodations arising from his incontinence of bladder and bowel. As to Nurse Adams, a licensed practical nurse, Mr. Phillips claims she violated his constitutional rights relating to his incontinence of bladder and bowel during one alleged encounter where she allegedly refused to provide him with pull-up diapers. But, because Nurse Adams had no authority to provide pull-up diapers without an order from a clinician, Mr. Phillips fails to state a claim against her.

## BACKGROUND

### A. Allegations from Amended Complaint.

Mr. Phillips alleges he is a chronically ill, disabled inmate who suffers from bladder and bowel incontinence. ECF No. 25 at ¶ 20. Mr. Phillips claims he was often denied pull-up diapers and other sanitary accommodations,[1] which caused recurrent cellulitis and other skin irritations from sitting in his own waste for long periods of time. *Id.* at ¶ 27. Generally, Mr. Phillips complains he was denied "medical care and access to hygiene []as part of a campaign of retaliatory actions by both medical and

---

[1] These sanitary accommodations include wipes, antiseptic soap, and barrier creams. ECF No. 25 at ¶ 52.

corrections staff as punishment for [his] frequent grievances and insistence on decent treatment." *Id.* at ¶ 28.

Mr. Phillips transferred to Suwanee Correctional Institution on October 15, 2020 (ECF No. ¶ 42), where he alleges only one specific encounter with Nurse Adams. Mr. Phillips claims—that at some point—Nurse Adams told him that she "did not give a fuck" if he did not have his diapers and wipes, and that she refused to provide the same. ECF No. 25 at ¶ 67.

Mr. Phillips, however, acknowledges he received diapers and sanitary supplies at various times while at Suwanee. *See generally id.* For example, Mr. Phillips alleges he received diapers on November 9, 10, and 11, 2020, and received 12 diapers on November 13, 2020. *Id.* at ¶ 43(g-j); *see also id.* at ¶ 50 (admitting he receives diapers, but prefers pull-ups). He also alleges he was "*frequently* given diapers," although he claimed they were "too big or too small." *Id.* at ¶ 51 (emphasis added). He also acknowledges he was given a 4-ounce cleanser to address his condition; although he preferred an 8-ounce cleanser. *Id.* at ¶ 72. Finally, he admits he was given Bacitracin ointment and antibiotics for his cellulitis. *Id.* at ¶¶ 73, 82.

As to Nurse Adams, Mr. Phillips asserts claims for (1) deliberate indifference to a serious medical need (Count V), (2) 42 U.S.C. § 1983 conspiracy (Count VII), and (3) abuse or neglect of a vulnerable adult under § 415.1111, Florida Statutes (Count VIII).

## **MOTION TO DISMISS STANDARD**

When considering the evidence and ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the complaint allegations must be construed in the light most favorable to the plaintiff. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019). When a plaintiff proceeds pro se, the court must liberally construe the allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680.

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Thus, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill*, 941 F.3d at 511 (quoting *Iqbal*, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.*

## **ARGUMENT**

As set forth below, Mr. Phillips's Amended Complaint is both factually and legally deficient, mandating the dismissal of all claims against Nurse Adams.

## I.   Mr. Phillips's claims are barred by the Settlement Agreement.

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, "the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, Case No: 2:19-cv-35-FtM-29UAM, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement.").

Consequently, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. So, when determining the res judicata effect of a settlement agreement, Courts should "attempt to effectuate the parties' intent," which requires Courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id.* at 1290.

In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod*, 550 F. App'x at 812 (11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that res judicata determination in cases of dismissal pursuant to a settlement agreement is governed by "traditional rules of contract interpretation"). Chief among the rules of contract interpretation, of course, is that the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis. *Norfolk*, 371 F.3d at 1290 ("Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document ...."); *see also Sherrod*, 550 F. App'x at 812

("Under Florida law, '[w]ords in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

Here, the intent to preclude the claims now asserted in this suit is readily ascertainable from the Settlement Agreement. The Settlement Agreement contains a broad release of all claims "that were or could have been asserted against RELEASEE" in the 2018 Lawsuit.[2] The term "releasee" is broadly defined to include Centurion and its employees and agents—which includes Nurse Adams. Mr. Phillips agreed to "release all claims against any provider with prejudice . . . ." And, Mr. Phillips agreed to "indemnify, defend, and hold harmless RELEASEE against any and all past, present, and future claim . . . arising from the claims in [2018 Lawsuit]."

