UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**DONNY PHILLIPS,**

    **Plaintiff,**

v.                                               Case No. 3:22-CV-997-BJD-LLL

**RICKY DIXON in his Official Capacity as Secretary of the Florida Department of Corrections, CENTURION OF FLORIDA, LLC, MHM HEALTH PROFESSIONALS, LLC, ALEXIS FIGUEROA, M.D., ELIZABETH HOLMES, BRITNNEY CANNON, CONNIE LYNN ADAMS, SGT. SAVONIA RICHARDSON-GRAHAM, SGT. DEBRA ALDRIDGE, and OFCR TERESSA FILLMORE HAWTHORNE**

    **Defendants.**

_____/

**MOTION FOR JUDGMENT ON THE PLEADINGS,
OR MOTION TO STAY**

Defendants Dixon, Richardson-Graham, Aldridge, and Fillmore Hawthorne, ("Defendants"), through the undersigned and pursuant to Rule 12(c), Federal Rules of Civil Procedure, file this motion for judgment on the pleadings, or alternatively, to stay this proceeding, and in support thereof, state as follows:

**I.    FACTUAL BACKGROUND**

Plaintiff is currently in the custody of the Florida Department of Corrections

1

(FDC) and has been for a number of years. ECF No. 25. The relevant facts date back to 2015 when Plaintiff filed his first lawsuit against FDC.

### A. 2015 Lawsuit

On June 8, 2015, Plaintiff filed a *pro se* Complaint against FDC officers alleging violations of his constitutional rights. *Phillips v. Solorzano, et. al.*, 1:15-cv-110 (N.D. Fla.) ("*2015 Case*"), ECF No. 1.[1] On May 24, 2016, James V. Cook, entered a Notice of Appearance on Plaintiff's behalf, and shortly thereafter filed an Amended Complaint alleging violations of Plaintiff's First and Eighth Amendment rights. On September 9, 2016, Defendants filed a Motion to Dismiss. *Id.* at ECF No. 33. The Court granted the motion, dismissing the Eighth Amendment claims with prejudice and the First Amendment claims without prejudice. *Id.*, ECF No. 44 at 24 *and* No. 46. On November 28, 2017, the Magistrate Judge ordered the Clerk to close the file.[2]

---

[1] Plaintiff also filed a *pro se* complaint against the Okeechobee County Detention Center employees alleging nearly identical violations of his rights (confiscation of medication; confiscating Plaintiff's diapers, forcing him to relieve himself in his clothing; and, finally, retaliation for filing medical complaints). Ultimately, the district court granted summary judgment in favor of both defendants. Id., Plaintiff appealed and the 11th Circuit Court of Appeals affirmed the decision of the district court. *Phillips v. May, et. al.*, 2-16-cv-14032-RLR, 11th Cir., Dec. 17, 2020.

[2] Although the Court dismissed the First Amendment claims without prejudice, Plaintiff failed to pursue them further and the Court closed the file when there were no defendants or claims remaining.

### B. 2018 Lawsuit

Just over three months after the Solorzano Case was closed by the Gainesville Division of the Northern District of Florida, Plaintiff, again represented by Cook, filed a new lawsuit against FDC and its officers alleging violations of his civil rights. *Phillips v. Inch, et al.* 4:18-cv-139 (N.D. Fla) ("*2018 Case*"). Plaintiff's Third Amended Complaint, filed on January 1, 2020, alleged violations of Plaintiff's First and Eighth Amendment rights, as well as violations of his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).[3]

During the course of litigation, Plaintiff filed a Motion for Preliminary Injunctive Relief. *2018 Case*, ECF No. 150. On April 19, 2019, Judge Mark Walker signed an order partially granting and partially denying Plaintiff's Motion for Preliminary Injunction. *Id.*, at ECF Nos. 150, 198. Prior to the July 18, 2019, expiration of the Preliminary Injunction, Plaintiff filed a Motion to Continue the Preliminary Injunction, which was denied by the Court on January 8, 2020. *Id.*, at ECF No. 312. Significantly, although Judge Alan Winsor denied Plaintiff's motion, he stated, "If things change, of course, (Plaintiff) can file a new motion," notifying both parties that he was willing to reconsider the issue if Defendants failed to continue to provide adequate care to Plaintiff. *Id.*, at p. 6. While the lawsuit was still

---

[3] Again, Plaintiff alleged that he was being denied adequate medical supplies and/or treatment and that he was subject to retaliation for filing grievances about the purported lack of care. *2018 Case*, ECF No. 311.

