UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

    Plaintiff,

v.

RICKY DIXON, et al.,

    Defendants.

Case No. 3:22-cv-997-BJD-LLL

**PLAINTIFFS' NOTICE OF SERVING RESPONSES
TO DEFENDANT DIXON'S FIRST DISCOVERY REQUESTS**

Plaintiff Donny Phillips, through counsel, pursuant to the Federal Rules of

Civil Procedure, has served on the above Defendant Plaintiff's Responses to First

Requests for Discovery, with a copy of this notice.

I CERTIFY a true copy hereof was served electronically on 7/13/23 on:

Thomas Buchan, Esq., Howell, Buchan, and Strong, Tom@jsh-pa.com

Respectfully submitted,    *s/James V. Cook*
    JAMES V. COOK, ESQ.
    Florida Bar Number 0966843
    Law Office of James Cook
    314 West Jefferson Street
    Tallahassee, FL 32301
    (850) 222-8080
    (850) 561-0836 fax
    cookjv@gmail.com

<u>**Plaintiff's Responses to Defendant Dixon's First Interrogatories**</u>

**Note: I admit at the outset that Defendant Dixon possesses records yet unproduced that will yield additional evidence as to the deprivations and violations below. I am seeking records and information that will allow me to supplement and expand the responses below.**

1. Identify and describe every benefit, service, program, or activity for which you were denied access. For each of these specific items, describe how you made your request, to whom, and when.

**Response: I can't describe every benefit, service, program, or activity I was denied since every denial has a chain-reaction effect on other benefits, services, programs and activities. The denial of enough diapers, confiscation or dishonoring my shower and bathroom passes, can result in an inability to go to chow or other places where foul-smelling, feces and urine-laden diapers make me a target of abuse by prison staff and violent inmates at Suwannee C.I. The denial of adult pull-up diapers not only results in the denial of food, but also of social interaction and sleep (since it is hard to sleep in soiled diapers). Even when you have clean diapers, the possibility of having an accident and not being able to access a bathroom or have an extra diaper or enough wipes makes me think twice about going somewhere and taking advantage of a service or program. The denial of therapeutic boots or a safe, working wheelchair affects my ability to take steps holding onto my wheelchair to gain mobility, improve my circulation, and help fight the recurring bouts of cellulitis which have affected my right leg since 2018 and appear to be attacking my left leg as well. During short periods in prison, I was permitted to have therapeutic boots which reinforced my weak ankles and let me follow a therapeutic program that was prescribed for me but I have been denied such therapeutic boots at Suwannee despite my frequent requests. But when prison staff have seen me taking steps holding onto my wheelchair, they have often threatened to take it away as "unnecessary." The intermittent denial of an impaired inmate assistant makes it hard for me to cope with non-pull-up diapers and to get to places like chow or medical even when I have clean diapers. The constant threats of confinement for writing grievances and the interception of grievances makes it hard to get abuses corrected without having a lawyer. The fear and the pain are both things that limit my activities. The fear of losing my leg or my life because of not being able to stay clean cause me to feel depressed and limit my ability to be active and positive about life.**

2. Identify each physical or mental condition or diagnosis which classifies you as "disabled" under the definitions, guidelines, and provisions of the Americans with Disabilities Act of 1990. For each of these conditions, identify the physician(s) who diagnosed the condition(s), identify the physician(s) with whom you treated for each condition(s), and identify each physician(s) who classified you as "disabled."

