## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**DONNY PHILLIPS,**

     **Plaintiff,**

**v.**                              **Case No. 3:22-cv-997-BJD-LLL**

**RICKY DIXON, in his Official Capacity as
Secretary of the Florida Department of
Corrections, CENTURION OF FLORIDA,
LLC, MHM HEALTH PROFESSIONALS,
LLC, ALEXIS FIGUEROA, M.D.,
ELIZABETH HOLMES, BRITNNEY
CANNON, CONNIE LYNN ADAMS, SGT.
SAVONIA RICHARDSON-GRAHAM, SGT.
DEBRA ALDRIDGE, and OFCR TERESSA
FILLMORE HAWTHORNE**

     **Defendants,**

_____/

### DEFENDANT DIXON'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant Ricky Dixon, through undersigned counsel, hereby responds in

opposition to Plaintiff's Motion for Preliminary Injunction [Doc. 74] and states the

following in support thereof.

## I.   FACTUAL MATTERS[1]

### A. Litigation Background

Plaintiff, now in his third lawsuit involving largely recycled claims from both his 2015 and 2018 lawsuits, many of them verbatim, is now seeking a preliminary injunction for various medical supplies, medical passes for bathroom and shower use, high-topped therapeutic boots, and transfer to a Florida Department of Corrections ("FDC") designated specialized wound-care facility for cellulitis treatment. [Doc. 74, pp.24-25].

Plaintiff, in demanding that he receives these specifically ***medical*** items, omits the fact that he voluntarily dismissed Centurion of Florida, LLC, MHM Health Professionals, LLC, and the four individual defendants employed by Centurion and MHM from this lawsuit on February 1, 2023 [Doc. 60]. [emphasis added]. For example, Plaintiff's motion cites Dr. Figueroa as reducing his diapers to "3 per day, then 20 per week, and then to 15-18 per week." [Doc. 74, ¶ 21]. *Dr. Figueroa was dropped from this lawsuit on February 1, 2023*.

Plaintiff also fails to disclose that his previous motion for preliminary injunctive relief was directed to both FDC and, more important in this instant case, first to Corizon and then its successor, Centurion. In this previous motion, the former

---

[1] Given the urgent time constraints for filing this response, Defendants plan to supplement this response with an affidavit from an appropriate FDC individual who can address each of the injunction items sought by Plaintiff.

secretary, Mark Inch, was held responsible for the alleged actions of FDC employees for harassment and First Amendment retaliation regarding grievances, and denial of bathroom and shower access. Centurion was held responsible for inadequate medical treatment and failing to provide necessary incontinence supplies. [Doc. 150] Now that Plaintiff dismissed Centurion from this suit, Plaintiff charges Secretary Dixon, in his official capacity, with the responsibility for each and every allegation he has made.

### B. Response to Plaintiff's Alleged Facts

Plaintiff precedes his allegations in support of injunctive relief by the reports of three experts. While these experts are well-regarded in the field of correctional medical care and, to some extent, cellulitis, Defendant Dixon notes that none of them ever met with Plaintiff or examined him and has reason to believe that the documents Plaintiff provided did not contain the totality of his official medical records created and maintained by Centurion. [Docs. 74-1, 74-4, 74-7]

Following his transfer to Suwannee C.I. Annex on October 15, 2020, Plaintiff has been in routine receipt of medical supplies from the FDC. *Ex. 1, Supply Receipts.* [Doc. 25, ¶ 42.] Additionally, Plaintiff acknowledged in his responses to Defendant Dixon's Request for Admissions that he had received his medical supplies, although he disputed either the quantities or some other inaccurate or self-serving comment about Dr. Alexis Figueroa, the Centurion employee and former individual defendant

3

in this suit. His responses ignore his signed receipts and attempt to change the fact he already acknowledged receipt of these items. *Ex. 2, Plaintiff's Discovery Responses.*

Nevertheless, Plaintiff alleges in his motion that "The medical and security staff…intermittently withhold, or reduce hygiene supplies …and fail to issue or honor bathroom and shower passes…. [Doc. 74, ¶11.] He offers no proof other than his responses to Interrogatories. His medical records, on the other hand, contain copies of the aforementioned signed and dated receipts for hygiene supplies. Those same medical records also reveal he did not submit a request to Centurion for bathroom or shower pass on the required form DC4-698A, which Centurion would approve based on a genuine medical need. Finally, Plaintiff states very clearly that "Dr. Alexis Figueroa reduced his amount [of adult diapers] to 3 a day, then then 20 per week, and then to 15-18 per week." The list goes on regarding these alleged denials and reductions, but while Plaintiff also claims, obviously to make up for the fact that he voluntarily dismissed Dr. Figueroa from this suit, that "FDC has reduced his medical and hygiene supplies, exacerbating [his] condition." [Doc. 74, ¶21] Again, other than his Interrogatory responses, Plaintiff offers no corroborating documents of any kind.

