UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

    Plaintiff,

v.       Case No. 3:22-cv-997-BJD-LLL

RICKY D. DIXON, et al.,

    Defendants.

_____

# ORDER

## I.   Status

Plaintiff, a state inmate of the Florida penal system, initiated this action, with help from counsel, by filing a Civil Rights Complaint. Doc. 1. Plaintiff is proceeding on an Amended Complaint. Doc. 25. Four Defendants remain – Ricky D. Dixon, Secretary of the Florida Department of Corrections (FDOC); Sergeant Savonia Richardson-Graham; Sergeant Debra Aldridge; and Officer Teressa Fillmore Hawthorne.[1] *Id.* at 1; Doc. 61.

Defendant Dixon moves to dismiss Count IV of the Amended Complaint, arguing Plaintiff fails to state a plausible claim for relief under Title II of the

---

[1] Plaintiff filed a notice of voluntary dismissal of his claims against Defendants Centurion of Florida, LLC; MHM Health Professionals, LLC; Alexis Figueroa; Elizabeth Holmes; Brittney Cannon; and Connie Lynn Adams; and thus the Court dismissed those Defendants without prejudice and terminated them as parties to this case. *See* Doc. 61.

Americans with Disability Act (ADA) and section 502 of the Rehabilitation Act (RA).[2] *See* Doc. 40 (Motion). Plaintiff filed a response opposing the Motion. *See* Doc. 45 (Response). The Motion is ripe for the Court's review.

## II.     Plaintiff's Allegations and Relevant Procedural History[3]

In the Amended Complaint, six causes of action remain pending. *See generally* Doc. 25. The only cause of action at issue here is Count IV, in which Plaintiff argues Defendant Dixon violated his rights under the ADA and RA. *Id.* at 27. Plaintiff alleges that a prior spinal injury resulted in partial lower-body paralysis or "paraparesis," confining him to a wheelchair and qualifying him as a disabled individual under 42 U.S.C. § 12102(2). *Id.* at 6, 28. He asserts his lack of mobility and paralysis result in bladder and bowel incontinence, and without frequent diaper changes, Plaintiff's prolonged exposure to fecal and urine bacteria often causes cellulitis, a dangerous soft tissue infection. *Id.* at 6. According to Plaintiff, throughout his incarceration, prison officials at various institutions often denied him access to clean diapers, wipes, timely bathroom and shower breaks, antiseptic soap, and barrier cream. *Id.* at 7.

---

[2] Dixon only seeks to dismiss Count IV of the Amended Complaint and has filed an Amended Answer to Plaintiff's other claims against him. *See* Doc. 39.

[3] The Court summarizes only the allegations relevant to the issues before the Court.

2

Plaintiff asserts that in October 2020, he was transferred to Suwannee Correctional Institution (Suwannee C.I.) and upon his arrival, officials confiscated Plaintiff's medications, adult pull-up diapers, and other hygiene products before placing him in confinement where he was forced to urinate on his clothing. *Id.* at 9. Officials eventually agreed to provide Plaintiff with one diaper a day, but Plaintiff advised he needed three to five diapers each day and their refusal to provide more compelled Plaintiff to sit in wet and soiled diapers for hours at a time. *Id.* at 10. According to Plaintiff, Suwannee C.I. officials also refused to replace Plaintiff's FDOC-issued mobility boots, and failed to provide an impaired inmate assistant or renew bathroom and shower passes. *Id.* at 10-11. He also asserts officials routinely made him and other ADA inmates shower at a late hour and in a limited timeframe, exacerbating the physical effects of his deprived hygiene. Plaintiff alleges Defendant Dixon and his subordinates were aware of Plaintiff's need for these medical accommodations but chose not to provide him with the necessary services. *Id.* at 11. Instead, according to Plaintiff, every time he complained to staff about being denied reasonable accommodations, staff harassed, threatened, and retaliated against him.

Plaintiff alleges that at all material times, Dixon, in his official capacity as Secretary of the FDOC, had the authority to address this discrimination and institute corrective means on behalf of the FDOC. *Id.* at 28. But, according to

3

Plaintiff, Dixon "acted intentionally and/or with deliberate indifference to [Plaintiff's] need for reasonable accommodation[s] by":

> (a) Fail[ing] to accommodate his paraparesis;
>
> (b) fail[ing] to accommodate his incontinence of bladder and bowel;
>
> (c) fail[ing] to ensure that he was able to timely access bathroom and shower;
>
> (d) failing and intentionally refusing to train FDOC employees regarding the humane management of physically disabled inmates;
>
> (e) permitting sadistic officers to physically abuse Plaintiff; and
>
> (f) fabricating records to hide Plaintiff's disability needs.

