# AFFIDAVIT OF PAULA FOSKEY

**STATE OF FLORIDA**
**COUNTY OF LEON**

Before me, the undersigned authority, personally appeared **PAULA FOSKEY** (Affiant), who, under penalty of perjury, deposes and says:

1. The facts stated in this affidavit are known to me of my own personal knowledge and if called upon to testify to the matters in this affidavit, I could and would competently do so.

2. I have been an employee of the Florida Department of Corrections ("FDC") since approximately ___10/21/2016___ and have been in my current position of ___Chief of Nursing Services___ since ___10/21/2016___.

3. In my position of ___Chief of Nursing Services___, I ___am responsible for overseeing nursing operations in the facilities, supervise contract monitors, develop and implement nursing policy and procedures, and other associated duties___.

4. I am aware that Plaintiff Donny Phillips, DC# 789552, is seeking a preliminary injunction for several specific medical supplies related to his incontinence, medical passes for bathroom and shower use, high-topped therapeutic boots, and a transfer to an FDC specialized wound-care facility for the remainder of his incarceration, which is scheduled to end on April 21, 2024.

5. Regarding the bathroom and shower passes, an inmate must specifically request each of these passes by personally completing the Inmate Sick Call Request form DC4-698A. These passes are then issued to the requesting inmate based on identifying a genuine medical need by the medical provider, Centurion.

6. Regarding Plaintiff's claim that he was denied use of an ADA privacy screens in the shower area, it is my understanding that this mobile screen serves as an ADA and Prison Rape Elimination Act (PREA) privacy screen for use by all disabled inmates in the shower area. This screen is not an item that would be approved or denied but remains stored and accessible in the shower area of the dorm.

7. Regarding Plaintiff's allegation that his ADA/impaired status was "changed," it is my understanding that he was not removed from ADA/impaired status. Plaintiff is currently classified as Physical Grade 2 ("P2).

    a. An inmate is designated as P2 as a result of a short-term physical impairment not to exceed one year; he may have a limited term assignment of adaptive medical devices such as a wheelchair, braces, cane, crutches, or walker. The specific

1

assignment and term limits of any adaptive devices must be specified by the medical provider in the "Pass comment" section of the inmate's Electronic Medical Record (EMR"). I also understand that if the inmate requires any such device for more than a year, he will be evaluated by a physical therapist or other appropriate medical professional.

b. Regarding Plaintiff's current P2 status, I understand that the decision to change him from his previous P3 status was made by Dr. Alexis Figueroa. He did so in consultation and coordination with members of the Quarterly Disabled Inmate Committee, a copy of which may be found in Plaintiff's medical file. This decision was based on Plaintiff's statements at the April 2023 ADA Quarterly meeting, when he denied having any issues completing his ADLs and was using his wheelchair as a walker.

c. It is important to note that an impaired inmate such as Plaintiff, regardless of his assigned physical grade, may still be considered disabled under the Americans with Disabilities Act and therefore entitled to any needed accommodations for the duration of his impairment. For the sake of clarity, an impaired inmate is defined as one who currently has, or is expected to have, in the reasonably near future: 1. A sensory, medical, mobility or mental limitation; or 2. A temporary condition of such severity as to require special accommodation for up to six (6) months, or 3. A temporary need for required equipment to support a part of the body, such as braces, cane, crutches, medical devices, walker, or wheelchair. See HSB 15.03.25.02

8. Regarding Plaintiff's allegations regarding the denial of high-topped therapeutic boots, I see that according to Health Services Bulletin 15.03.025.02, copies of which are disseminated by the Office of Health Services to all medial staff in the institutions and regional medical offices, therapeutic shoes are issued based on genuine medical needs resulting from significant deformities, post-surgical recovery, for use with an AFO or other specific orthotic device as prescribed by the Brace Clinic, or significant ulceration or other DM complications as determined by the medical provider, Centurion. I also understand that Plaintiff has requested these therapeutic shoes and has been evaluated for them on several occasions. They have been determined to be medically unwarranted.

9. Regarding Plaintiff's request for an immediate transfer from Suwannee CI Annex to "one of FDC's designated specialized wound care *[sic]* facilities for cellulitis treatment, it is my understanding that all institutions with medical services can and do provide initial wound treatment and subsequent wound care. There is also a dedicated trained wound care nurse based at the Reception and Medical Center Hospital who reviews all cases referred to him via telehealth and makes recommendations for individual treatment based on the assessments. These recommendations are then ordered by the medical staff at the inmate's current institution. I am also aware that all transfers for any reason are coordinated with and authorized by FDC's population management staff. Other medical transfers, such as

infirmary to infirmary, are also coordinated with population management staff and the Centurion Bed Manager.

10. Regarding Plaintiff's demand that certain medical supplies be increased, I am not aware that these specific increases have been medically evaluated and approved, nor have I seen any documentation to this effect. According to Plaintiff's itemized list in his Motion for Preliminary Injunction, he lists the following medically issued items and quantities:

   a. No fewer than 5 adult pull-up diapers per day;
   b. 80 medical wipes per week;
   c. 8 ounces of barrier creams per week; and
   d. Antiseptic soap—Dial and/or Hibiclen.

FURTHER AFFIANT SAYETH NAUGHT.

_____
AFFIANT SIGNATURE

The foregoing instrument was sworn to and subscribed before me this 22nd day of August, 2023, PAULA FOSKEY, who is ✓ personally known to me OR ___ who has produced _____ as identification.

_____
NOTARY PUBLIC

My Commission Expires:

Notary Public State of Florida
Valerie C. Robinson
My Commission GG 915100
Expires 09/19/2023

3