UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

    Plaintiff,

v.

RICKY DIXON, *et al.*,

    Defendant.

Case No. 3:22-cv-997-BJD-LLL

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

As authorized by the Court (Doc. 79), Plaintiff Donny Phillips files this brief reply in support of his motion for preliminary injunction (Doc. 74), to address several arguments in Secretary Ricky Dixon's[1] response. In response to Phillips's motion, Dixon argues that Phillips's medical concerns should be directed to FDC's private health contractor, Phillips's evidence is unsupported by the records, and Phillips's expert reports should be ignored. Each argument is addressed in turn.

**A. FDC cannot avoid its nondelegable duty to provide care.**

Dixon attempts to skirt responsibility for Phillips's care based on the voluntary dismissal (without prejudice) of his claims against Centurion—FDC's health contractor—and its staff. He writes: "The salient point here is simple: the injunctive relief concerns purely medial issues based on medical professionals examining, evaluating, and providing medical care. The legal entity to whom this motion should

---

[1] The terms "Dixon" and "FDC" for Florida Department of Corrections are used interchangeably.

have been addressed is no longer a party to this suit." (Doc. 74 at 5).

But Phillips's decision to dismiss Centurion does not affect his claim for injunctive relief under the Eighth Amendment against Dixon. Dixon ignores that FDC owes a nondelegable duty to Phillips to provide him with adequate medical care under the U.S. Constitution and state law. *See* Fla. Admin. Code R. 33-602.109(9) ("All inmates shall be furnished proper medical care and medicine."). Even though Dixon may contract with a private entity to provide inmates with medical care, FDC retains a nondelegable duty to its inmates. *Cineus v. Fla. Dep't of Corr.*, 2022 WL 4448599, at *3 (M.D. Fla. Sept. 23, 2022) (denying a motion to dismiss FDC under the nondelegation doctrine). As explained in *Ancata v. Prison Health Servs., Inc.*, "federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals" and that "duty is not absolved by contracting with an entity" as the government "itself remains liable for any constitutional deprivations caused by the policies or customs" of that entity. 769 F.2d 700, 705 (11th Cir. 1985); *see also Geftos v. Jones*, 2018 WL 1139055, at *3 (M.D. Fla. Mar. 2, 2018); *Hunt v. Gualtieri*, 2016 WL 1077361, at *3 (M.D. Fla. Mar. 18, 2016). And although Centurion and its providers are no longer parties, an injunction against FDC would bind Centurion under Rule 65(d)(2)(B).

**B. FDC's evidence supports Phillips's claims.**

Next, Dixon argues the motion must fail because Phillips offers "no proof" other than his sworn statements. (Doc. 76 at 4). Dixon also complains that Phillips cannot refute the Braden Scale skin test scores because "he is not a medical

2

professional" and has no corroborating evidence. (*Id.* at 5). To support this, Dixon appends Braden Scale scoresheets from June 2023 (Doc. 76-3), which shows "sensory impairment" at the highest level, 4, yet Phillips's spinal injury makes it impossible to feel bladder/bowel fullness; "moisture" is 4, though he goes through 3-5 diapers a day; "physical activity" is 3, but he can only walk a few steps holding onto his wheelchair; and "mobility" is 3, but he struggles to put on non-pull-up diapers. (*See* Doc. 74-3 at 3). The ultimate proof is the condition of Phillips's legs:



Phillips and Dr. Venters assert that FDC is manipulating the Braden Scale scoresheet to diminish his serious concerns. (Doc. 74-3 at 9) (noting under oath that nurses do not always document the open sores on his legs); (Doc. 74-7 at 12) (concluding that FDC's scores were "not possible" here). Despite his assertion that "[a]ny reasonable person" would conclude that Phillips was misrepresenting the facts based on the "actual document" (Doc. 76 at 5), the document Dixon filed with his response shows the opposite: Phillips and his experts are credible when they state that FDC is not documenting Phillips's wounds to prevent care. (Doc. 74-7 at 12) ("[Dr. Venters'] own experience is that under-reporting or under-scoring in correctional health results

3

in avoidance of automatic requirements for physician referral."). In fact, that document coincidentally shows that Phillips's skin was assessed everywhere *except his legs*. (Doc. 76-3 at 1) (examining elbows, buttocks, lower back, and hips). And even taking the rest of the medical records at face value, they tend to support the reduction and gaps in provision of sanitation supplies. (Doc. 76-1).[2]

### C. The parties' experts.

Finally, without conferral or a motion per the Court's Order (Doc. 79), Dixon supplemented his response with the affidavit of Paula Foskey.[3] (Doc 81-1). Although Dixon asks the Court to disregard Phillips's experts because they have not examined him, Foskey has not done so either. That said, to the extent the Court permits Dixon to rely on Foskey's affidavit, it should be disregarded. It is conclusory, is riddled with hearsay, fails to counter Phillips's sworn testimony, and contradicts FDC policy. For example, she explains how medical passes are issued but fails to counter Phillips's assertion that his passes were confiscated before they expired despite his demonstrated need. (Doc. 74-3 at 7). She provides hearsay testimony that Phillips was not recommended high-topped boots, but Phillips has claimed that those boots were issued, stolen, and that medical staff now refuses to let him get new ones (or even purchase his own). (*Id.* at 3). For the supplies, Foskey states "I am not aware

---

[2] Dixon fails to identify specific portions of the medical records that would refute Phillips's claims, essentially asking the Court to find his own purported evidence.

[3] It should be noted that Defendants have not disclosed any experts in this case and the time to do so has passed. (Doc. 37). That alone should preclude Dixon's reliance on Nurse Foskey. (Phillips's experts were disclosed timely pursuant to a stipulated agreement by the parties.)

4

that these specific increases have been medically evaluated and approved," which ignores that Phillips is requesting the type and quantity of supplies provided in the earlier injunction, which was gradually reduced at Suwannee C.I. Last, her affidavit contradicts FDC's written wound care policies and does not explain the failure to treat Phillips's serious wounds.[4] *Compare* (Doc. 81-1 at 2–3) *with* (Doc. 74-6 at 6).

As for Dixon's arguments about Phillips's experts, two points must be addressed. First, Dixon lambasts Phillips's experts because they have not reviewed the most up-to-date medical records. But that does not diminish their reports, and the recent photographic evidence only bolsters their conclusions. Second, as for Dixon's arguments about the recency of Dr. Kern's report, his arguments miss the mark. That report was relied on by Phillips's retained experts here (*see, generally* Doc. 74-7) (relying on Kern Report), to support their opinions about the dangerous progression for Mr. Phillips's health outcomes. The Kern Report can be considered in that context. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).

Dated: August 23, 2023.                            Respectfully submitted,

/s/ James M. Slater
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
Tel. (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff*

---

[4] Foskey suggests that Phillips seeks transfer for the duration of his incarceration. Not so. He asks the Court to order FDC to comply with its policies (and constitutional requirements) to transfer him to specialty facility *for treatment* until his condition stabilizes. (Doc. 74 at 19, 25).

5