UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

     Plaintiff,

v.

RICKY D. DIXON, *et al.*,

     Defendants.

Case No. 3:22-cv-997-BJD-LLL

**PLAINTIFF'S FIRST MOTION TO COMPEL DEFENDANT RICKY DIXON
TO PRODUCE DOCUMENTS AND PROVIDE BETTER ANSWERS TO
DISCOVERY REQUESTS AND FOR SANCTIONS**

Pursuant to Rule 37(a)(3)(B)(iv), Plaintiff Donny Phillips moves to compel

Defendant Ricky Dixon to make better responses to Plaintiff's discovery requests as

set forth herein and for sanctions, and would show:

## I. BACKGROUND

Plaintiff's discovery requests to Defendant Dixon were as follows:

| Discovery set | Request date | Due date | Response date | Production |
|---|---|---|---|---|
| Round 1 | 12/7/22 | 01/06/23 | 01/13/23 | 03/25/23 12/12/23 |
| Round 2 | 08/18/23 | 09/18/23 | 10/03/23 roggs 10/06/23 rfp | 10/07/23 |
| Round 3 | 08/28/23 | 09/27/23 | 09/25/23 roggs 11/07/23 rfp | 09/26/23 |
| Round 4 | 09/08/23 | 10/09/23 | 09/26/23 roggs 10/06/23 rfa | 10/07/23 |

On December 7, 2022, Plaintiff served Discovery Requests on Defendant

Dixon. (Exhibit 1). The discovery was due on January 6, 2023, but Dixon ultimately

responded on January 13, 2023, and produced records on March 25, 2023. Since that

time, Defendant Dixon has sometimes provided full and helpful answers and, at

1

times, terse and dismissive, often untimely, responses. *See* Defendant Dixon's

Discovery Responses, Exhibits 1, 2, 3, and 4 below. Specifically, Defendant Dixon's

discovery responses had the following defects:

1. Misconstrued the time scope of this case as covering only the time after October 15, 2020, when Plaintiff Phillips was transferred to Suwannee C.I.

2. Failed to provide training records and training materials on disability issues (relevant to Secretary Dixon's failure to accommodate disabilities).

3. Referred to large masses of records, such as medical records, simply stating that the responsive records could be found somewhere in the stack.

4. Failing to provide records of other cases, including cellulitis infections, to show the ubiquity of Plaintiff's problem (could be provided with identifiers redacted).

5. Failing to provide relevant communications (especially e-mails) that are known to be the most frequent media of grievance review investigations.

6. Invoking "privilege" in declining to produce categories of documents but failing to log records deemed as privileged in a privilege log.

7. Declining to produce information and records relating to actions by FDC medical contractors relating to disability accommodations as being outside the scope of the Secretary's responsibilities.

8. Declining to produce records that are not in Defendant Dixon's "possession" although they may be within Defendant Dixon's "custody or control" or records to which Dixon has a legal right under Rule 34 to obtain—such as records generated by its private health contractor Centurion.

9. Declining to produce statewide data on wound care in Florida prisons as noted in the FDC Wound Care program document as being collected.

10. Declining to list the benefits, services, programs, and activities that would be available to non-disabled inmates and, with accommodations, to disabled inmates.

11. Agreeing to provide the criteria on which Columbia C.I. Annex was selected as a placement for Plaintiff after he was moved from Suwannee C.I. Annex.

Incomplete discovery prejudices Plaintiff in his ability to meet his burden of

proof on summary judgment and at trial. Plaintiff realizes that it would be far better to resolve issues prior to the last day of discovery. However, where we can resolve issues in a way that does not irreparably prejudice Plaintiff prior to the deadline for a response to this Motion, Plaintiff will withdraw that issue from the Motion.