The Settlement Agreement from the 2018 Lawsuit was entered into by Mr. Phillips on February 9, 2022, and a stipulation of dismissal with prejudice was entered two days later. Now, in this suit, Mr. Phillips alleges he was denied proper sanitary accommodations upon his transfer to Suwanee C.I. on October 15, 2020. ECF No. 25 at ¶ 43. The conduct at issue in this suit arose almost a year and half before the Settlement Agreement was executed. Mr. Phillips could and should have raised these claims against Centurion during the 2018 Lawsuit.

---

[2] The Settlement Agreement's confidentiality provision permits the disclosure of the agreement's terms to the extent necessary to establish that a particular dispute was resolved. The Settlement Agreement will be provided upon request should the Court choose to conduct an *in camera* review.

Instead, by filing this lawsuit, Mr. Phillips has demonstrated he is intent on engaging in a piecemeal, never-ending chain of lawsuits revolving around the same general complaint about the quantity and type of supplies he believes is necessary address his incontinence of bladder and bowel. The 2018 Lawsuit was resolved to end both that lawsuit and prevent future claims against its employees, such as Nurse Adams. *See Farese v. Scherer*, 297 F. App'x 923, 926 (11th Cir. 2008) ("Florida law allows releases of liability for future [] conduct, if the release explicitly states that it covers future conduct." (citing *Zinz v. Concordia Props., Inc.*, 694 So.2d 120, 121 (Fla. Dist. Ct. App. 1997)).

Mr. Phillips cannot proceed on claims he already settled. *Sherrod*, 550 F. App'x at 812 ("[O]nce a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places upon him." (quoting *Fineberg v. Kline*, 542 So.2d 1002, 1004 (Fla. Dist. Ct. App. 1988)).The claims against Nurse Adams are precluded by the Settlement Agreement.

## II.   Mr. Phillips failed to exhaust his administrative remedies.

Mr. Phillips did not fully exhaust his claims. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is a strictly interpreted and mandatory "precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam); *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (explaining the PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion").

Proper exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citations omitted). While the process may "vary from system to system and claim to claim … it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

FDC's grievance procedure is detailed in Florida Administrative Code Section 33-103. It requires prisoners to: "(1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the [FDC]." *Dimanche v. Brown*, 783 F.3d 1204, 1211 (11th Cir. 2015). These steps must be completed timely and in order. *See* Fla. Admin. Code r. 33-103.011(4); *Bracero v. Sec., Fla. Dept. of Corr.*, 748 F. App'x 200, 202 (11th Cir. 2018) (explaining three-step process).

As the Eleventh Circuit has explained, analyzing exhaustion is a two-step process. First, the Court must look to the allegations in the motion to dismiss and the response, and if the plaintiff's versions show a failure to exhaust, the Court must dismiss. *Dimanche*, 783 F.3d at 1210 (11th Cir. 2015) (citation omitted). But, if the parties' versions differ, then the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*.

Here, several of Mr. Phillips's claims remain unexhausted, which must be dismissed. As grievance records obtained from FDC show, each of Mr. Phillips's formal grievances were either denied or returned without action. ECF No. 51-1.

9

Therefore, Mr. Phillips was required to appeal the denied grievances to properly exhaust his claims.