3

pending, on October 15, 2020, Plaintiff was transferred from Northwest Florida Regional Center (NWFRC) to Suwannee C.I., where he remains to date. ECF No. 25, ¶¶41-42. On February 11, 2022, Plaintiff filed a Stipulation of Dismissal as to all defendants. *Id.,* at ECF No. 445.

Subsequently, on February 16, 2022, FDC and Plaintiff, still represented by Cook, executed a Settlement and Release of All Claims. *Ex. 1, Settlement And Release of All Claims* ("Settlement Agreement"). In the Settlement Agreement, Phillips

> forever releases, acquits, and discharges … the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors of and from any and all claims, actions, causes of actions, demands, rights, damages … which [Plaintiff] **now has or which may hereafter accrue on account of or in any way growing out of the events and injuries that were at issue in this action, including any and all known and unknown, foreseen and unforeseen bodily and personal injuries**.

*Id.* at p. 1. (emphasis added). The plain language of the Settlement Agreement explicitly released FDC and its employees "from any and all" claims, actions and causes of action the Plaintiff had **at the time of signing**. *Id.* Moreover, it specifies that "[i]t is **further understood and agreed that this Settlement, and the consideration for it extends to all claims asserted or which could have been asserted by the Plaintiff against Defendant**" in the 2018 case. *Id.*, at p. 2. (emphasis added). The parties agreed that the Settlement Agreement was a compromise of a disputed claim, that FDC denied liability and intended to "avoid

4

litigation and buy their peace." *Id.* Further, the parties agreed that the only remedy for a breach of the Settlement Agreement is an action for breach of contract and the proper venue for such an action is in state court in Leon County, FL. *Id., at p. 3.*

### C. 2022 Lawsuit

On September 15, 2022, almost seven months to the day after executing the Settlement Agreement, Plaintiff, again represented by Cook, filed a Complaint initiating the instant case. ECF. No. 1. Yet again, Plaintiff is alleging violations of his First and Eighth Amendment rights, as well as violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). The Amended Complaint, filed November 17, 2022, is truly remarkable. ECF No. 25. Not only is it teeming with "facts" that are little more than unsubstantiated, self-serving conclusions, but Plaintiff also shamelessly includes numerous alleged violations that occurred in 2019, 2020 and 2021, a clear violation of the Settlement Agreement. *Id.*

## II.     ARGUMENT

This is the third lawsuit Plaintiff has filed against corrections officers since his arrest in 2011.[4] All three consist of claims that range from being substantially similar to nearly identical, including delayed access to or denial of what he believes to be appropriate medical care or treatment; retaliation by medical and corrections staff for submitting grievances which typically takes the form of denying him access

---

[4] *See* FN 1, *supra.*

to the bathroom or a shower (requiring him to sit in a soiled diaper for a period of time); interference with either his legal mail or legal journal; denial of adequate medical supplies (the quantity of wipes and ointments, as well as his preferred type and quantity of diapers); and denying him a wheelchair aide and/or therapeutic boots.

### A. Plaintiff is prohibited from bringing the current claims by the plain language of the Settlement Agreement.

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, "the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement."). Thus, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. Accordingly, courts should "attempt to effectuate the parties' intent," which requires courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id.* at 1290. In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod v. Sch. Bd. of Palm Beach Cty.*, 550 F. App'x 809 (11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that in cases of dismissal pursuant to a settlement agreement *res judicata* determinations are governed by

6

"traditional rules of contract interpretation"). As this Court knows, the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis.[5]

### 1. The intentions of both parties are clear.

Defendants made their intentions patently obvious in the Settlement Agreement by declaring they "intend merely to avoid litigation and buy their peace" with a payment of $25,000.00 to Plaintiff. *Ex. 1, Settlement Agreement*. In exchange, Plaintiff released Defendants from "any and all claims, actions, causes of actions, demands, rights, damages, costs loss of service, expenses and compensation, whatsoever, including attorney's fees, **which the (Plaintiff) now has or which may hereafter accrue** on account of or in any way growing out of the events and injuries that were at issue in this action . . ." *Id.* (emphasis added). Based on the plain language of the Settlement Agreement, Plaintiff's intent was to secure a monetary sum and FDC remitted $25,000.00 to Plaintiff via Cook, thereby satisfying its obligations.