**Response: I can't provide a complete list of physical or mental conditions since I never had a complete medical examination or assessment of my physical or mental condition. However, my medical records say I have kidney failure, Hyperlipidemia, spinal cord lesion, wheelchair dependence, obesity, and venous insufficiency. I don't know if that is accurate or complete. I understand that I should have diagnostic imaging like an MRI to see if I have a bone infection, but I when I asked, I was told by nurses that Centurion won't pay for an MRI. I have had problems with my veins and off and on I've gotten a blood thinner. I have a spine injury that affects my ability to walk on my own (and also affects my ability to sense when my bowels or bladder are full). I never received adequate physiological examination to diagnose my condition and I was simply classified as "paraplegic" in my medical records on December 13, 2013, shortly after the beginning of my incarceration on November 21, 2013. No physical examination or neurological testing was done before the diagnosis was made. But I have always known that I could lock my knees and take steps, a few at a time, holding onto my wheelchair. Through the process of litigating my rights, I learned that my actual condition was called "paraparesis." I once was given therapeutic boots that supported my weak ankles and allowed me this kind of exercise. I had boots at Mayo C.I. before I moved to Franklin C.I. around 2016 but the boots were taken away from me when I moved to Franklin C.I. I finally was provided with therapeutic boots again in 2019 but they were stolen from my locker and never replaced despite my repeated requests. I asked Dr. Figueroa if I could purchase my own high-topped tennis shoes to support my ankles but he let me know I wouldn't be permitted to get the shoes even at my own expense as long as I was at his institution. I also have Peripheral Artery Disease (PAD) which means (to me) that the blood doesn't get down into my legs to help fight infection and makes me more prone to my most recent major health condition which is cellulitis which, to my understanding, never completely goes away, but flares up repeatedly, resulting in hot, red, scaly skin and open spreading sores. I understand the soft tissue infection can reach your bones and once it gets into the bones it is almost impossible to get rid of but I have never received the kind of diagnostic imaging that it takes to see whether that has happened.**

3. Itemize all losses and damages you incurred as a result of the allegations in your Amended Complaint.

**Response: I can't list "all" losses and damages I have incurred as a result of the repeated violations of constitutional rights and federal statutes by Florida Department of Corrections staff and its medical providers and I defer to my attorneys and medical experts to identify the rights and laws violated and the physical effects of the violations. I do know that the once-healthy tissues of my right leg have been repeatedly infected with cellulitis, which is a dangerous condition that can quickly spread to the blood and bone and cause amputation or death. It looks like the cellulitis is spreading to my left leg too. My medical experts have said that each attack of cellulitis makes the next one more likely to occur and more dangerous. FDC has practiced a kind of "brinksmanship" where they intermittently suspend treatment and let my condition to grow worse, and then start back with antibiotics and wound care that allows my leg to recover somewhat, but not completely, only to repeat the process again and again. It should be noted that I have suffered repeated bouts of cellulitis since 2020 at Suwannee C.I. and have never been moved to a certified wound care facility as is required by FDC rules for wounds that do not heal in two months. Cellulitis is noted on June 12, 2020, on my Transfer/Arrival Summary and signed off on by Dr. Figueroa on October 20, 2020. It is noted on November 12 and 17, 2021; October 27 and November 7, 2022, and elsewhere in my medical records. At the same time my bouts of cellulitis are occurring, prison staff refuse to honor my bathroom and shower passes, forcing me to remain in feces- and urine-laden diapers for hours (sometimes days) at a time, or providing ill-fitting diapers that allow urine and feces to trickle down my legs and denying me even a handful of toilet paper to clean myself so that I am forced to use my facecloth, which I have no way to decontaminate. I have been unable to improve my circulation by exercise because I have been denied therapeutic boots (or high-topped tennis shoes that I offered to buy myself) that strengthen my weak ankles and allow me to take steps holding onto my wheelchair. Prison staff has threatened to cut the pouch off my wheelchair that holds my sanitation supplies and allows me to change diapers and apply barrier creams (to the extent they are provided to me) wherever I may be on the compound (if my bathroom pass has not been confiscated or dishonored and I am allowed access to a bathroom). I am intermittently denied an extra pillow or wedge to elevate my leg to prevent swelling at night. I am intermittently denied and then granted ADA status and treatment. I am repeatedly threatened with confinement which results in a denial of care and accommodations. I am subjected to repeated punishments and humiliating slurs that affect my state of mind. I am daily confronted with the prospect of losing my legs or my life in the several months that remain in my sentence.**

4. Identify every instance since February 2022 where you were deprived of the below items or services. For each identified instance, include the precise item or service of which you were deprived, the identity of the individuals, whether Department of Corrections employees or contract employees of Centurion who deprived you of any of the below items or services, the date, time, and location where and when you were deprived of any of the below items or services, and the identity of each individual with whom you have discussed each specific instance of being deprived of any of the below items and services:

a) Means of communicating, whether by tablet, phone, email, letters, or other methods;

b) Bathroom and shower pass(es);

c) Wheelchair which you were assigned and by whom it had been assigned and for what period of time;

d) Wheelchair which you were not assigned but were using;

e) Impaired inmate assistant;

f) Medical treatments;

g) Medical supplies;

h) Prescriptions;

i) Food or water;

j) Transfer or change in your inmate classification status or privileges; and

k) The grievance process.