In his recitation regarding his denial of "adequate medical care" at Suwannee CI, Plaintiff claims that his "Braden Scale scores—which would reflect the health of

his cellulitis-affected leg—have been improperly tabulated to present on paper that [his] cellulitis is under control, when the photographic evidence paints the picture of someone who is in desperate need of care before he loses his leg or becomes septic." [Doc. 74, ¶20]. Plaintiff may be many things, but he is not a medical professional, and he certainly needs some substantive corroborating documentary evidence showing that these Braden Scale cores are in any way incorrect.

The monthly skin checks, performed by a Centurion licenses practical nurse, contain the Braden Scale data, as well as other medical information. *Ex. 3, Monthly Skin* Assessments. Any reasonable person, therefore, would see quite clearly the difference between Plaintiff's unsupported claims and the actual document where the scores are recorded, and would certainly wonder what the basis in fact might be for attributing such motives to medical staff.

The salient point here is simple: the injunctive relief concerns purely medial issues based on medical professionals examining, evaluating, and providing medical care. The legal entity to whom this motion should have been addressed is no longer a party to this suit.

## C. Plaintiff's Expert Reports

Defendant respectfully requests the Court to note that motions in limine and to exclude portions of Plaintiff's expert reports will be filed in accordance with the current scheduling deadlines.

In part, their reports cover time periods beyond the scope of this lawsuit which is aimed at the time Plaintiff was at Suwannee C.I. from on or about October 15, 2020, to present. Additionally, Dr. Kern's report is dated February 4, 2019; Dr. Venters' report is dated July 28, 2023; and Dr. Chertoff's report is dated July 14, 2023. Dr. Chertoff has reviewed records through 2022 and "photographs of the condition of his right leg on October 2022 and March 2023." [Doc. 74-1, p.1]. Dr. Venters only reviewed medical records through 2022. [Doc. 74-7, p.4]. Lastly, Dr. Kern's report is well over four and a half years old.

## MEMORANDUM OF LAW

Plaintiff bears the burden of showing (i) a substantial likelihood of success on the merits, (ii) that he will suffer irreparable injury without the injunction, (iii) that the threatened injury to him would outweigh harm the injunction would cause Defendants, and (iv) that the injunction would be consistent with the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

The Prison Litigation Reform Act ("PLRA") holds that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3226(a)(2).

"In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of

persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (marks omitted). Failure as to any one factor precludes relief. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

## II.   ARGUMENT

### A. Plaintiff has a low likelihood of success on the merits of his Eighth Amendment claims.

Plaintiff has not demonstrated a substantial likelihood of success on the merits. To prevail on his deliberate indifference claim, he must show (1) a serious medical need, (2) Defendant's deliberate indifference to that need, and (3) causation between Defendants' indifference and Plaintiff's injuries. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

As to showing Defendant's deliberate indifference, Plaintiff must show Defendant's subjective knowledge of a risk of serious harm and Defendant's disregard of that risk by conduct that is more than gross negligence. *Wade v. McDade*, 67 F.4th 1363 (11th Cir. 2023).

Here, Plaintiff has signed receipts for the very supplies he claims to not be getting. He also requests relief which involve decisions to be provided by medical staff, *who he dropped from this lawsuit on February 1, 2023.* [Doc. 60]. Plaintiff cannot prove conduct above gross negligence due to the fact that he has been provided with his required supplies. Decisions as to the course of treatment would

7

be the responsibility of medical professionals and staff who have been voluntarily dismissed from this lawsuit.

Plaintiff has not proven the causation element. His complaints and expert reports include allegations outside the realm of his period of incarceration and outside of the current subject of this lawsuit, which is strictly the time he was at Suwannee C.I. and not the previous time covered by his two prior lawsuits, both of which he settled. As to the current period, Plaintiff has not demonstrated that FDC has *directly* caused his condition. Plaintiff has also disregarded the supplies he has been routinely provided or made claims about their insufficiency that are unsubstantiated by the medical records themselves.

Plaintiff relies on the reports of his experts despite them not being current reflections of Plaintiff's alleged condition. Dr. Kern's report is dated February 4, 2019; Dr. Venters' report is dated July 28, 2023; and Dr. Chertoff's report is dated July 14, 2023. Dr. Chertoff has reviewed records through 2022 and "photographs of the condition of his right leg on October 2022 and March 2023." [Doc. 74-1, p.1]. Dr. Kern's report is well over four and a half years old. In pertinent part, Dr. Venters only reviewed medical records until 2022. [Doc. 74-7, p.4] The length of time since these experts gave their opinion, their limited information on the current issues, the timing of Plaintiff's filing for the injunction over a month after having those two

final reports and photos of Plaintiff as of March 2023 demonstrate that his condition is not as severe as he alleges.