*Id.* at 30. Plaintiff also argues Dixon actually knew of the widespread history of discrimination to Plaintiff and other ADA prisoners. *Id.* In support of this contention, Plaintiff relies on the FDOC's involvement in *Phillips v. Inch, et al.*, No. 4:18-cv-00139-AW-MJF (N.D. Fla.), and *Disability Rights Florida, Inc. v. Florida Dep't of Corr.*, No. 2019-CA-2825 (Fla. 2d Cir. Ct.) – two cases that involved the FDOC's failure to provide reasonable accommodations to Plaintiff and other disabled prisoners with mobility limitations, respectively. *Id.* at 28-29. Despite the FDOC's participation in that litigation, Plaintiff alleges Dixon has "refused to allow Plaintiff to have necessary inmate assistance to help him access his meals and ha[s] refused to ensure that he has access to mobility

4

devices" and hygiene products. *Id.* at 11. Plaintiff also argues Dixon actually knew about the discrimination Plaintiff faced at Suwannee C.I. because Plaintiff filed several grievances with the Secretary. *Id.* at 29.

Plaintiff asserts that because of Dixon's failure and intentional refusal to provide Plaintiff with reasonable accommodations for his disability, he has suffered physical harm, severe pain, and debilitating bouts of cellulitis. *Id.* at 30. As relief for these ADA and RA violations, Plaintiff seeks compensatory, nominal, and punitive damages, as well as fees and costs. *Id.*

### III.     Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* (quotations, alteration, and citation omitted). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware*

*Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

### IV.   Analysis

In his Motion, Dixon makes two arguments supporting his request to dismiss Count IV of the Amended Complaint. *See generally* Doc. 40. First, Dixon argues punitive damages are unavailable under the ADA and RA, and thus that requested relief must be dismissed. *Id.* at 7-8. Plaintiff concedes that punitive damages are not authorized for his claim in Count IV, and therefore he does not oppose Dixon's request to dismiss this requested relief. Doc. 45 at 1, 11. Thus, Dixon's Motion is granted as to this issue, and Plaintiff's request for punitive damages under the ADA and RA in Count IV is dismissed.

Next, Dixon argues Plaintiff's ADA and RA claim under Count IV should be dismissed in its entirety because Plaintiff fails to state a plausible claim upon which relief may be granted. Doc. 40 at 3-7. The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v.*

*Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005)[4] (citing *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000)); *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together.").

A claim of discrimination under the ADA and RA requires a plaintiff to establish "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Normally, establishing a violation under the ADA and RA entitles a plaintiff to injunctive relief only. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). To recover monetary damages, Plaintiff "must clear an additional hurdle: he must prove that the entity that he has sued

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

7

engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022) (quoting *Silberman*, 927 F.3d at 1134). Deliberate indifference "is an 'exacting standard,' which requires showing more than gross negligence." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (citation omitted). "To establish deliberate indifference, a plaintiff must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *Id.* (quotations omitted).

Additionally, Plaintiff's claim under Title II of the ADA cannot be based on vicarious liability. "[I]nstead, [Plaintiff must allege facts establishing] the deliberate indifference of an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [entity's] behalf and who has *actual knowledge* of the discrimination in the [entity's] programs and fails adequately to respond." *Id.* at 1259 (quotation omitted).

Here, Dixon neither disputes that Plaintiff has plausibly alleged he is a "qualified individual with a disability"; nor does he dispute that Plaintiff sufficiently states that Dixon, in his official capacity as Secretary of the FDOC, qualifies as a "public entity" that allegedly denied Plaintiff access to reasonable accommodations because of Plaintiff's disability. *See generally*

8

Doc. 40. Instead, Dixon argues Count IV should be dismissed as a matter of law because Plaintiff's allegations are based on a theory of vicarious liability. *Id.* at 4 (citing *Ingram*, 30 F.4th at 1257). Dixon argues Plaintiff pleads no facts to sufficiently demonstrate Dixon actually knew of discrimination or failed to adequately respond to Plaintiff's complaints about his accommodation needs. And Plaintiff's attempt to prove actual knowledge by referencing Plaintiff's prior lawsuits is insufficient as those suits involved different circumstances than those at issue here. *Id.* at 6. He asserts Plaintiff's claim is instead a claim of inadequate medical treatment, which is not cognizable under the ADA. *Id.* at 4-5.

Plaintiff argues his allegations are not solely based on vicarious liability. Doc. 45 at 7. Rather, according to Plaintiff, he argues he has sufficiently alleged Dixon, in his official capacity as Secretary of the FDOC, actually knew that his subordinates were engaging in discriminatory acts against Plaintiff and other disabled inmates and he "failed to stop [his staff] from doing so." *Id.* In support of that contention, Plaintiff makes three arguments. First, he relies on his prior Northern District of Florida action in *Phillips*, No. 4:18-cv-139-AW-MJS, to show Dixon "had knowledge of the widespread history of [discriminatory] abuse to Plaintiff and other prisoners who suffer from disabilities." Doc. 25 at 28. In that case, Plaintiff sued, among others, Mark Inch, in his official capacity as the-then Secretary of the FDOC,

9

alleging the denial of diapers and mobility accommodations at Franklin Correctional Institution and Northwest Florida Reception Center violated Plaintiff's rights under, *inter alia*, the ADA. *See Phillips*, No. 4:18-cv-00139-AW-MJF (Docs. 1, 311). At the outset, the court granted Plaintiff's request for a temporary preliminary injunction and required the defendants to provide Plaintiff with "five or more diapers per day (as needed), barrier cream, antiseptic soap, medical wipes, and replenish the same as they run out, and bathroom and shower passes."[5] *Id.* (Doc. 198). Plaintiff alleges the facts underlying his prior lawsuit show the FDOC was aware of Plaintiff's ongoing need for disability accommodations upon his transfer to Suwannee C.I. and failed to continue his access to those accommodations despite the known likelihood of harm Plaintiff faced. Doc. 25 at 10-11.