## II.    SPECIFIC DISCOVERY REQUESTS

### A. PLAINTIFF'S FIRST DISCOVERY REQUESTS (Exhibit 1)

These responses were due on January 6, 2023. Plaintiff agreed to an extension to January 12, 2023, but they were ultimately produced on January 13, 2023.

| RFP | Response |
|---|---|
| 13. All personnel records for the individual defendants, including records relating to or concerning disciplinary and corrective actions taken against any of the individual defendants. | **Response: Redacted personnel files for the individual defendants Richardson, Aldridge, and Hawthorne are being produced.** |

BASIS TO COMPEL: Contact information for the individual defendants' personal references are completely redacted in the personnel files.

| RFP | Response |
|---|---|
| 14. All training records for the individual defendants. | **Response: Training records and documents related to training are included in the personnel files being produced in response to Request 13.** |

BASIS TO COMPEL: There are no training records (either lists of classes taken or training materials) in the individual defendants' personnel files.

| RFP | Response |
|---|---|

3

| | |
|---|---|
| 32. Post orders applicable to the individual defendants. | **Response: Copies of post orders for the various posts where the individual defendants worked from October 15, 2020, through November 17, 2022, are being produced.** |

BASIS TO COMPEL: Only Post Orders 11, 12, and 13, were produced.

Plaintiff is aware of Post Orders 1, 9, and 10 (General, Officer, and Sergeant Post

Orders) that certainly must apply and there are undoubtedly others.

| RFP | Response |
|---|---|
| 34. Dormitory logs for Plaintiff's dormitory for the dates in Request No. 33. | **Response: Copies of the dormitory logs for the dates identified in Request 33 have been requested and will be produced upon receipt.** |

BASIS TO COMPEL: Dormitory logs are lists of routine and non-routine

activities in the Dorm. No dormitory logs have been produced.

| RFP | Response |
|---|---|
| 37. All documents related to cellulitis infections at the Facility between January 1, 2020, to present. | **Response: Documents concerning cellulitis infections in general at Suwannee CI Annex from January 1, 2020, through November 17, 2022, have been requested and if they exist, will be produced. No documents regarding cellulitis in specific inmate will be produced.** |

BASIS TO COMPEL: Documents concerning cellulitis infections in general at

Suwannee CI Annex from January 1, 2020, through November 17, 2022, have not

been produced. Documents that contain names of specific inmates can be produced

with identifiers redacted consistent with the requirements of HIPAA rules.

| RFP | Response |
|---|---|

| | |
|---|---|
| 39. Documents sufficient to show the number of pull-up diapers issued at the Facility in 2020, 2021, and 2022, including the number each recipient received per day. | **Response: If such documents as described herein exist, they will be produced as they reflect the numbers issued in general. No documents will be produced as they relate to individual inmates.** |

BASIS TO COMPEL: Responsive documents have not been produced.

Documents that contain names of specific inmates can be produced with identifiers

redacted consistent with the requirements of HIPAA rules.

| RFP | Response |
|---|---|
| 40. All documents and communications between January 1, 2020, to present, between your personnel at the Facility and any other person relating in whole or in part to requests for pull-up diapers, use of pull-up diapers at the Facility, and issuance of pull-up diapers to inmates. | **Response: None.** |

BASIS TO COMPEL: Information relating to the procurement and

distribution of these items must be in Defendant Dixon's control. Documents that

contain names of specific inmates can be produced with identifiers redacted

consistent with the requirements of HIPAA rules.

| RFP | Response |
|---|---|
| 41. All documents and communications between January 1, 2020, to present between your personnel at the Facility and any other person relating in whole or in part to bladder or bowel incontinence. | **Response: None.** |

BASIS TO COMPEL: Most likely, the same documents on orders and

distributions of diapers will show the number of inmates who are incontinent of

bladder and/or bowel. Documents that contain names of specific inmates can be

produced with identifiers redacted consistent with the requirements of HIPAA rules.

| RFP | Response |
|---|---|
| 42. Documents sufficient to show the following with respect to each prisoner diagnosed with bladder or bowel incontinence: (a) the identity of the patient suffering from bladder or bowel incontinence; (b) the date of diagnosis of bowel or bladder incontinence; (c) the course of treatment of bladder or bowel incontinence; and (d) all medical personnel involved in the treatment of bladder or bowel incontinence. | **Response: Objection. This request is not only overbroad and unduly burdensome, but it is also in violation of HIPAA as it relates to other inmates. Such information regarding other inmates is also not likely to lead to any admissible evidence regarding Plaintiff. Finally, such statistics regarding inmates diagnosed with incontinence or any other specific ailments, particularly as a means to identify them, are not kept in any form.** |