Mr. Phillips has submitted seven grievance appeals since his arrival at Suwannee, which can be summarized as follows:

- Grievance Nos. 21-6-00623 and 21-6-29605 grieved Dr. Figueroa's alleged failure to issue shower and bathroom passes (ECF No. 51-2 at 1–2, 7–8);

- Grievance No. 21-6-0113 grieved lack of access to a substance abuse program (*Id.* at 3–4);

- Grievance Nos. Nos. 21-6-27325[3], 22-6-09259[4], and 22-6-22895[5] grieved that Mr. Phillips had not received A&D ointment and other prescribed medications (*Id.* at 5–6, 11–12, 13–14); and

- Grievance # 21-6-34454 grieved that security prevented Mr. Phillips from going to medical to get his supplies in an act of retaliation and that Nurse Adams told him that his sick-call requests were lost (*Id.* at 9–10).

Beyond that, Mr. Phillips's grievance appeals do not mention pull-up diapers or otherwise complain that the regular diapers he received were insufficient. *See generally* ECF No. 51-2. He also does not grieve anything related to an impaired inmate assistant. *See id.*; ECF No. 25 at ¶ 143. Further, Mr. Phillips did not grieve through an appeal that any action of the Medical Defendants caused him to sit in his own dirty diapers for extended periods of time—instead, he attributes that to security. *See* ECF

---

[3] While grievance No. 21-6-37325 does grieve that Mr. Phillips had not received his prescribed A&D ointment, he does not attribute this to the Medical Defendants. ECF No. 51-2 at 5–6. Instead, Mr. Phillips describes the efforts taken by the Medical Defendants to get his A&D ointment. *Id.*

[4] Grievance No. 22-6-09259 was returned without action and generally grieved the failure to provide prescribed medications. ECF No. 51-2 at 11–12.

[5] Grievance No. 22-6-28895 grieves that Mr. Phillips did not received medications (prescribed by Dr. Figueroa) because the medical department room ran out of supplies. ECF No. 51-2 at 13–14.

No. 51-2 at 9–10. Finally, Mr. Phillips did not grieve that the Medical Defendants either retaliated or conspired against him. *See generally id.* Thus, these unexhausted claims are due to be dismissed.

### III.    Mr. Phillips fails to state a claim for deliberate indifference.

Mr. Phillips has not stated a claim for deliberate indifference to a serious medical need. *First*, Nurse Adams was unable to prescribe diapers or issue passes. *Second*, Mr. Phillips's disagreement with the quantity or type of diapers and other sanitation supplies he received is not grounds for constitutional liability. And *third*, Mr. Phillips has not plausibly pled Nurse Adams's actions caused any injury.

#### A. Deliberate indifference to serious medical need standard.

Mr. Phillips's failure to treat claim under 42 U.S.C. § 1983 is more commonly referred to as a deliberate indifference to serious medical need claim. A "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020).

Indeed, the Eleventh Circuit has cautioned courts against employing a "'perhaps they could be doing more' standard." *Hammonds v. Theakston*, 833 F. App'x 295, 301 (11th Cir. 2020) (quoting *Hoffer*, 973 F.3d at 1271). Instead, courts should first consider the care provided to an inmate and, if such care satisfies the constitutional minimum (because it is not conscience shocking or intolerable to fundamental fairness), then there is no need to consider whether a defendant could have done more. *Hoffer*, 973 F.3d at 1277 (concluding it did not need to reach the question of whether

less efficacious care was provided pursuant to a cost defense "because we have held that the Eighth Amendment's 'minimally adequate care'" was provided).

A deliberate indifference claim involves both an objective and subjective component. *Keohane*, 952 F.3d at 1266. First, a prisoner must demonstrate "an objectively serious medical need." *Id.* Second, the inmate must prove prison officials acted with deliberate indifference to that need by showing "(1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, and (4) the official's conduct amounted to more than gross negligence." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (citing *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015)) (quotations omitted).

To constitute deliberate indifference, "[m]edical treatment [must be] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017).