### 2. The terms of the Settlement Agreement are complete.

Plaintiff, who was represented by Cook when he signed the Settlement Agreement on February 16, 2022, not only agreed to releasing the Defendants from

---

[5] "Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document …." *Norfolk*, 371 F.3d at 1290; *see also Sherrod*, 550 F. App'x at 812 ("Under Florida law, '[w]ords in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

all existing claims and causes of action at the time of its execution, but he also agreed that the three-page document contained the entirety of terms of the agreement between the parties. *Ex. 1, Settlement Agreement.* This is central to the issue at hand because there is not a single mention of any accommodations related to Plaintiff's disability and/or condition including, but certainly not limited to, provisions of wipes or ointments/creams, the quantity or type of diapers Plaintiff will receive, bathroom and shower passes or therapeutic boots.

Plaintiff's Amended Complaint includes an allegation that on March 9, 2021, Defendant Aldridge intercepted Plaintiff's legal journal and, along with other unnamed officers, photographed excerpts of the journal. ECF No. 25, ¶71. He claims her name was included in the journal because he was being denied access to showers. *Id.* He also asserts that "ADA inmates, like Plaintiff, had to wait until after 5:00 p.m." to use the shower under her watch. *Id.*, at ¶89. Plaintiff does not specify any dates, or even a time frame, for when this allegedly occurred, although he did tell her on or about March 9, 2021, that he wrote her name in the legal journal because he was being denied access to the showers, which is nearly a year before the Settlement Agreement was executed. *Id.*, at ¶¶71, 89.

Plaintiff accuses Defendant Richardson of refusing to charge his tablet on May 7, 2021, "to prevent (him) from communicating with his sister and having her help alert FDC when (he) needed help." ECF No. 25, ¶74. This also occurred nearly

8

a year before he released FDC and its employees from any claims he could have had and violates the Settlement Agreement. Moreover, even if it was true (which Defendants deny), there is not even a suggestion that (1) Plaintiff was in need of and/or denied help at or around that time, or (2) that Defendant Richardson had any intention of preventing Plaintiff from contacting his sister for any reason. Similarly, Plaintiff's only claim against Defendant Fillmore Hawthorn allegedly occurred on May 9, 2021. ECF No. 25, ¶75. Finally, Plaintiff asserts that Defendant Richardson again refused to charge his tablet on May 12-13, 2021, but he alleges, once more without any factual basis, that her reason for doing so was to retaliate against him for filing complaints and grievances. ECF No. 25, ¶77. He further claims that during or around this time, Defendant Richardson did not permit him or other ADA inmates to shower until after 5 p.m. *Id.*

The sole allegation against Defendants that occurred after February 16, 2022, is an alleged threat from another inmate directed to Plaintiff. ECF No. 25, ¶95. The Amended Complaint identifies the inmate who allegedly made the threat, but fails to provide any further information such as how or where it was made, or whether it was reported or witnessed by anyone else. *Id.* Plaintiff relies on statements Defendants purportedly made in the presence of other inmates claiming Plaintiff is a snitch and/or an undercover federal agent to suggest that they are responsible for the threat. ECF No. 25, ¶¶90-96. Although Plaintiff has specific dates for nearly

9

every allegation in the Amended Complaint, he not only fails to provide a date or even a time frame for the alleged comments by Defendants Richardson and Aldridge (perhaps intentionally so) but he goes even farther by asserting that said comments "were tantamount to a death sentence."[6] ECF No. 25, ¶¶90-96.

Each and every allegation Plaintiff raises against Defendants in the instant case is prohibited by the Settlement Agreement, thus making a Judgment on the Pleadings the most efficacious and fair resolution to this matter.

### B. Alternatively, these proceedings should be stayed pending resolution of Defendants' claims for breach of contract in state court.