Response: I cannot recount "precisely" each time I was deprived of items or services since they have been so many and because some of them occur without my knowledge on the pretext of security so that I am often misled and I don't always know what I am entitled to. For instance, I was repeatedly told that I and any unassigned inmate who helped me could be thrown in confinement for his rendering aid. In any case, I know they can easily put anyone in confinement for whatever reason so we obey and I go without help. However, these are some:

(a)     Communications. I have repeatedly been deprived of my means of communication with my family both by confiscation of my tablet or refusal to let me charge it, or by interception and blocking of messages. My personal and legal correspondence has been taken from my locker during searches (without receipt or acknowledgment. After one such search, a sergeant confronted me and asked why his first and middle name were found in my legal papers and correspondence. He threatened me with physical harm if he ever saw his name mentioned in my papers again. He said, "I will flip your ass out of that wheelchair, and that wheelchair will be the last thing you ever remember." On or about February 22, 2022, Defendant Sgt. Aldridge handed me one of my grievances to which I had never received a response that she said she found it in the back of a file drawer in the officer's station. I then submitted the intercepted grievance with an explanation, but it was rejected because it was no longer timely. The 15 days to file the grievance had passed.  I can't recite every instance in which mail or grievances were intercepted or blocked but I'm aware that it frequently happens to me and other inmates at Suwannee C.I. There is almost universal hostility to "writ-writers" which is what they call inmates who write grievances (of which I admit to writing many) and lawsuit complaints. I do know that the U.S. Constitution guarantees us all the right to "redress of grievances." On or about July 25, 2021, my sister had not received an email I sent her on my tablet on June 21, 2021, even though Ms. Pope told my sister she would be releasing my emails. my access was blocked. As of July 26, 2021, access to tablet/kiosk was no longer blocked, but my sister has not received any messages since June 21, 2021. Ofcr. Zamora, while searching my property, went through my legal mail and read my journal containing my 1983 Federal Case Violations and showed it to Defendant Sgt. Aldridge, who later called me down and asked why I was keeping notes on her. I can tell by comments they make that the legal mail handlers are reading outgoing and incoming legal mail. They would take my unsealed legal letters where I could not see what they were doing, rather than sealing them in my presence. We are told that staff are not supposed to handle unsealed legal mail outside presence of inmates, but they do. They interfere with communications through group punishment. I have had officers announce that my dorm would not have access to the legal mail window because I filed a grievance – and they announced the reason to everyone, so I got a lot of threats.

(b)     Passes. Since coming to Suwannee C.I., I have been deprived of bathroom and shower passes altogether. For example, on May 10, 2021, I urinated on myself, explained to Ofcr. Teressa L. Filmore Hawthorne that I needed to get in the ADA shower to rinse off urine from my skin. She refused and told me to clean myself with my washcloth. Recently I have been told I am no longer considered an ADA inmate. Defendant Dr. Figueroa has explicitly stated to me that he does not care about me or any Federal Judge or Court. Corrections officers frequently do not honor valid medical passes and ADA passes are sometimes confiscated at ADA conferences without explanation, as happened recently at Suwannee C.I. These ADA conferences are composed of both medical and correctional staff. I have been refused access to the ADA shower until after 5:00 pm on weekdays while non-ADA inmates have free access. Bathroom and shower passes were not renewed at Suwannee C.I. Most recently, I was told to hand all my passes over to Defendant Nurse Cannon and she confiscated them stating that they had expired. That is clearly untrue since the passes, of which I have copies, were all set to expire in September of 2023. Moreover, I have repeatedly had my passes dishonored by prison staff who rely on their ability to place inmates in confinement for failure to obey orders to force inmates to obey without question orders that are contrary to well-known rules. I was also informed that I was no longer considered an ADA inmate and I was moved to a non-ADA bunk. In June, 2023, I was locked up in confinement on a false disciplinary report. During this time, prison officials did not let me shower every day and my leg was getting worse. I was locked up with several days' worth of dirty diapers on the floor because they did not provide a biohazard bag.