At the preliminary injunction stage, the Court may weigh credibility of witnesses and written testimony. *See, e.g., Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3dd 1186, 1192 (11th Cir. 2006). Given the age of the expert reports, Plaintiff's delay in seeking the injunction, seeking items that should be decided by medical staff he dismissed, and the timing of his motion discredit the Plaintiff's allegations of his condition and negate the need for this injunction.

**B. Plaintiff is not suffering irreparable injury in absence of an injunction.**

To establish the irreparable injury requirement, Plaintiff must show that the threat of injury is "neither remote nor speculative, but actual and imminent." *Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1990) (stating that to obtain injunctive relief, a plaintiff must show "a real and immediate-as opposed to a merely conjectural or hypothetical threat of future injury."); *Pharmerica, Inc. v. Eagle Healthcare, Inc.*, 2011 WL 6719157, at *5-6 (M.D. Fla. Sept. 20, 2011) (finding that the plaintiff failed to meet its burden that it will suffer irreparable harm if a preliminary injunction is not issued where its allegations on this issue were

speculative or conclusory); *Hennigan v. Demmings*, 2010 WL 5421335, at *2 (M.D. Fla. Dec. 27, 2010) (finding that the plaintiff failed to comply with the Local Rules of the Middle District of Florida and that he failed to demonstrate that he would suffer irreparable harm if his motion for a preliminary injunction and/or temporary restraining order was not granted where his motion was speculative and conclusory). Looking solely at Plaintiff's expert reports, which were either prepared over four years ago, rely on 2022 medical records, or at most reviewed photographs from March 2023, demonstrate that Plaintiff's alleged harm is not an urgent issue he is facing, but merely one of speculative conjecture.

Plaintiff's self-serving discovery responses blatantly contradict the receipts he has signed for receiving medical supplies since transferring to Suwannee on or about October 15, 2020. Defendant has provided receipts for his supplies up through January 2022 in support and has already requested receipts for 2023.

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Seigel*, 234 F.3d at 1176. Here, Plaintiff must show deliberate indifference, which exists only when there is "more than gross negligence." *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). It is not true "that every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

The evidence of his receipt of supplies since transferring to Suwannee C.I. provide evidence of his receiving the necessary items and contradict his claims and self-serving discovery responses. Defendant incorporates the above argument concerning the age of Plaintiff's expert reports and information they considered, the fact that he has been receiving supplies, and the fact that he has dismissed medical professionals from this lawsuit who were responsible for prescribing, ordering the items, and dispensing the medical items he requests.

**C. The balance of hardship is against an injunction.**

Plaintiff admits he has no constitutional right against being transferred to another institution, the selection of a prison of his choice, and no right to a specific inmate classification. *Smith v. Crews*, 738 F. App'x 981, 984 (11th Cir. 2018). Despite recognizing that, Plaintiff claims he is not asking for special treatment, and states he is instead asking FDC to provide him with supplies and "transfer him to a proper wound-care facility until such time that his wounds are no longer open or 'repeatedly breaking down.'" [Doc. 74, p.19]. He has commingled his request for an injunction as to medical supplies and passes with a specific request for an inmate classification and institution of his choice. Importantly, Plaintiff was denied this specific relief in his 2018 injunction. Transfer to an institution involves significant

potential risks to FDC. Plaintiff is classified and housed in a particular way based on specific classification factors. Allowing inmates to choose their institution and classification status has inherent risks which should not be freely given as Plaintiff requests.

Plaintiff again conveniently omits that the decisions of medical staff, such as his complaints against Dr. Figueroa, were dismissed from this lawsuit and he now aims to get an injunction against FDC involving items under the Centurion Defendants' purview.

**D. Plaintiff should be required to post a bond.**

Defendant opposes Plaintiff's request to have the bond requirement waived. There is great public interest in having a safely managed prison system and Plaintiff's request for transfer to a prison of his discretion places that interest at risk. This is especially so given his motion relies on outdated expert reports that consider dated information, his own self-serving testimony, and that he cites allegations against now dismissed Centurion Defendants.

**E. The proposed injunction does not satisfy the PLRA.**

Plaintiff cites the PLRA's requirement that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). While Plaintiff claims the requested

relief is narrowly drawn, it is hardly so. He requests numerous supplies, items and passes which require medical decisions by individuals he dismissed from this lawsuit, and transfer to a different facility, which he was already denied in his previous 2018 lawsuit on similar issues.

## III.   CONCLUSION

For Plaintiff to obtain the preliminary injunction, he must satisfy each of the four *Siegel* elements. Failure to do so precludes the granting of the injunction. As argued above, Plaintiff failed to meet his burden and the motion must be denied.

Wherefore, Defendant Dixon respectfully requests this Court deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Tom@jsh-pa.com
*Attorneys for Defendants Dixon,*
*Richardson-Graham, Aldridge, and*
*Fillmore Hawthorne*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served

on all counsel of record by CM/ECF on August 21, 2023.

/s/ Thomas Buchan
Thomas Buchan