Next, Plaintiff relies on the state circuit court case in *Disability Rights Florida, Inc.*, No. 2019-CA-002825. Doc. 25 at 11, 29. In that litigation, Disability Rights Florida, Inc., sued the FDOC, alleging the FDOC breached a "monitored settlement agreement" entered into by the parties to resolve a federal action brought on behalf of "[t]housands of FD[O]C prisoners with

---

[5] The Secretary did not appeal the court's issuance of the preliminary injunction and the court ultimately denied Plaintiff's request for a permanent injunction. *Phillips*, No. 4:18-cv-00139-AW-MJF (Doc. 312). After the court denied the Secretary's motion to dismiss, the court granted the Secretary's motion for summary judgment on the ADA claim. *Id.* (Doc. 403).

10

disabilities" for the FDOC's "widespread pattern of fail[ing] to comply with" the ADA, RA, Eighth Amendment, and Due Process Clause of the Fourteenth Amendment. *Disability Rights Florida, Inc.*, No. 2019-CA-002825. Plaintiff alleges that under that settlement agreement, the FDOC must provide certain accommodations to mobility impaired prisoners to ensure they have reasonable access to prison facilities. Doc. 25 at 11. Plaintiff argues this agreement demonstrates Dixon knows of the needs for disabled prisoners, like Plaintiff, and despite knowing he must provide those accommodations, the FDOC has continued to refuse ADA inmates' requests for necessary mobility assistance. *Id.* Finally, Plaintiff argues Dixon obtained actual knowledge of Plaintiff's alleged discrimination through the grievances Plaintiff filed with the Secretary upon his October 2020 transfer to Suwannee C.I. Doc. 45 at 8.

According to Plaintiff, he is not claiming that Dixon failed to provide medical treatment or care, but alleges Dixon acted "deliberately indifferent to Plaintiff's needs for disability accommodations, such as providing the proper size and number of diapers, shower and bathroom passes to use the facilities on an emergency basis, or an inmate assistant to help wheel him to the chow hall so that he doesn't miss meals." *Id.* at 10 (citing Doc. 25 at 9-11). He contends his "inability to eat all his meals, or maintain safe hygiene without urinating or defecating on himself, use his prescribed mobility boots, or obtain help with mobility needs from other inmates, all speak to his denied

11

participation in an activity provided in the FD[O]C by reason of his disability." *Id.* at 11. And thus, he argues he has stated a plausible claim for relief under the ADA and RA.

Viewing the facts in the light most favorable to Plaintiff, as the Court must, the Court finds that Plaintiff has sufficiently stated a claim for damages under the ADA and RA against Dixon in his official capacity as Secretary of the FDOC. Accepting Plaintiff's allegations as true, Plaintiff has alleged that Dixon (1) knew about Plaintiff's qualifying disability; (2) knew that Suwannee C.I. officials were refusing to provide reasonable accommodations for Plaintiff's disability; and (3) had the ability to institute corrective measures but declined to do so. *See, e.g.*, *Seymour v. Dixon*, No. 5:20-cv-214-TKW-MJF, 2021 WL 6197967, at *4 (N.D. Fla. Dec. 10, 2021) (finding the plaintiff stated a plausible ADA claim against the Secretary by alleging that ill-fitting adult diapers caused leakage, which caused him to be excluded from meal time, and that the FDOC provided reasonable accommodation for the issue in the past but refused to continue access to accommodation), *rep. & recommendation adopted by*, 2021 WL 6197109, at

12

*1 (N.D. Fla. Dec. 30, 2021).[6] While Plaintiff's claims may ultimately fail if challenged by a properly supported motion for summary judgment or at trial, at this time, the ADA claim for the remaining monetary damages will proceed. Thus, Dixon's Motion is due to be denied as to this issue.

Accordingly, it is

**ORDERED:**

1. Defendant Ricky Dixon's Motion to Dismiss Plaintiff's Amended Complaint Count IV (Doc. 40) is **GRANTED in part and DENIED in part.** The Motion is **GRANTED to the extent** that Plaintiff's claim for punitive damages in Count IV is **DISMISSED with prejudice**. The Motion (Doc. 40) is otherwise **DENIED**.

2. Defendant Dixon must file a supplemental answer to the remaining claim in Count IV **by September 12, 2023**.

3. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers.

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2023.

                                               BRIAN J. DAVIS
                                        United States District Judge

Jax-7

C:      Donny Phillips, #789552
        Counsel of record