BASIS TO COMPEL: The same documents that would show who is getting diapers would substantially show who is incontinent. They should be produced even if the identifiers are redacted and the unredacted records filed under seal. Even if parts a and b are burdensome, c and d would not be.

| RFP | Response |
|---|---|
| 45. All documents or communications with the Medical Defendants concerning the settlement agreement in the matter of *Disability Rights Florida, Inc., v. Jones*, Case No. 2019-CA-2825, Second Judicial Circuit in and for Leon County, Florida, dated November 8, 2021. | **Response: None.** |

BASIS TO COMPEL: Plaintiff is aware that he communicated repeatedly on this subject himself and so it is not possible that there are no documents. This agreement is the basis for treatment of prisoners with disabilities, such as mobility, and should be a part of the orientation of each prison employee.

| RFP | Response |
|---|---|

| 47. All documents and communications with the Medical Defendants concerning any changes to policy or practice for ADA inmates concerning, relating to, arising from, or in connection with the settlement agreement or lawsuit referenced above in Request No. 45. | Response: None. |
|---|---|

BASIS TO COMPEL: Given that Plaintiff himself has raised this issue repeatedly in medical grievances that have been responded to, at times, by medical staff, it is not possible that there are "None."

| RFP | Response |
|---|---|
| 48. All communications relating to Plaintiff's informal and formal grievances and appeals from January 1, 2020, to present. | Response: None. |

BASIS TO COMPEL: It is well established that institutional and central office grievance reviewers frequently communicate with medical staff and review records sent back and forth, usually by e-mail, it is not possible that there are no such communications.

| RFP | Response |
|---|---|
| 51. All communications with ADA coordinators or personnel staffed by you or your contractors or agents concerning or relating to Plaintiff. | Response: Responsive documents will be produced. |

BASIS TO COMPEL: No such documents have been produced.

| RFP | Response |
|---|---|
| 53. All documents relating to any assessments or determinations taken concerning Plaintiff in connection with the specific procedures outlined in Procedure 403.011. | Response: Any assessments or determinations involving Plaintiff in connection with Impaired Inmate Assistants as outlined in Procedure 403.011 would be in Plaintiff's medical file, if they exist. |

BASIS TO COMPEL: Just as one example, screening of prospective Impaired Inmate Assistants would require reviewing information in their files such as gang membership or details from the crime of conviction that would not normally be made public. It is not credible that assessments and determinations would end up in Plaintiff's medical file, which is open to him, since they involve administrative decisions that are often stamped "Do Not Share with Inmate."

| RFP | Response |
|---|---|
| 54. All documents relied upon in making any determinations or assessments regarding ADA accommodations or compliance with Procedure 403.011. | **Response: Procedure 403.011, Impaired Inmate Assistants, is not a reasonable accommodation but a medical decision made by Centurion staff, who review an inmate's medical records to determine if an assistant is warranted. Thus, there are no records to be produced.** |

BASIS TO COMPEL: To say the assignment of Impaired Inmate Assistants is not a reasonable accommodation is on par with telling mobility-impaired inmates that they are not qualified persons with a disability. This may be the opinion of some prison staff and administrators who apparently have few resources and little training (to judge by personnel records) on which to base that opinion.

**B. PLAINTIFF'S SECOND DISCOVERY REQUESTS** (Exhibit 2)

These discovery responses were due on September 18, 2023 and the responses to Requests for Admissions were served timely but the Interrogatories were served on October 3, 2023 and the RFP responses on October 6, 2023.

| RFP | Response |
|---|---|

| | |
|---|---|
| 6. A copy of the job description for each individual at Suwannee CI whose job involves, in whole or in part, working on issues relating to ADA inmates and the accommodation of disabilities. | **Response: Objection as to being overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence. If Plaintiff can identify precise individuals relevant to this action, job descriptions will be provided for individuals employed by FDC. Defendants have already provided personnel files for Defendants Richardson, Aldridge, and Hawthorne.** |

BASIS TO COMPEL: Secretary Dixon has superior access to records that identify "precise individuals", but Plaintiff has no such access and has to identify such persons by their function. This is what we believe we have done.