## B. Nurse Adams is not liable for not providing pull-up diapers or wipes.

To the extent Mr. Phillips alleges Nurse Adams is liable for failing to provide him with pull-up diapers or wipes, Mr. Phillips's claim fails as a matter of law. Nurse Adams is not a clinician, meaning she is not authorized to write passes for medical supplies or other accommodations—including pull-up diapers and wipes. *See Ireland v.*

*Prummell*, 53 F.4th 1274, 1293 (11th Cir. 2022) ("[I]t is undisputed that the Nurses cannot prescribe medication without a doctor's order."). Indeed, Florida Department of Corrections regulations require that "devices or medical support equipment" be "prescribed for an inmate and approved by the Office of Health Services or its designee." Fla. Admin. Code r. 33-210.201(2)(f). There is no allegation that a clinician prescribed pull-up diapers or wipes for Mr. Phillips during the time of his encounter with Nurse Adams, so Nurse Adams was not authorized to provide pull-up diapers.

Indeed, the Eleventh Circuit has recently explained that nurses cannot be liable for failing to do something they had no authority to do. *Ireland*, 53 F.4th at 1293–94; *accord Rosario v. Blakely*, No. 6:10-CV-353-ORL-36, 2013 WL 49475, at *9 (M.D. Fla. Jan. 3, 2013) ("Courts have held that nurses who are not empowered to take action contrary to a doctor's orders do not violate a prisoner's constitutional rights."). As explained, Nurse Adams had no authority to provide pull-up diapers or wipes in the absence of a prescription from a clinician. *See* Fla. Admin. Code r. 33-210.201(2)(f). Because Nurse Adams could not prescribe pull-up diapers or wipes to Mr. Phillips, Nurse Adams cannot have been deliberately indifferent by not providing them.

## C. Mr. Phillip's disagreement with the diapers he received is not grounds for a constitutional violation.

But even if Nurse Adams could have prescribed pull-up diapers, Mr. Phillips's allegation that she did not presents a classic disagreement of medical judgment that is not actionable. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [to deploy] additional diagnostic techniques or forms of treatment 'is a

classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability."). Mr. Phillips admits he was routinely provided regular diapers and other sanitary products throughout his incarceration at Suwannee C.I. So, while Mr. Phillips may have wanted or believed he was entitled to additional pull-up diapers or an 8-ounce cleanser instead of a 4-ounce cleanser, his desires cannot form the basis for establishing Eighth Amendment liability. *See Keohane*, 952 F.3d at 1266 ("a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment."); *Hoffer*, 973 F.3d at 1272 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

### D. Mr. Phillips fails to plead causation.

Even if Mr. Phillips pleaded Nurse Adams was deliberately indifferent, Mr. Phillips's claim is nonetheless deficient for failing to plausibly allege causation. Proof of causation is required to prevail on a deliberate indifference claim. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009); *accord Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (requiring "causal link" between alleged indifference and the prisoner's injury). In cases involving an alleged delay in treatment a prisoner must also demonstrate the delay seriously exacerbated the medical condition. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *accord Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (explaining that prisoner must establish that "the delay does *seriously*

14

*exacerbate* the medical problem" (emphasis added)); *Sims v. Figueroa*, No. 21-10647, 2022 WL 188485, at *5 (11th Cir. Jan. 21, 2022), *cert. denied,* 142 S. Ct. 2888 (2022) (no deliberate indifference where inmate failed to produce evidence of an exacerbated condition where delay in medical treatment was alleged).

Here, there is no plausible allegation that Nurse Adams's actions plausibly injured Mr. Phillips. As a licensed practical nurse, Nurse Adams was unable to prescribe pull-up diapers or other sanitary products. *Ireland*, 53 F.4th at 1293–94; *compare* § 458.305(3), Fla. Stat. (describing a doctors' authority to practice), *with* § 464.003(18) (describing practical nurses' authority to practice). As such, it is implausible Nurse Adams caused or exacerbated Mr. Phillips's injuries. *Peterson v. Willie*, 81 F.3d 1033, 1039 (11th Cir. 1996) (concluding doctors were not proximate cause of prisoner's injury); *Tuten v. Nocco*, No. 8:20-CV-1838-WFJ-AEP, 2021 WL 1238408, at *2 (M.D. Fla. Apr. 2, 2021) (explaining, "The unconstitutional act must be the proximate cause of the injury."). But even if Mr. Phillips had all the supplies and passes he desired, he still alleges that prison guards restricted his access to the showers and bathrooms—which is not the fault of Nurse Adams. ECF No. 25 at ¶¶ at 75, 77, 89.