"A district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket.'" *Vintage Bay Condo., Ass'n v. Lexington Ins., Co.*, 2019 U.S. Dist. LEXIS 40053, at *2 (M.D. Fla. 2019) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997). 17 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). "The party seeking the stay must show good cause and reasonableness." *Concord at the Vineyards Condo. Ass'n v. Empire Indem. Ins. Co.*, 2021 U.S. Dist. LEXIS 190690, at *2 (M.D. Fla. 2021). In deciding whether a stay is suitable, courts examine several factors including (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues and streamline the trial, (3) whether a stay will reduce the burden of litigation on the parties and on the

---

[6] Despite the alleged imposition of a death sentence, the undersigned verified prior to filing this Motion that Plaintiff is very much alive.

court." *Baxa Corp. v. ForHealth Techs.*, 2006 U.S. Dist. LEXIS 28583, at *5 (M.D. Fla. 2006). Defendants respectfully submit that these factors all weigh heavily in favor of this Court entering a stay in the instant matter if this Court does not grant Defendants' Motion for Judgment on the Pleadings.

### 1. A stay in the proceedings will not prejudice Plaintiff.

In the instant case, Plaintiff will not be prejudiced by a stay – much less unduly so – for numerous reasons. The lawsuit is, for all intents and purposes, only a few months old; it was filed on September 15, 2022, followed by an Amended Complaint on November 17, 2022. ECF Nos. 1 and 25. The October 27, 2023, deadline for discovery is over eight months away. ECF No. 37. Additionally, no substantial discovery has been done and there are no depositions currently set in the matter. *See, e.g., Concord,* 2021 U.S. Dist. LEXIS 190690, at *3 (M.D. Fla. Oct. 4, 2021) ("This case is only months old.").

Finally, to the extent that Plaintiff would face any prejudice by either waiting for the resolution of the state-court case or asserting his claims as counterclaims therein, this Court should find that he waived those arguments when he, along with Cook, agreed to the forum-selection clause in the Settlement Agreement. *McCoy v. Sandals Resorts, Ltd.*, 2019 U.S. Dist. LEXIS 199922, at *45 (S.D. Fla. 2019) (upholding a hotel contract's forum-selection clause because the plaintiff could make his claims in the previously agreed upon forum without undue prejudice).

11

### 2. A stay will simplify the issues and streamline the proceedings.

A state court decision that Plaintiff has violated the terms of the Settlement Agreement by filing the instant case would most certainly streamline the proceedings by rendering the instant case moot. *Vintage Bay,* 2019 U.S. Dist. LEXIS 40053, at *3 (M.D. Fla. 2019)

### 3. A stay will reduce the burden of litigation on this Court and the parties.

A stay in this matter will undeniably and significantly reduce the burden of litigation on this Court and both parties. It is indisputable that Plaintiff's complaint, drafted and filed by the same attorney who represented him when he executed the Settlement Agreement, includes the same allegations that were included in and the basis for the 2018 case along with allegations that were very clearly released in the Settlement Agreement.

By entering a stay in this matter and allowing Defendants to pursue a breach of contract claim in state court, this Court will not only preserve judicial resources but also eliminate the need for both parties to engage in (and incur the costs of) extensive discovery. *Peschke Map Techs. LLC v. Miromar Dev. Corp.*, 2015 U.S. Dist. LEXIS 142444, at *8 (M.D. Fla. 2015) (quoting *Alps S., Ltd. Liab. Co. v. Ohio Willow Wood Co.*, 2011 U.S. Dist. LEXIS 31666 (M.D. Fla. 2011) ("a stay will preserve judicial resources and the cost of litigation to the parties by allowing the [the Patent and Trademark Office] to fully address potential claim limitations.").

## III.  CONCLUSION

For the foregoing reasons, this case should not have been brought due to the Settlement Agreement in the 2018 lawsuit.

Wherefore, Defendants respectfully request this Court grant Final Judgment on the Pleadings in their favor. Alternatively, Defendants request a stay on the proceedings of this court so that they may proceed to invoke their rights in state court as provided for in the Agreement.

Respectfully submitted,

/s/ *Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Email: Tom@jsh-pa.com
*Attorneys for Defendants Dixon, Richardson-Graham, Aldridge, and Fillmore Hawthorne*

## **LOCAL RULE 3.01(g) CERTIFICATION**

After conferral via videoconference on February 20, 2023, Plaintiff's counsel opposes this motion.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on all parties' counsel on February 21, 2023.

*/s/ Thomas Buchan*
Thomas Buchan