(c)     Current wheelchair. I currently have an old and dangerous wheelchair that Defendants are refusing to replace. Most of the time, I have lacked a wheelchair assistant. Moreover, Defendant Cannon has threatened to "cut off" the wheelchair pouch that allows me to carry extra diapers and barrier creams and wipes (to the extent that these things have been provided) and other sanitation supplies that will allow me to clean myself after accidents that occur away from the dorm. I have repeatedly asked for a wheelchair in good working condition. I have also been moved to a non-ADA bunk that is set up to make it hard to access my wheelchair quickly when needed. I asked about getting a wheelchair my size with back pockets. Last year, Sgt. Richardson pulled off the left arm of my wheelchair, leaving a sharp area. Recently I received a wheelchair pass which would limit wheelchair use to long distance movement. I am not able to move more than a few steps holding onto my wheelchair and if I didn't have it I would be unable to get to call-outs around the compound. Clearly prison staff are using my efforts to carry out mobility therapy (although it is difficult without therapeutic boots) as an excuse to take away my wheelchair altogether which could only be seen as retaliation for writing grievances.

(d)     **Wheelchairs not assigned.** I have always had an assigned wheelchair since the beginning of this incarceration.

(e)     **Impaired Inmate Assistants.** Prison staff have refused to assign me an impaired inmate assistant for long periods of time. At Suwannee C.I., they  have long been ignoring the Settlement Agreement in *Disability Rights Florida v. Jones* that provides that disabled inmates can take advantage of the "natural support" of other inmates where needed.[1] Inmates are often afraid to help me for fear of retaliation. Inmates who try to help me are often subjected to sudden searches of their property as retaliation and as a warning, threatened with confinement, or moved to another housing area. I have often been forced to miss chow because I couldn't make it in time without help. Inmates who were assisting me in I-1 Dormitory under the Natural Support System in the Settlement Agreement can no longer help me because I was moved to another dorm and placed in a non-ADA bunk. I have since been told I am no longer an ADA inmate.

(f)     **Medical Treatments.** I am frequently denied medical treatments that impact my health and accommodations. I am supposed to have skin checks by clinicians which are triggered by the results of the Braden Scale skin condition inventory which are frequently mis-scored to avoid the need to make a referral to a clinician, endangering me but saving the clinicians work. I need ongoing wound care but Defendants continue wound care only to the point of closing the open leg wounds and then suspending care until the wounds open up again. The intermittent denial of medical supplies and dishonoring or confiscation of passes results in a new spread of infection (beginning to affect my left leg as well as my right leg) and when the wounds become prominent, wound care and perhaps another round of antibiotics are provided, risking the development of resistant bacterial infections. I was seen by Dr. Figueroa about the open wounds on my right leg. But they are not mentioned in his medical report. Instead, he stated that everything looks really good and that I just had slightly high cholesterol. At the time, he stated to me that he would order wound care for me and for me to wait in the lobby until he could get a sonagram for my kidneys and bladder. I have heard nothing of the results. The wound care prescribed by the doctor does not appear to be working. The sores will heal and then new open sores will appear on my right leg weeks later. Earlier this year, I was given some kind of medicated wrap around my right leg that was supposed to heal the infection. That night, had an accident that went down my leg and soiled the medicated wrap. The nurse came and re-wrapped my leg without properly cleaning it. At the peak of infection, my

---

[1] The Settlement Agreement signed by Julie Jones on July 7, 2017, provides: § 24, Natural Supports – a covered inmate shall not be punished on the sole basis that he or she asked for another inmate for help due to his disability, or accepted such help, and an inmate shall not be punished on the sole basis that he or she provided such help.

leg is very red and warm with multiple open sores. Nurses do not always document these sores and my Braden Scale inventories are often falsified.