| RFP | Response |
|---|---|
| 12. As to the "Wound Program" document (Exhibit A) for 2020-present:<br>a. Wound data collected, tracked and trended for report and presentation at the Statewide Quality Management Meeting as required by Part II-B-2 of Exhibit A;<br>b. Materials used in the "wound prevention and wound care education and training for staff" as provided in Part II-C-2 of Exhibit A;<br>c. All "recommendations for wound care protocols and wound program" as provided in Part II-C-3 of Exhibit A;<br>d. A blank copy of the Monthly Wound Report, DC4-810, and copies of DC4-810 reports for Plaintiff;<br>e. All DC4-701 and DC4-714A biweekly records evaluating the progress of wound healing for Plaintiff as required by Part II-D-3 of Exhibit A;<br>f. All Braden Scale form (DC4-732) evaluations filled out for Plaintiff as required by Part III-A-1-a of Exhibit A;<br>g. All "Wound Evaluation and Treatment Record" and "Pain Management" sections relating to Plaintiff on form DC4-684 and DC4-701A required by Part III-A-2-a and e of Exhibit A;<br>h. All "Wound Treatment Documentation" required by Part III-A-3-a- d of Exhibit A; | **Response: Objection to subparts (a), (b), (c) as to relevance and being overly broad. Responsive documents for parts (d), (e), (f), (g), (h), (i), and (j) may be found in Plaintiff's medical records. Undersigned counsel is continuing to request responsive materials, if any exist outside of the above indicated files, and will supplement as necessary upon receipt.** |

9

| | |
|---|---|
| i. All "Outpatient Wound Evaluation/Treatment" encounters documented on form DC4-811 for Plaintiff per Part III-C, Exhibit A[;]<br>j. Any notification by the Suwannee Chief Health Officer/Medical Director to the Regional Medical Director relating to Plaintiff and any of the criteria listed in Part IV-C of Exhibit A. | |

BASIS TO COMPEL: Parts a, b, and c, are specifically set out as being data that is collated and maintained and appears to be relevant in that the program has apparently been discontinued and the records sought would speak to the need for the program and its application to Plaintiff's severe tissue infection that flares up every few months and has never completely disappeared. Cellulitis is potentially deadly in that it can result in blood and bone infection and gangrene and septic shock and amputation and potentially death. As to the records that "can be found in Plaintiff's medical file," a producing party cannot simply refer to a large body of records and say that the responsive records are somewhere in the stack. *Velez v. Bank of Am.*, No. 8:18-cv-88-T-35SPF, at *7 (M.D. Fla. Oct. 4, 2019) ("If Plaintiffs have already produced the documents, they must specifically identify which documents are responsive to the request and where they are located in the folders provided.").

| Interrogatory | Response |
|---|---|
| 1. Please identify and describe each and every benefit, service, program, and activity that would normally be available to inmates with mobility impairments and incontinence of bladder and bowel at Suwannee C.I. and Annex and the methods by which they can | **Response: All inmates have access to the inmate request system. This process involves the same form at every institution for an inmate to request anything. The form is submitted through institutional mail and institutional staff will respond. Every inmate goes through an orientation process when they arrive at an institution which includes details of this mail process for the inmate to submit** |

| | |
|---|---|
| be requested. | **an inmate request, sick call, grievance, outgoing mail to family, etc.** |

BASIS TO COMPEL: Defendant does not object to the first part of the Interrogatory, asking for identification of benefits, services, programs, and activities, but simply ignores it. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3).

| Interrogatory | Response |
|---|---|
| 2. Please identify and describe each and every physical or mental condition or diagnosis that is considered to constitute a disability that Plaintiff is deemed to now have or has ever been deemed to have during his current incarceration and for each such condition or diagnosis, please identify the physician(s) who diagnosed the condition(s), identify each physician(s) with whom he treated for each condition(s), and identify each physician(s) who classified him as "disabled" (to the extent physicians determine that classification). | **Response: Objection as to relevance of time periods outside of the current litigation as Plaintiffs Amended Complaint focuses on the time since his October 15, 2020, transfer to Suwannee C.I., which he states "form[s] the basis for this new action." Doc. 25, 41. Notwithstanding the objection, all of the requested information can be found in Plaintiffs medical file.** |