## IV.   Mr. Phillips has not plausibly alleged a conspiracy.

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of

one of his constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carruth v. Bentley*, 942 F.3d 1047, 1062 (11th Cir. 2019) ("[T]o sustain a conspiracy action under § 1983 ... a plaintiff must show an underlying actual denial of its constitutional rights."). The "linchpin for conspiracy is agreement, which presupposes communication." *Melton v. Abston*, 841 F.3d 1207, 1225 (11th Cir. 2016), *abrogated on other grounds recognized by Campoverde-Panora v. U.S. Att'y Gen.*, No. 21-10131, 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021).

"A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). "Conspiracy claims must be pled with particularity" and a plaintiff "must show *some* evidence of agreement between the defendants." *Saunders v. Duke*, No. 6:10-CV-120-ORL-35-GJK, 2012 WL 12870345, at *8 (M.D. Fla. Jan. 4, 2012), *rev'd on other grounds,* 766 F.3d 1262 (11th Cir. 2014).

Mr. Phillips failed to sufficiently plead a conspiracy claim against Nurse Adams. There is no particularized allegation Nurse Adams communicated with any other Defendant, much less that she reached an agreement with them to violate Mr. Phillips's constitutional rights. *Fullman*, 739 F.2d at 557; *Saunders*, 2012 WL 12870345, at *8. Indeed, there is no allegation Nurse Adams spoke with anyone before treating Mr. Phillips. So, Mr. Phillips's conspiracy claim fails and should be dismissed. *Diaz-Martinez v. Miami-Dade Cty.*, No. 07-20914-CIV, 2009 WL 2970468, at *9 (S.D. Fla. Sept. 10, 2009) (holding "Plaintiff's conclusory allegation that the police defendants

16

'agreed among themselves and with other individuals to act in concert'" did not state a claim).

**V.     Mr. Phillips cannot bring a claim under § 415.1111, Fla. Stat.**

Mr. Phillips's claim under § 415.1111 for abuse or neglect of a vulnerable adult fails for at least four reasons: (1) Mr. Phillips has not plead allegations that he was a "vulnerable adult" during his interactions with Nurse Adams; (2) Nurse Adams is not a caregiver who can be held liable; (3) this claim depends on proving a violation of the medical standard of care, rendering Chapter 415 inapplicable; and (4) the claim is barred by sovereign immunity.

**A. Mr. Phillips was not a 'vulnerable adult.'**

Mr. Phillips was not a "vulnerable adult" at the time of his alleged interactions with Nurse Adams and, therefore, Mr. Phillips cannot bring a claim under § 415.1111, which is part of Florida's Adult Protective Services Act ("APSA") (Fla. Stat. §§ 415.101–15.113). The APSA "was enacted to protect 'vulnerable adults' from 'abuse, neglect, and exploitation' by 'caregivers,' as those terms are defined in the Act … [and] provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as for protective services interventions when the vulnerable adult lacks the capacity to consent[.]" *See Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So. 2d 717, 718 (Fla. Dist. Ct. App. 2008). As this Court previously opined,

> "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the

17

> defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult."

*Grasso v. Grasso*, 131 F. Supp. 3d 1303, 1312–13 (M.D. Fla. 2015) (quoting *Bohannon*, 983 So. 2d 717 at 721).

Mr. Phillips's claim fails as a matter of law at the first step of this analysis: he was not a "vulnerable adult" at the time of his interactions with Nurse Adams. Section 415.102 (which provides definitions of terms used in the APSA) defines a "vulnerable adult" as a "person 18 years of age or older whose ability to perform the normal activities of daily living[6] or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(2)(28).