(g)     **Medical Supplies.** Gradually, my sanitation, supplies, intended to avoid new bouts of cellulitis, especially barrier creams, antiseptic soap, and wipes, have been reduced so that I run out before new supplies are available. Beginning when I first came to Suwannee C.I. on October 15, 2020, all my sanitation supplies were provided piecemeal, flat denials, insufficient numbers, wrong sizes, missing barrier creams and antiseptic soap, and then only after much begging. At times, I was asked to sign "compliance" acknowledgements for supplies I had not gotten. Not until just after Christmas did I get anything like a full set of sanitation supplies. In 2019, in his preliminary injunction, Northern District Chief Judge Mark Walker ordered FDC to provide me with up to five diapers a day (35 a week) or more as needed. Dr. Figueroa at Suwannee C.I. reduced that to three a day. By 2021, that had been reduced to 20 a week. Around the first of the year, my diaper supplies were reduced from 20-count packs to 15-count or 18-count. I now run short of diapers each week and have to beg or borrow from other inmates or have to spend hours and sometimes days wearing dirty diapers. Despite being previously told that pull-up diapers were not allowed on the compound, but a nurse once gave me two of them. With smaller amounts of barrier cream, I run out early. Now I get smaller packets of antiseptic wipes (initially I received 80-count packs; now I get 50-count)[2] require me to use toilet paper to clean myself. When I can't get enough toilet paper, I must use my face cloth to clean myself, which I have no means to decontaminate, spreading the bacteria all over my body. Dr. Figueroa said that Suwannee C.I. does not have the medical supplies I need and implies he isn't going to try to get them. I asked Nurse Holmes for pull up diapers and she said I would not get any. I continue to be refused access to pull-up diapers. On September 12, 2022, other ADA inmate received pull-up diapers but I did not. On March 19, 2023, I had been out of diapers for two days and had to get them from another inmate. On July 15, 2022, my medical wipes were summarily confiscated by a corrections officer.

(h)     **Prescriptions.** When I first came to Suwannee C.I. on October 15, 2020, all my medications were confiscated and I am still frequently denied medications. During the rare opportunities that I am given to meet with Defendant Dr. Figueroa, I am often promised that my needed prescriptions will be provided or renewed, but often no such order is given for long periods of time. I am diagnosed with hyperlipidemia, but Dr. Figueroa has failed to order my cholesterol medications for long periods of time. On May 5, 2021, I was told by

---

[2] The wipes I receive are marked, "do not use on open sores" but open sores are frequently all over my lower right leg.

Dr. Figueroa that my cholesterol was high, to which I replied that it was because I have been out of my cholesterol medication for around 13 weeks. Figueroa said he would reorder it. I go months without any barrier creams which make a huge difference in the condition of my right leg, especially A+D skin protectant. In 2022, Dr. Figueroa began giving me a 1.05 oz tube of zinc oxide instead of two 4 oz. tubes of A+D skin protectant.

(i)     Food or Water. Since I am often without a safe wheelchair or an impaired inmate assistant or I am forced to wear dirty diapers which invite attacks from the inmate population at Suwannee C.I. I often have to miss chow. Inmates are afraid to push me for fear of retaliation. I am also sometimes forced to wheel myself while in serious pain due to arthritis. I sometimes have call-outs that require me to travel substantial distances in a short time so that I may be far from the dining hall at chow time. Inmates who are willing to help me with mobility or other needs or help me to get to chow on time are often threatened with being placed in confinement or moved to another dorm.

(j)     Transfers and Privileges. I am being held at an institution that has a relatively higher proportion of violent and mentally ill inmates. As an older, disabled chronically-ill inmate who is visibly mistreated and disrespected by prison staff, predatory inmates are made aware that I can be abused and extorted without consequences. Prison officials have made it clear that I can be deprived of ADA status and accommodations or placed in confinement at will. I am currently suffering from chronic infections that are never completely healed, at great risk to my life. This results in a nightmare of insecurity for an elderly, ill, and disabled inmate, and risks my life. Once a sergeant got mad at me because I had an emergency on the ADA toilet and spent too long in the bathroom, so she asked inmates in my dorm would somebody please stab that motherfucker. I am housed with more dangerous inmates. Because of the frivolous disciplinary reports that have been written on me, it makes an excuse to house me with more violent offenders. Sgt. Richardson-Graham told other inmates I was a "snitch" because I wrote grievances, which is like a solicitation to murder.

(k)     Grievances. I am considered a "writ-writer" because I frequently write grievances. The grievances I write are timely, comport with the rules, and give FDC notice of real actionable situations and yet are routinely denied. I periodically file grievances that are not responded to and I have been made aware of a grievance that I had properly filed but was found in the back of a file cabinet in the Officers' Station. I was never able to have that intercepted grievance heard because by the time it was returned to me, it was untimely. To my understanding, that event was never investigated by FDC.

5. Identify all experts you have consulted on this lawsuit for any reason and include whether they will be called at trial.