BASIS TO COMPEL: The above response, construing the Amended Complaint as covering only post-October 15, 2020, is based on a misquote. Defendant quotes the First Amended Complaint (ECF 25, ¶ 42, as saying that the transfer to Suwannee C.I. "form[s]" the basis for this new action. "Forms" is a verb that applies to a singular subject. What Plaintiff actually stated was that "the discrimination and violations followed Plaintiff upon his transfer to Suwannee C.I., which form the basis for this new action." The verb "form" reflects a plural subject and clearly references "the discrimination and violations" that followed Plaintiff to

Suwannee C.I. The language does not suggest they began there. The history of

Plaintiff's impairment and retaliatory failure to accommodate is relevant to the

allegations in this case – not just the history beginning at his transfer.

| Interrogatory | Response |
|---|---|
| 5. Please describe in detail the factors involved in the decision to discontinue Plaintiff's status as an ADA inmate, identify the persons involved in making that decision, and the ways in which the change in status affects Plaintiff. | **Response: As to discontinuing his ADA status, Plaintiff should refer to his medical file which would indicate the physicians who determined his medical grades.**<br><br>**The people involved in this medical grade decision are Plaintiff's physicians handling the individualized assessment at that time. The individuals at the Plaintiffs institution include an impaired inmate nurse who is responsible for coordinating and training assistance. This individual also chairs the quarterly disabled inmate meetings which provide inmates an opportunity to appear and discuss their incarceration as it relates to their specific needs.**<br><br>**Classification staff at the institution will receive a DC4-706 health services profile form, which informs them of the inmate's medical grade determined by the physician. There is an indicator on the form when there is a change in grade. Management will review to ensure there is not a conflict with that inmate's ability to be housed at that institution. If there is, the inmate will be transferred to an appropriate institution.**<br><br>**Central office staff typically only get involved when there is a profile conflict due to the changed grade of an inmate which will result in the inmate being transferred to an appropriate institution.**<br><br>**See Health Services Bulletin 15.03.25 for an overview for inmates with disabilities or impairments. See also Health Services Bulletins 150325.01, 15.03.25.02, and 15.03.25.03 regarding auditory, mobility, and v1s1on, respectively. (Previously produced)** |

| | **Changes in an inmate's health grade are purely the result of the physician, who is employed by Centurion.** |

BASIS TO COMPEL: Defendant ignores the part of the Interrogatory that requests identity of persons. It does not object to that part of the Interrogatory but simply ignores it. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3).

### C. PLAINTIFF'S THIRD DISCOVERY REQUESTS (Exhibit 3)

| RFP | Response |
|---|---|
| 5. All records, including electronically stored information, in your possession, custody, or control, both at the institutional and central office level relating to the transfer of Plaintiff from Suwannee Annex to Columbia Annex (with timely updates to the end of discovery). | **Response: Undersigned is following up with the proper FDC individual(s) regarding this request and will produce any audio and video, to the extent any exists. See also Plaintiff's updated classification file produced in Response to No. 9 of Plaintiff's Second Request for Production.** |

BASIS TO COMPEL: Plaintiff received no relevant communications. Among the electronically stored records are massive numbers of communications that have gone back and forth relating to Plaintiff for the past several years. Plaintiff's requests for e-mail communications have apparently never been submitted to the IT department at FDC which has always in the past found thousands of e-mails, many of which were relevant and some material. Plaintiff will produce a log describing e-mails from Plaintiff's prior lawsuit as an example.

| RFP | Response |
|---|---|

| | |
|---|---|
| 8. All records, including electronically stored information, in your possession, custody, or control, both at the institutional and central office level sufficient to show the criteria on which Columbia C.I. Annex was selected as the institution for Plaintiff's transfer. (with timely updates to the end of discovery). | **Response: Undersigned is following up with the proper FDC individual(s) regarding this request and will produce any records, to the extent any exists.** |

BASIS TO COMPEL: No such records were produced. There are policy guidelines for inmate placement but for the last eight years, Plaintiff, an elderly, chronically ill, and disabled, nonviolent inmate, has been through some of the roughest prisons in North Florida: Franklin C.I., Northwest Florida Reception Center, Suwannee C.I., and Columbia C.I. These are prisons for serious violent offenders while Plaintiff is a non-violent, elderly, disabled, chronically ill prisoner serving a sentence of a non-violent offense. The only thing that keeps him from going to a prison where he could get compassionate and professional geriatric treatment is that he is a persistent writ-writer, someone who writes grievances and files lawsuits. Defendant Dixon could provide a set of parameters that determine where inmates are assigned but has not done so in response to this clear invitation.