This Court has construed the term "vulnerable adult" narrowly in past cases implicating § 415.102. *See Krinsk v. SunTrust Banks, Inc.*, 2010 WL 11475608, at *2 (M.D. Fla. Jan. 8, 2010) (finding the plaintiff, **who was 92 years old at the time of the conduct at issue**, had not established she was a "vulnerable adult" under the APSA since she had not sufficiently demonstrated she was "unable to perform the normal activities of daily living" or was so impaired as to not be able to "provide for [] her own care[,]" (citing *Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla.

---

[6] "Activities of daily living" is defined in § 415.102 as, "functions and tasks for self-care, including ambulation, bathing, dressing, eating, grooming, toileting, and other similar tasks." Fla. Stat. § 415.102(2).

Dist. Ct. App. 2007) (affirming dismissal of a § 415.1111 claim that "failed to set forth facts sufficient to state a claim that [plaintiff] was a 'vulnerable adult'")).

While, as noted above, Mr. Phillips does allege certain physical infirmities (namely incontinence and difficulty walking and using a wheelchair), none of what he alleges at the time of his interactions with Nurse Adams indicate they were so severe as to render him completely incapable of performing normal activities of daily life, or unable to comprehend his own health or protection. On the contrary, Mr. Phillips alleges he sought treatment on numerous occasions and complained about medical treatment—indicating he had the capacity to worry for his own health and safety, and to seek help accordingly. An individual does not automatically become a "vulnerable adult" simply due to his status as an incarcerated person (*see*, *e.g.*, *Bobbin v. Corizon Health, Inc.*, 2014 WL 5474126 at *5 (M.D. Fla. Oct. 29, 2014) (analyzing whether factual allegations contained in the complaint were sufficient to plausibly allege the injured individual, who was incarcerated, was a "vulnerable adult" under the APSA)).

The APSA is designed to protect a specific category of adults who are so mentally and/or physically impaired as to be totally reliant on others for their care, bodily maintenance, and general preservation and well-being—Mr. Phillips has not alleged facts sufficient for him to plausibly be considered a "vulnerable adult" that meets this standard. So, the claim should be dismissed.

**B.  Nurse Adams was not a 'caregiver.'**

Mr. Phillips's claim also fails as a matter of law because Nurse Adams was not a "caregiver" under the APSA at the time of their single interaction. Under the APSA,

a "'[c]aregiver'" means a person who has been entrusted with or has assumed the responsibility for **frequent and regular care of or services to** a vulnerable adult on a temporary or permanent basis **and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists.**" § 415.102 (emphasis added).

Based on the plain language of the statute, Nurse Adams was not a "caregiver" to Mr. Phillips. Mr. Phillips has only alleged *one encounter* between himself and Nurse Adams . ECF No. 25 at ¶ 67. Mr. Phillips has not alleged Nurse Adams provided him with "frequent" or "regular" care or services—which is a plain statutory requirement. *Cf. Bobbin*, No. 2014 WL 5474126 at *5 (finding the plaintiff had plausibly alleged three defendant healthcare providers were "caregivers" to the injured person due to their assuming responsibility for the "**frequent and regular care** of [the injured person] during his incarceration . . . **and [their] commitment or understanding** . . . **that a caregiver role existed** [between the injured person and themselves,]") (emphasis added).

Mr. Phillips does not allege Nurse Adams, in any way, assumed responsibility for his frequent and regular care—or that Nurse Adams even interacted with Mr. Phillips on more than one occasion. Moreover, Mr. Phillips does not allege either he or Nurse Adams had a commitment or understanding that any sort of caregiver role existed. Nurse Adams plainly does not meet the definition of a "caregiver" under the APSA; therefore, Mr. Phillips's claim under § 415.1111 must be dismissed.