**Response: I expect we will call Dr. Jason Chertoff, MPH, MD, who has written a peer-reviewed article on the three-fold risk of Florida Department of Corrections prisoners for death by sepsis, as compared with non-prisoners. He reported on my early cellulitis attacks and put FDC officials and medical providers on notice of the increasing danger presented by cellulitis to a person with my special vulnerabilities. We will also plan to call Dr. Homer Venters, MPH, MD, a leading expert in the field of medicine and epidemiology in a corrections setting, a Senior Health and Justice Fellow of the Community Oriented Correctional Health Services (COCHS), and a recognized national leader in health and human rights. Dr. Venters served as the Director of Programs for Physicians for Human Rights and the Chief Medical Officer for the NYC Jail system. In addition to being the author of Life and Death in Rikers Island, Dr. Venters has had over 50 peer reviewed scientific articles on the topics of health and justice involvement, work that has been cited by the US Supreme Court and led to testimony before Congress. He received his MD from the University of Illinois, Masters of Public Health Research from NYU and completed his residency in Social Internal Medicine at Montefiore Medical Center. Dr. Venters is a Clinical Associate Professor at the NYU College of Global Public Health. Each of the experts has a somewhat different perspective on health in a corrections environment and all are expected to testify at trial.**

## VERIFICATION AFFIDAVIT

Signature of Person Attesting to the Truthfulness of Interrogatories: _____

Print Name: Downzy Phillips

STATE OF FLORIDA, COUNTY OF: Suwannee

    The foregoing was acknowledged before me this 28 day of June, 2023 who is personally known to me ___ or has produced Inmate ID _____ as identification.

**CHRISTINA M. QUINN**
Notary Public
State of Florida
Comm# HH351104
Expires 1/19/2027

_____
NOTARY PUBLIC

My Commission Expires: 01/19/27

### First Request for Admissions

1. On August 24, 2020, you received the following:
   a. McKesson Diaper – size large. Two 20-count package.
   b. Wipes. One 50-count package.
   c. A+D Skin protectant. Two 5g packs.
   d. Dial soap bar.
   e. Hibiclens. One 8 oz. bottle.

   **Response: Admitted, but noted that 10 grams of A+D skin protectant were not enough to last a week and I ran out; the 50-count packs of wipes was a reduction from the original 80-count packs and were not sufficient to let him clean himself so that I had to use his face cloth, which he had no way to decontaminate; also with the reservation that he was placed in a confinement cell on 8/21 because of lack of ADA bed space and prison officials would not remove my accumulated dirty diapers from the cell for days.**

2. On August 31, 2020, you received the following:
   a. McKesson Diaper – size large. One 20-count package.
   b. Wipes. One 50-count package.
   c. A+D Skin protectant. One 4 oz. tubes.
   d. Dial soap bar.
   e. Hibiclens. One 8 oz. bottle.
   f. Garbage bags, small/clear, seven count.

   **Response: Admitted and further clarified that the garbage bags that were provided were for the 50 or so dirty diapers which had not been removed from my cell for a week or more and that one 4 oz. tube of A+D skin protectant was not enough for a week and that prison staff refused to take the garbage bags of dirty diapers out of my cell; and the 50-count pack of wipes was insufficient.**

3. On September 7, 2020, you received the following:
   a. McKesson Diaper – size large. Two 20-count package.
   b. Wipes. One 50-count package.
   c. A+D Skin protectant. Two 4 oz. tubes.
   d. Dial soap bar.
   e. Hibiclens. One 8 oz. bottle.
   f. Garbage bags, clear, seven count.

   **Response: Admitted and further noted that prison staff, who refused to take the garbage bags of dirty diapers out of my cell even though Nurse Lucas asked them to, finally moved them on September 5. I**

was completely out of A+D skin protectant for days before I finally got the two four-ounce tubes. I had to clean myself with my face cloth which I had no way to decontaminate.

4.      On September 14, 2020, you received the following:
   a.  McKesson Diaper – size large. Two 20-count package.
   b.  Wipes. One 50-count package.
   c.  A+D Skin protectant. Two 4 oz. tubes.
   d.  Dial soap bar.
   e.  Hibiclens. One 8 oz. bottle.
   f.  Garbage bags, small/clear, seven count.