### D. PLAINTIFF'S FOURTH DISCOVERY REQUESTS (Exhibit 4)

| Interrogatory | Response |
|---|---|
| 2. Please state all reasons for discontinuing the provision to Plaintiff of the original set of sanitation supplies called for in the Preliminary Injunction issued in *Phillips v. Inch*, Case No. 4:18cv139-MW-CAS, ECF 198, or reducing them in type, amount, or number, declining to provide him with pull- | **Response: Objection as to relevance of time periods outside of the current litigation as Plaintiffs Amended Complaint focuses on the time since his October 15, 2020, transfer to Suwannee C.I., which he states "form[s] the basis for this new action." Doc. 25, ¶41. As to the relevant time period, this interrogatory is phrased with false assumptions. The determination of a need** |

14

| | |
|---|---|
| up diapers, and the reasons for declining or re-issue passes for bathroom and shower access, high-topped therapeutic boots, from 1/1/2020 to the present. | **for pull-up diapers, bathroom passes, shower access, and high-topped therapeutic boots is made by a physician employed by Centurion. FDC then adheres to providing the supplies as ordered by those physicians.** |

BASIS TO COMPEL: Again, the above is based on a misquote of the First Amended Complaint (ECF 25, ¶ 42, as saying that the transfer to Suwannee C.I. "forms" the basis for this new action. "Forms" is a verb that applies to a singular subject. But Plaintiff actually stated that "the discrimination and violations followed Plaintiff upon his transfer to Suwannee C.I., which *form* the basis for this new action." The verb "form" reflects a plural subject and clearly references "the discrimination and violations" that followed Plaintiff to Suwannee C.I. The language does not suggest they began there. The history of Plaintiff's impairment is relevant to the allegations in this case – not just the history beginning at his transfer.

| Interrogatory | Response |
|---|---|
| 5. Please describe in detail each noted occurrence or recurrence of cellulitis symptoms that Plaintiff has experienced since 2018, giving the date the occurrence or recurrence was noted, the treatment that was ordered, and how the treatment was carried out, the identity of persons who treated Plaintiff for the condition, and the date that the cellulitis was deemed to be under control. | **Response: Objection as to relevance of time periods outside of the current litigation as Plaintiff's Amended Complaint focuses on the time since his October 15, 2020, transfer to Suwannee C.I., which he states "form[s] the basis for this new action." Doc. 25, ¶ 41. Notwithstanding the objection, all of the requested information can be found in Plaintiffs medical file.** |

BASIS TO COMPEL: Again, the above is a misquote. Defendant quotes the First Amended Complaint (ECF 25, ¶ 42, as saying that the transfer to Suwannee

C.I. "forms" the basis for this new action. "Forms" is a verb that applies to a singular subject. But Plaintiff actually stated that "the discrimination and violations followed Plaintiff upon his transfer to Suwannee C.I., which form the basis for this new action." The verb "form" reflects a plural subject and clearly references "the discrimination and violations" that followed Plaintiff to Suwannee C.I. The language does not suggest they began there. The history of Plaintiff's impairment is relevant to the allegations in this case – not just the history beginning at his transfer.

As to the records that "can be found in Plaintiff's medical file," a producing party cannot simply refer to a large body of records and say that the responsive records are somewhere in the stack. *Velez v. Bank of Am.*, No. 8:18-cv-88-T-35SPF, at *7 (M.D. Fla. Oct. 4, 2019) ("If Plaintiffs have already produced the documents, they must specifically identify which documents are responsive to the request and where they are located in the folders provided.").

## III.   ARGUMENT

Courts are vested with "broad discretion" under Rule 26 to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And "[t]he Federal Rules of Civil Procedures strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble*, 758 F.2d 1545, 1547 (11th Cir. 1985). "[A] motion to compel discovery is committed to the discretion of the trial

court[.]" *Com. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

Under the Federal Rules of Civil Procedure, a party may serve on any other party a request to produce and permit the requesting party to inspect, copy, test, or sample "any designated documents or electronically stored information." Fed. R. Civ. P. 34(a)(1)(A). "This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill." *Collins v. Walden*, 613 F. Supp. 1306, 1315 (N.D. Ga. 1985). A party resisting discovery has the burden to show that the requested discovery is not relevant to the issues or is otherwise objectionable. *See Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001).