**C. Mr. Phillips cannot bring claim as a substitute to medical negligence.**

In *Bohannon*, the Florida First District Court of Appeal held that "[the APSA] **was not intended by the Florida Legislature to provide an alternate cause of action for medical negligence**." *Bohannon*, 983 So. 2d at 721 (emphasis added). Per the Florida Supreme Court, the "[Florida] Legislature chose to define medical malpractice as a claim arising out of the rendering of, **or failure to render**, **medical care or services**[,] … [a]ccordingly … **claims that arise out of an** action or **inaction directly related to medical care or services,** which require the use of professional judgment or skill, sound in medical malpractice." *See Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 313 (Fla. 2018) (citing § 766.106(1)(a), Fla. Stat.) (internal quotation marks omitted) (emphasis added). In the subsequent case of *Specialty Hosp.-Gainesville, Inc. v. Barth*, the Court further clarified that "an allegation of medical negligence subject to the statutory requirements of [Fla. Stat.] chapter 766 [which governs medical negligence suits] … **cannot form the basis of a claim under section 415.1111, Florida Statutes**[,]" and that "**[t]he holding in *Bohannon* excluded any** medical-malpractice or **medical-negligence claims from the orbit of chapter 415** … [t]he entire legislative scheme of chapter 415 is to protect vulnerable adults, not to provide a duplicative remedy for medical malpractice." *See Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201, 204–209 (Fla. Dist. Ct. App. 2019) (emphasis added).[7]

---

[7] The *Barth* Court also noted that "since our decision in *Bohannon*, rendered more than a decade ago, the legislature has not abrogated that decision, indicating legislative approval: 'Long-term legislative inaction after a court construes a statute amounts to legislative acceptance or approval of that judicial construction.'" 277 So. 3d at 207 (quoting *Goldenberg v. Sawczak*, 791 So. 2d 1078, 1081 (Fla. 2001)).

Here, Mr. Phillips's allegations against Nurse Adams clearly sound in medical negligence. His § 415.1111 claim arises out of an alleged *inaction* by Nurse Adams that is directly related to medical care or services—*i.e.*, the alleged failure to provide him pull-up diapers. ECF No. 25 at ¶¶ 43(f), 66. Therefore, Mr. Phillips would have to rely on the medical negligence standard of care (*i.e.* that Nurse Adams's conduct fell below the prevailing professional standard of care) to pursue his claim. As stated in *Barth*, "**Chapter 766**, Florida Statutes, **provides the exclusive remedy for claims 'arising out of the rendering of, or the failure to render, medical care or services**.'" 277 So. 3d at 208 (emphasis added) (quoting § 766.106(1)(a), Fla. Stat. (2018)). Florida law requires litigants bringing medical negligence claims to complete the presuit requirements of (1) providing notice of intent to initiate litigation; and (2) completing a presuit investigation process. *See generally* Honorable Nelly N. Khouzam, *Medical Malpractice: A Review of the Presuit Screening Provisions of the Florida Medical Malpractice Act*, 20 NOVA L. REV. 453, 454–55 (1995); *see also Kukral v. Mekras*, 679 So. 2d 278, 285 (Fla. 1996) (noting the presuit notice and investigation requirements of Fla. Stat. Chapter 766).

At bottom, Mr. Phillips's allegations against Nurse Adams clearly sound in medical negligence. Florida courts have established that the provisions of the APSA cannot be used as a substitute for a medical negligence claim. Therefore, Mr. Phillips's § 415.1111 claim against Nurse Adams must be dismissed.

**D. Nurse Adams has sovereign immunity from claims of neglect.**

Lastly, to the extent Mr. Phillips seeks to hold Nurse Adams liable for neglect, the claim must be dismissed because she is immune under § 768.28, Florida Statutes. Subsection (10) of the statute provides as follows:

> (10)(a) **Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(10)(a), Fla. Stat. (emphasis added). Mr. Phillips alleged Centurion "contracted with FDC to provide medical care to prisoners." ECF No. 25 at ¶ 10. And it is undisputed that Nurse Adams was working pursuant to Centurion's contract. *See id.* at ¶ 15. Thus, Centurion and its employees or agents (*i.e.,* Nurse Adams) are agents of FDC under § 768.28.