**Response: Admitted and further noted that I was forced to miss my normal ADA meeting but made me sign a paper that said I had it in my cell. I was deprived of my pass for compression socks.**

5.      On September 21, 2020, you received the following:
   a.  McKesson Diaper – size large. Two 20-count package.
   b.  Wipes. One 50-count package.
   c.  A+D Skin protectant. One 4 oz. tubes.
   d.  A+D Skin protectant. Eleven 5g packs.
   e.  Dial soap bar.
   f.  Hibiclens. One 8 oz. bottle.

**Response: Denied. I was passed up when hygiene supplies were distributed. Two weeks later, I was moved to Suwannee. All my medications were confiscated, and I was placed in confinement without toilet paper or anything to clean myself with. I had to urinate and defecate in my clothing because I wasn't given diapers for days and I was threatened to be placed back in confinement for complaining. I was denied access to the canteen. At least once I was forced to sign a "compliance" paper on my sanitation supplies in return for being provided a single XXL diaper.**

6.      On December 27, 2020, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but further noted that I had been going for 14 weeks with inadequate supplies of diapers and sanitation supplies at Suwannee up to that point. I need pull-up diapers because of my paraparesis but I was told they weren't available. I am no longer getting my Dial soap or A+D skin protectant. The non-pull-up diapers are hard to put on and I have no impaired inmate assistant to**

**help me. At one point I was ordered to sign six "compliance" forms in order to get a single week's sanitation supplies (still missing skin protectants or cleansers).**

7.    On January 3, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted and noted that I am no longer getting his Dial soap or skin protectant. My 50-count pack of wipes is still inadequate and forces me to clean myself with my face cloth.**

8.    On January 10, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted and noted that I am no longer getting my Dial soap or skin protectant. My 50-count pack of wipes is still inadequate and forces me to clean myself with my face cloth.**

9.    On January 17, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Zinc oxide barrier cream. One tube.
   d.  Hibiclens. One 8 oz. bottle.

**Response: Admitted. But noted that the zinc oxide was a small 30-gram tube and not a reasonable replacement for the two four-ounce tubes of A+D skin protectant I used to get. Still no Dial soap and still an inadequate supply of wipes.**

10.    On January 24, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted. But noted that I am no longer getting the skin protectant or Dial soap and still an inadequate supply of wipes.**

11.    On January 31, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted. But noted that I am no longer getting the skin protectant or Dial soap and still an inadequate supply of wipes. I am also being denied bathroom and shower passes. I am still not getting pull-up diapers.**

12. On February 7, 2021, you received the following:
   a. McKesson Diaper – size large. One 20-count package.
   b. Wipes. One 50-count package.
   c. Hibiclens. One 8 oz. bottle.
   d. A+D.

   **Response: Admitted. But noted that I am no longer getting Dial soap and still an inadequate supply of wipes. I received a tube of A+D skin protectant for the first time in nearly five months. No dial soap. No pull-up diapers. No impaired inmate assistant.**

13. On February 14, 2021, you received the following:
   a. McKesson Diaper – size large. One 20-count package.
   b. Wipes. One 50-count package.
   c. Hibiclens. One 8 oz. bottle.

   **Response: Admitted, but no skin protectant, no Dial soap, no pull-up diapers, inadequate wipes, no impaired inmate assistant, and all my passes have been taken away.**

14. On February 21, 2021, you received the following:
   a. McKesson Diaper – size large. One 20-count package.
   b. Wipes. One 50-count package.
   c. Zinc oxide barrier cream. One tube.
   d. Hibiclens. One 8 oz. bottle.
   e. A+D 1.2.

   **Response: Denied as to A+D skin protectant. Only a 1.05 oz. tube of zinc oxide, no Dial soap, no pull-up diapers, inadequate wipes, no impaired inmate assistant, and no bathroom or shower passes.**

15. On February 28, 2021, you received the following:
   a. McKesson Diaper – size large. One 20-count package.
   b. Wipes. One 50-count package.
   c. Hibiclens. One 8 oz. bottle.

   **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no Dial soap, and no skin protectant.**

16. On March 4, 2021, you received the following:
   a. A+D Ointment.

**Response: Admitted, but an inadequate supply.**

17. On March 7, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

    **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no Dial soap, and no skin protectant.**

18. On March 14, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Zinc oxide barrier cream. One tube.
    d. Hibiclens. One 8 oz. bottle.