## A. Objections Based on Privilege

Defendant has objected to numerous specific requests on the basis that production *could* compromise "privilege." However, Defendant does not then produce those records and they do not log the requests that they would contend are protected by privilege. They are saying, in effect, at this late date, "we don't know what materials we have that might be responsive but some of it might be covered by privilege so just to be safe, we won't give you anything." It appears that there are just two possibilities. That there is *no* privilege and the responsive documents should be produced or there *is* privilege and the otherwise responsive documents should be listed in a privilege log. *Johns v. United States*, 0:23-CV-60576-Dimitrouleas/

Augustin-Birch, at *6 (S.D. Fla. Dec. 14, 2023) ("[A] party withholding information on the basis of a privilege must provide a privilege log that describes the documents and/or communications being withheld. Fed.R.Civ.P. 26(b)(5)(A)")

## B. Reference to Large Masses of Documents

Defendant Dixon has frequently referred to a large body of records and stated, in effect, that the responsive documents are in there. A producing party cannot simply refer to a large body of records and say that the responsive records are somewhere in the stack. *Velez v. Bank of Am.*, No. 8:18-cv-88-T-35SPF, at *7 (M.D. Fla. Oct. 4, 2019) ("If Plaintiffs have already produced the documents, they must specifically identify which documents are responsive to the request and where they are located in the folders provided.").

## C. Defendant Dixon's Evasion of Duty to Accommodate Disabilities

Frequently, Secretary Dixon claims that some requests are irrelevant because he is not answerable for the failure of his medical contractor to accommodate disabilities (e.g. prescribe assistive devices). However, the Secretary has a non-delegable duty to accommodate disabilities under the ADA, whether through his assigned employees or his assigned contractors because he controls the levers of power. Where the Secretary has failed to completely respond to a discovery request based on that false division of responsibility, he should provide better answers. "In general, a principal may be held liable for the acts of its agent that are within the course and scope of the agency." *Brevard Extraditions, Inc. v. FleetMatics, USA, LLC*, No. 8:12-CV-2079-T-17MAP, at *13 (M.D. Fla. Sep. 27, 2013).

### D. Responding Only in Part

At times, Defendant Dixon has responded to part of Request while ignoring another part. Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). The answers must be " true, explicit, responsive, complete, and candid." *Equal Rights Center v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C.2007) (quoting *Hansel v. Shell Oil Corp.*,169 F.R.D. 303, 305 (E.D.Pa.1996)). *Weaver v. Mateer & Harbert, P.A.*, 277 F.R.D. 655, 657 (M.D. Fla. 2011). When objection is to only part of a production request then the objecting party must make clear that it is only providing a partial response. Otherwise, the party is deemed to have waived its objection. *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) (citing *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FtM-29SPC, 2011 WL 1232347, at *2 (M.D. Fla. Mar. 30, 2011) (noting that courts deem an objection waived when it is accompanied by a response.). *Peters v. Boehringer-Ingelheim Pharms., Inc.*, Case No: 6:15-cv-694-Orl-18TBS, at *4 (M.D. Fla. Nov. 30, 2015). If the responding party objects to part of the request, the responding party "must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). The Middle District Discovery Handbook further provides that "[w]hen the scope of the document production is narrowed by one or more objections, this fact and the nature of the documents withheld should be asserted explicitly." Middle District Discovery (2001) at 11, III. A. 7. A party that objects to a request as overbroad,

when a narrower version would not be objectionable, should ordinarily produce documents responsive to the narrower version "without waiting for a resolution of the dispute over the scope of the request. When production is limited by a party's objection, the producing party should clearly describe the limitation in its response." Middle District Discovery (2001) at 11, III. A. 8. "See Fed. R. Civ. P. 37(a)(4) ("[f]or the purposes of this subdivision (a), an evasive or incomplete designation, answer, or response must be treated as a failure to disclose, answer, or respond."); *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006) " *Lewis v. City of Brunswick*, CIVIL ACTION NO.: 2:14-cv-122, at *7 (S.D. Ga. Sep. 10, 2015).