Because Nurse Adams is an *agent* of FDC, she falls squarely within the protections of § 768.28(9)(a) for acts in the scope of his employment, including acts constituting negligence. *Jaar v. Univ. of Miami*, 474 So. 2d 239, 244 (Fla. Dist. Ct. App. 1985) (explaining sovereign immunity applies "to a physician who, within the scope of his governmental employment, negligently caused injury to another."). Section 768.28(9)(a) provides in pertinent part:

> (9)(a) **No** officer, employee, or **agent of the state or of any of its subdivisions shall be held personally liable in tort** or named as a party defendant in any action **for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such** officer, employee, or **agent acted in bad faith or with malicious purpose**

23

**or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.** …

(emphasis added); s*ee Bean v. Univ. of Miami*, 252 So. 3d 810, 816 (Fla. Dist. Ct. App. 2018) (collecting cases applying immunity under § 768.28 to private companies).

This application of the sovereign immunity statute to Nurse Adams is supported by rulings from federal district courts that have addressed the issue. *See Ferrell v. Florida Dep't of Corr.*, 4:21CV397-WS-MAF, 2022 WL 329985, at *5 (N.D. Fla. Jan. 13, 2022), *report and recommendation adopted,* 4:21CV397-WS/MAF, 2022 WL 327203 (N.D. Fla. Feb. 3, 2022) (concluding Centurion was entitled to sovereign immunity for wrongful death claim where no bad faith was alleged); *King v. Fla. Dep't of Corr. et al.*, Case No. 4:19-cv-488-RH-MJF at ECF Nos. 57, 66 (N.D. Fla. Oct. 13, 2020 and Nov. 5, 2020) (concluding Centurion had sovereign immunity for prisoner's state law claims); *accord Biddle v. Prison Health Servs., Inc.*, No. 09-20391-CV, 2010 WL 11553188, at *1 (S.D. Fla. Mar. 18, 2010) (dismissing negligence claim under § 768.28(10)(a) against FDC healthcare provider because "Plaintiff has not alleged [the contractor] acted outside the scope and guidelines of its contract with [FDC].").

The analysis is also supported by the Florida courts:

> The Florida Statutes, the clearest expression of legislative intent, give the Department [of Corrections] broad authority to contract with private entities, including for inmate health services, where it is advantageous to the state. *See* § 20.315(12). **They further facilitate, and arguably encourage, these arrangements by** exempting certain health services contracts from competitive-bidding requirements and **extending sovereign immunity to providers and vendors who provide contracted healthcare services to inmates**. *See* §§ 945.025(4), **768.28(10)(a)**.

24

*Crews v. Fla. Pub. Employers Council 79, AFSCME*, 113 So. 3d 1063, 1072 (Fla. Dist. Ct. App. 2013) (emphasis added).

So, to the extent Mr. Phillips seeks to hold Nurse Adams liable under § 415.1111 for neglect, such a claim is barred by sovereign immunity.

## LOCAL RULE 3.01(g) CERTIFICATION

After conferral, Plaintiff's counsel indicated he opposes this motion.

## CONCLUSION

For these reasons, the claims against Nurse Adams should be dismissed.

DATED: January 31, 2023

*/s/ Jacob B. Hanson*
Brian A. Wahl (FBN 95777)
R. Craig Mayfield, Esq. (FBN 429643)
Jacob B. Hanson, Esq. (FBN91453)
W. Blair Castle, Esq. (FBN 1031504)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL  33602
Telephone: (813) 559-5500 | Fax:(813) 229-5946
Primary Email:    bwahl@bradley.com
Primary Email:    cmayfield@bradley.com
Primary Email:    jhanson@bradley.com
Primary Email:    bcastle@bradley.com
***Attorneys for Defendants Connie Lynn Adams***