    **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single 1.05 oz. tube of zinc oxide, and no Dial soap.**

19. On March 21, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.
    d. A+D Ointment.

    **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single tube of A+D skin protectant, and no Dial soap.**

20. On April 25, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

    **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

21. On May 2, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

    **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

22. On May 9, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.

      c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

23.    On May 15, 2021, you received the following:
    a.  A+D Ointment.

**Response: Admitted. But a single tube.**

24.    On May 16, 2021, you received the following:
    a.  McKesson Diaper – size large. One 20-count package.
    b.  Wipes. One 50-count package.
    c.  Zinc oxide barrier cream. One tube.
    d.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single 1.05 oz. tube of zinc oxide, and no Dial soap.**

25.    On May 23, 2021, you received the following:
    a.  McKesson Diaper – size large. One 20-count package.
    b.  Wipes. One 50-count package.
    c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

26.    On May 30, 2021, you received the following:
    a.  McKesson Diaper – size large. One 20-count package.
    b.  Wipes. One 50-count package.
    c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

27.    On June 6, 2021, you received the following:
    a.  McKesson Diaper – size large. One 20-count package.
    b.  Wipes. One 50-count package.
    c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

28.    On June 13, 2021, you received the following:
    a.  McKesson Diaper – size large. One 20-count package.
    b.  Wipes. One 50-count package.
    c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

29.    On June 20, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

30.    On July 4, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

31.    On July 11, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

32.    On July 18, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

33.    On July 25, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

34.    On August 1, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

35.    On August 16, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Zinc oxide barrier cream. One tube.
   d.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a small tube of zinc oxide, and no Dial soap.**

36.    On September 12, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

37.    On September 19, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

38.    On September 26, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

39.    On October 3, 2021, you did not go to pick up the following supplies:
   a.  McKesson Diaper – size large. One 20-count package.
   b.  Wipes. One 50-count package.
   c.  Zinc oxide barrier cream. One tube.
   d.  Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single 1.05 oz. tube of zinc oxide, and no Dial soap.**

40.    On October 10, 2021, you received the following:
   a.  McKesson Diaper – size large. One 20-count package.

    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

41.   On October 17, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

42.   On October 24, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

43.   On November 21, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

44.   On November 28, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

45.   On December 5, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.
    b. Wipes. One 50-count package.
    c. Hibiclens. One 8 oz. bottle.

**Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

46.   On December 12, 2021, you received the following:
    a. McKesson Diaper – size large. One 20-count package.

  b.  Wipes. One 50-count package.
  c.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

47. On December 21, 2021, you received the following:
  a.  McKesson Diaper – size large. One 20-count package.
  b.  Wipes. One 50-count package.
  c.  Zinc oxide barrier cream. One tube.
  d.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single 1.05 oz. tube of zinc oxide, and no Dial soap.**

48. On December 28, 2021, you received the following:
  a.  McKesson Diaper – size large. One 20-count package.
  b.  Wipes. One 50-count package.
  c.  Zinc oxide barrier cream. One tube.
  d.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, a single 1.05 oz. tube of zinc oxide, and no Dial soap.**

49. On January 2, 2022, you received the following:
  a.  McKesson Diaper – size large. One 20-count package.
  b.  Wipes. One 50-count package.
  c.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

50. On January 9, 2022, you received the following:
  a.  McKesson Diaper – size large. One 20-count package.
  b.  Wipes. One 50-count package.
  c.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

51. On January 23, 2022, you received the following:
  a.  McKesson Diaper – size large. One 20-count package.
  b.  Wipes. One 50-count package.
  c.  Hibiclens. One 8 oz. bottle.

  **Response: Admitted but no pull-up diapers, inadequate supplies of wipes, no skin protectant, and no Dial soap.**

52.    The nurses who signed incontinence receipts and provided you with incontinence supplies were not employees of the Florida Department of Corrections.

**Response: Admitted to the extent that they had a contract relationship rather than direct employment with FDC.**

53.    The medical personnel who completed medical notes and assessments which you allege are inaccurate were not employees of the Florida Department of Corrections.

**Response: Admitted to the extent that they had a contract relationship rather than direct employment with FDC.**

*/s/ James V. Cook*