## E. Providing Records in Lieu of Written Responses

At times, Defendant has offered his records in lieu of a written answer. Under Fed.R.Civ.P. 33(d), Defendant is permitted to provide its records in lieu of a written answer as long as the records provide their complete answers. Plaintiff will seek to limit positions taken by Defendant on summary judgment or at trial that substantially differ or extend beyond this response. If the records cited do not fully describe the current state of the program, or misrepresent the program in some sense, Defendant should supplement the response to correct any misunderstandings. A party may not merely refer another party to documents hoping that the other party will be able to glean the requested information. *Johnson v. Kraft Food of N. Am*, 236 F.R.D. 535, 545 (D. Kan. 2006). Rule 33(d) does not require Plaintiff to guess as to which documents Defendant contends answer the interrogatories. *See Mann v. Island Resorts Development, Inc.*, 2009 WL 6409113, *4 (N.D. Fla. Feb. 27, 2009) (stating

counsel for interrogating party "should not have to sift through volumes of material to figure out which document(s) responds to which interrogatory."). *Santoro v. Autozoners, LLC*, Case No: 5:13-cv-242-Oc-10PRL, at *3 (M.D. Fla. May 12, 2014).

### F.  Time Frame of Responses

At times, Defendant Dixon objects to requests that relate to events prior to Plaintiff's transfer to Suwannee C.I. on October 15, 2020. They cite to Plaintiff's Amended Complaint (ECF 25) at paragraph 42, as stating that his transfer to Suwannee "*forms* the basis for this new action." This is a misquote. Defendants quote the First Amended Complaint (ECF 25, ¶ 42, as saying that the transfer to Suwannee C.I. "forms" the basis for this new action. "Forms" is a verb that applies to a singular subject. But Plaintiff actually stated that the prior action covered the time to the end of 2019, but that "the discrimination and violations followed Plaintiff upon his transfer to Suwannee C.I., which *form* the basis for this new action." The verb "form" reflects a plural subject and clearly references "the discrimination and violations" that followed Plaintiff to Suwannee C.I. The language does not suggest they began there. In any case, the history of Plaintiff's impairment is relevant to the allegations in this case – not just the history beginning at his transfer.

## IV.    REQUEST FOR REASONABLE EXPENSES

Should the Court grant this motion, Plaintiff requests an award of reasonable expenses, including attorney's fees, pursuant to Rule 37(a)(5). The Court possesses broad power to "impose sanctions on uncooperative litigants." *Phipps v. Blakeney*, 8

F.3d 788, 790 (11th Cir. 1993); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993); *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989). Rule 37 sanctions are intended to (1) compensate the court and parties for the added expenses caused by discovery abuses, (2) compel discovery, (3) deter others from engaging in similar conduct, and (4) penalize the offending party or attorney. *Wouters v. Martin Cty.*, 9 F.3d 924, 933 (11th Cir. 1993); *Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1453 (11th Cir. 1985). The Eleventh Amendment does not immunize FDC from imposition of sanctions. *Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, No. 11-CIV-24611, 2016 WL 950952, at *8 (S.D. Fla. 2016).

The Court should exercise its discretion to award fees because there is no good-faith reason for the insubstantial partial Interrogatory answers, no good-faith reason or substantial justification for delay in production; and—unless Defendants can state otherwise—other circumstance that make an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). On the Court's request, Plaintiff's counsel will provide time records.

## V. CONCLUSION

Plaintiff respectfully requests that the Court: grant this motion; require Defendants to fully and forthrightly provide better answers to all Interrogatories and produce all documents and materials responsive to the legitimate requests, logging any items deemed to be privileged in a privilege log, including (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

The Court should award reasonable expenses under Rule 37(a)(5).

Respectfully Submitted,   */s/ James V. Cook*
James V. Cook (FBN 966843)
LAW OFFICE OF JAMES COOK
314 W. Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com
Tel. (850) 222-8080

James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
Tel. (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff*

I CERTIFY undersigned counsel has conferred in good faith to resolve differences on discovery issues and it appears that many differences may be resolved before the Defendants' response comes due, in which case, Plaintiff will amend out the issues.

I CERTIFY I have served this Motion via the Court's ECF system on 12/15/23.

*/s/ James Cook*