UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

     Plaintiff,

v.                                                        Case No. 3:22-cv-997-BJD-LLL

RICKY DIXON, *et al.*,

     Defendants.

## PLAINTIFF'S <u>FIRST</u> SET OF DISCOVERY REQUESTS DIRECTED TO CENTURION AND MHM HEALTH

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff Donny Phillips hereby requests that Defendants Centurion of Florida, LLC and MHM Health Professionals, LLC each within thirty days (1) provide written responses to the following Requests for Production and Admissions, (2) produce for inspection and copying the documents and things identified in the Requests for Production, and (3) answer the following Interrogatories, separately and fully under oath or affirmation. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests and Interrogatories are continuing in nature and may require supplementation.

Dated: December 6, 2022

Respectfully submitted,

SLATER LEGAL PLLC

By: */s/ James M. Slater*
       James M. Slater (FBN 111779)
       113 S. Monroe Street
       Tallahassee, Florida 32301
       james@slater.legal
       Tel.: (305) 523-9023
       *Counsel for Plaintiff*

### Certificate of Service

I hereby certify that on December 6, 2022, I electronically served the foregoing document to counsel for Centurion and MHM Health via electronic mail.

By: */s/ James M. Slater*
     James M. Slater

## DEFINITIONS AND INSTRUCTIONS

### General Definitions

1.　　The term "person" means any individual, natural person, witness, partnership, association, firm, corporation, organization, trust, governmental or public entity, and/or any of its agents, employees, assigns or representatives.

2.　　The term "identify" when referring to a natural person or entity shall mean to provide the name, last known address, present or last known place of employment, and telephone number of the person or entity described in the specific request.

3.　　The term "identify" when referring to a document shall mean to provide the type of document; name or title of the document; the date; the author(s), transmitter(s), addressee(s), and recipient(s); a description of the subject matter; and the location and custodian of the document.

4.　　"Plaintiff" means Plaintiff Donny Phillips.

5.　　"Defendant," "you" or "your" means the defendant responding to these Requests and/or its employees, agents, servants, representatives, parents, subsidiaries, affiliates, and all other persons acting on its behalf.

6.　　The "Medical Defendants" means Defendants Alexis Figueroa, Brittney Cannon, and Connie Lynn Adams.

7.　　The "Complaint" shall refer to the current operative pleading in this action.

8.     The "Facility" shall refer to Suwannee Correctional Institute, including its annex.

9.     "FDC" shall refer to the Florida Department of Corrections.

10.     "Policy" encompasses all your policies, training memoranda, bulletins, manuals, orders, and other documents through which you inform your staff about how they should or shall act when on duty, and is to be given the broadest possible meaning.

11.     The terms "concerning," "relating to," or "relate to" shall mean to make a statement about, discuss, describe, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate, or in any way pertain (in whole or in part) to the subject.

12.     The words "and" as well as "or" shall be construed both disjunctively and conjunctively; the word "all" means "any and all"; the word "any" means "any and all"; the word "each" means "each and every"; the word "every" means "each and every.

13.     The singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each gender.

14.     The term "document" is defined to include, but is not limited to, any papers, writings, drafts, notes, letters, diaries, agreements, contracts, calendars, memoranda, reports, drawings, plans, blueprints, notation books, financial records, computer or other business machine records, communications sent via any electronic means, including but not limited to internet, extranet and intranet, and any

attachments to such electronic communications and any other data, compilations or written or graphic material stored in a tangible, electronic, mechanical or electric form, or any representation of any kind, including, but not limited to, materials stored on or in computer disks, networks, mainframes, hard drives, CD-ROM, tapes or other forms of memory, as well as back-up and deleted files of any computer, computer storage device or media, whether located on or off site, from which the information can be obtained, as well as any draft, nonidentical copy, and/or translation of the foregoing. A draft or non-identical copy is a separate document within the meaning of the term.

15.     The term "communication device" means any device customarily used to facilitate oral and/or written communication, including, without limitation, telephones, kiosks, tablets, computers, writing instruments, logbooks, or stationery supplies.

16.     The term "incontinence supplies" means diapers, pull-ups, underpads, wipes, protective skin creams, such as zinc-based or A&D ointments, cleansing foams and sprays, and other supplies used to absorb liquid or excrement, prevent leaks, and prevent skin irritation.

17.     "Including" shall mean including but not limited to.

### Instructions for Requests for Production and Admissions

1.     You shall identify and produce all documents that can be located or discovered through diligent effort by you, your employees, representatives, agents,

attorneys, consultants or accountants.  This instruction applies to all documents that are in the business or personal files of, or accessible to you or your employees, or in the possession of, or accessible to your representatives, agents, attorneys, consultants or accountants. Each document shall be produced in the form in which it is maintained in the normal course of your activities.

2.      If you object to the production of any document covered by any of these Requests, in the response to the specific request that encompasses the document, state the objection, the basis for the objection and whether or not the document is being withheld because of the objection.  For each document being withheld for any reason, including a claim of privilege, state the following in the response to the request encompassing the document:

     a.      the reason or reasons you are withholding the document, including any specific privilege you claim protects the document;

     b.      the facts supporting the privilege or other reason or reasons for withholding the document;

     c.      the date when the document was prepared or originated;

     d.      the name(s) or the person(s) who wrote or prepared the document, along with information regarding their relationship to the person(s);

     e.      the names of each person to whom the document was addressed or copied, as well as the names of each person who may have

seen the document, along with information regarding your relationship to each person;

f.    the subject matter of the document; and

g.    the name and address of each person who has personal knowledge of the subject matter of the document.

3.    If you object or otherwise refuse to respond or produce documents in response to any portion of a document request, you shall provide all documents and information called for by that portion of the request for production that you do not object to and/or to which you do not refuse to respond as follows:

a.    If you object to a document request on the ground that it is too broad (i.e. if you believe it calls for information outside the scope of permissible discovery as defined by Rules 26 and 34 of the Federal Rules of Civil Procedure), you shall produce documents and things in response to that Request by producing all documents and things that are within the permissible scope of discovery and identify all categories of documents being withheld;

b.    If you object to a document request on the ground that to produce documents and things would constitute an undue burden, then you shall produce as many of the requested documents and things as can be provided without undertaking an undue burden;

c.     If you object to any portion of a document request on the ground that it is vague or indefinite, then you shall set forth your understanding of the allegedly vague or indefinite term and shall then produce documents and things based upon that stated understanding.

4.     Please produce documents responsive to individual Requests as soon as possible and without waiting to produce documents responsive to other Requests whenever possible.

5.     Unless another time period is specified, this request for production is addressed to the time period from <u>January 1, 2018</u> to the present, inclusive of records that were effective during that time period even if they were generated before it.

6.     These Requests are continuing in nature, and must be supplemented to the extent that, subsequent to responding to these Requests, you obtain additional information that renders any of your initial responses inaccurate or incomplete.

### **Instructions for Interrogatories**

1.     In answering these interrogatories, you are required to provide all information that is available to you or within your control, including information in the possession of your attorneys, investigators, employees, or other agents.

2.     Where terms are defined, interrogatories containing those defined terms cannot be properly answered unless the definitions are followed.

3.      If you object to any part of an interrogatory and refuse to answer that part, state you objection and answer the remaining portion of that interrogatory. If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and answer the interrogatory for the scope or time period you believe is appropriate. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your ability to answer the remainder and stating the information you have concerning the unanswered portions. If your answer is qualified in any particular manner, set forth the details of that qualification.

5.      When an interrogatory requests documents, data, knowledge, or information in your possession, that interrogatory includes the knowledge of your attorneys, accountants, agents, representatives and experts, and any professional employed or retained by you relating to any of the facts or issues involved in this proceeding.

6.      If you contend that a response to an interrogatory calls for the disclosure of privileged information, in whole or in part, or if you otherwise object to any part of any interrogatory, you are required to provide a complete response to the portion of the interrogatory that is not privileged or objectionable. With respect to the remainder of the interrogatory, state the following:

   a.      the reason for such objection or ground for exclusion;

   b.      the identity of each person having knowledge of the factual basis

and the identity of individual documents, if any, on which the privilege or

other ground is asserted;

      c.     the nature of the claim or privilege; and

      d.     the brief description of the item, document, or thing in a manner

so as not to waive the privilege.

      7.     If the response to all or part of any interrogatory is that you lack

knowledge of the requested information, set forth the remaining information that is

known to you and describe all efforts made by you or your attorneys, accountants,

agents, experts, representatives or any professional employed or retained by you to

obtain the information necessary to respond to the interrogatory. If any estimate or

approximation can reasonably be made in place of the unknown information, also

set forth your best estimate or approximation, clearly designated as such, in place of

unknown information, and describe the basis upon which the estimate or

approximation is made.

      8.     You are cautioned against providing boilerplate objections without

providing a detailed basis for the objection. Such objections are improper under

Rule 33(b)(4).

/

/

/

## DOCUMENT REQUESTS

1.     All communications in your possession, custody, or control relating to the matter sued upon between you and any witness listed in your Rule 26(a)(1)(A)(i) disclosures.

2.     All records, including electronically stored information, in your possession, custody, or control, that you may use to dispute Plaintiff's claims or support your defenses.

3.     All records listed in your Rule 26(a)(1)(A)(ii) disclosures.

4.     All public records requests made by you or on your behalf relating to Plaintiff or the facts in the Complaint, and all responses made by the person or entity from whom the records were requested.

5.     All records relating to the facts in the Complaint that have been otherwise provided to you whether based on public records requests or not.

6.     All records supporting any affirmative defense raised by you.

7.     All records, exhibits, graphs, displays, charts, computer printouts, recordings and photographs which you may use at any stage of this proceeding (noting the continuing duty to produce).

8.     All documents, including without limitation any models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, communications, notes, letters, text messages, direct messages, SMS messages, internet or social media

posts, and e-mails, not privileged, relating to any of the facts identified in the Complaint.

9. All records, including models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, and communications, including e-mails, relating to a fact or issue in this controversy.

10. All communications with any of the named defendants in this lawsuit relating to the matter sued upon or facts identified in the Complaint, including texts and e-mails.

11. All communications with any of the named defendants in this lawsuit related to Plaintiff that were made, whether orally or in writing, from 1/1/2020 through present, including texts and e-mails.

12. All records of disciplinary and corrective actions taken against any of the Medical Defendants.

13. All photographs or video or audio recordings relating to the matter sued upon or any other facts identified in the Complaint, including clips downloaded to cell phones or other devices.

14. Your policies, manuals, and guidelines in effect in 2020-2022 concerning Americans with Disabilities Act of 1990 (ADA) compliance and disability accommodation.

15. Your polices, manuals, and guidelines in effect in 2020-2022 concerning treatment of cellulitis.

16.     Your policies, manuals, and guidelines in effect in 2020-2022 concerning treatment of skin infection.

17.     Your policies, manuals, and guidelines in effect in 2020-2022 regarding the provision of incontinence supplies.

18.     All records relating to purchases and inventories of (a) adult diapers; (b) barrier creams; (c) antiseptic soap; (d) medical wipes, at Suwannee C.I. for 2020 through 2022.

19.     All records or documents supporting any responses to Plaintiff's Requests for Admissions directed to you where the statement is not unequivocally admitted.

20.     All records or documents not privileged that you created as a result of any events alleged or identified in the Complaint, including but not limited to, letters, memos, logs, forms, reports, and transcripts.

21.     All search queries or information in UP TO DATE, or other software, concerning cellulitis, including documents sufficient to show the date and time of such search or query and the documents generated by the search or query.

22.     All search queries or information in UP TO DATE, or other software, concerning bladder and/or bowel incontinence, including documents sufficient to show the date and time of such search or query and the documents generated by the search or query.

23.     Any and all reports you made concerning Plaintiff's infection(s), including all infectious disease outbreak reports and worksheets.

24.     Any and all reports in your possession, custody, or control concerning Plaintiff's infection(s), including for cellulitis.

25.     All documents related to cellulitis infections at the Facility between January 1, 2020 to present.

26.     All nonprivileged communications with any person not employed or formerly employed or contracted at the Facility concerning Plaintiff.

27.     Documents sufficient to show the number of pull-up diapers issued at the Facility in 2020, 2021, and 2022, including the number each recipient received per day.

28.     All documents and communications between January 1, 2020 to present between your personnel at the Facility and any other person relating in whole or in part to requests for pull-up diapers, use of pull-up diapers at the Facility, and issuance of pull-up diapers to inmates.

29.     All documents and communications between January 1, 2020 to present between your personnel at the Facility and any other person relating in whole or in part to bladder or bowel incontinence.

30.     Documents sufficient to show the following with respect to each prisoner diagnosed with bladder or bowel incontinence: (a) the identity of the patient suffering from bladder or bowel incontinence; (b) the date of diagnosis of bowel or bladder incontinence; (c) the course of treatment of bladder or bowel incontinence; and (d) all medical personnel involved in the treatment of bladder or bowel incontinence.

31.    All documents and communications between January 1, 2020 to present between your personnel at the Facility and any other person relating in whole or in part to cellulitis.

32.    Documents sufficient to show the following with respect to each prisoner diagnosed with cellulitis: (a) the identity of the patient suffering from cellulitis; (b) the date of diagnosis of cellulitis; (c) the course of treatment of cellulitis; and (d) all medical personnel involved in the treatment of cellulitis.

33.    All documents or communications with FDC concerning the settlement agreement in the matter of *Disability Rights Florida, Inc.*, Case No. 2019-CA-2825, Second Judicial Circuit in and for Leon County, Florida, dated November 8, 2021.

34.    All documents or communications with FDC concerning ADA inmate mobility needs.

35.    All documents and communications with FDC concerning any changes to policy or practice for ADA inmates concerning, relating to, arising from, or in connection with the settlement agreement or lawsuit referenced above in Request No. 33.

36.    All communications relating to Plaintiff's informal and formal grievances and appeals from January 1, 2020 to present.

37.    All of Plaintiff's DC4-706 Health Services Profile forms.

38.    All communications and documents concerning Plaintiff's DC4-706 forms.

39.     All communications with ADA coordinators or personnel staffed by you or your contractors or agents concerning or relating to Plaintiff.

40.     All documents generated or relied upon by ADA coordinators in completing any DC4-706 forms for Plaintiff.

41.     All documents relating to any assessments or determinations taken concerning Plaintiff in connection with the specific procedures outlined in Procedure 403.011.

42.     All documents relied upon in making any determinations or assessments regarding ADA accommodations or compliance with Procedure 403.011.

43.     A privilege log that includes (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

/

/

/

## INTERROGATORIES

**Interrogatory No. 1**

Please state the name and title of each person who participated in responding to these Interrogatories and the Interrogatory number(s) they participated in responding to.

**Interrogatory No. 2**

Please describe in detail your policies and procedures for the treatment of disabled inmates who are incontinent of bladder and bowel, including ensuring access to adequate incontinence supplies.

**Interrogatory No. 3**

Please describe in detail your policies and procedures for the treatment of inmates who have been diagnosed with cellulitis.

**Interrogatory No. 4**

Please identify every cellulitis case at the Facility between January 1, 2020 and present. For each such case, please identify every individual by name and inmate number, the date(s) of diagnosis, any medications prescribed, or treatment provided, medical personnel involved in treatment, and any hospitalization or death that resulted from the cellulitis infection.

**Interrogatory No. 5**

Please identify every bladder or bowel incontinence case at the Facility between January 1, 2020 and present. For each such case, please identify every

individual by name and inmate number, the date(s) of diagnosis, any medications prescribed, or treatment provided, and medical personnel involved in treatment.

**Interrogatory No. 6**

Please identify all lawsuits that have been made against you since January 1, 2018, including but not limited to any and all lawsuits alleging that you or your office provided inadequate medical evaluation or care, inadequate access to medical evaluation or care, or violated the Constitution of the United States in discharging your or your office's responsibilities with respect to prisoners. For each such lawsuit, state the case number, caption, and how the lawsuit was resolved if not currently pending.

**Interrogatory No. 7**

Please state whether any of the Medical Defendants or any other person involved in any way in the medical evaluation or treatment of Plaintiff at any time between October 1, 2020 and present acted inconsistently with any of those policies, customs, or practices (including formal or informal, and written or unwritten). If the answer is in the affirmative, please: (a) identify any particular policy, custom, or practice which was violated; (b) describe the circumstances and manner in which said policy, custom, or practice was violated; and (c) state whether any discipline resulted from that violation.

**Interrogatory No. 8**

Please identify all policies, procedures, and practices in place at the Facility from January 1, 2020 to present governing: (a) access to medical evaluation or treatment by prisoners; (b) provision of medical care to prisoners; (c) provision of medication to prisoners; (d) transfer of prisoners to offsite medical facilities for medical evaluation; (e) communications among and between medical staff regarding a prisoner's health; (f) requests by prisoners for medical attention, evaluation, or treatment; (g) documentation of encounters with, medical evaluations of, medical treatment to, and requests for medical treatment by prisoners; (h) healthcare staffing levels at the Facility; (i) differential diagnosis; (j) treatment protocols; (k) quality improvement program(s).

**Interrogatory No. 9**

For each of the policies identified in response to Interrogatory No. 8 above, please identify every policymaker or policymakers who were responsible for or who had policymaking authority over those policies and procedures between January 1, 2020 and present.

**Interrogatory No. 10**

Please identify and describe every instance (if any) between January 1, 2020 and present in which the policymaker(s) identified in Interrogatory No. 9 above, undertook to review, investigate, analyze, uncover, present, or determine the

prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any of the policies or procedures identified in Interrogatory No. 8 above. Please include what steps, if any, were taken in response to the information obtained through any such inquiry, investigation, review or analysis, as well as the date such steps were taken.

**Interrogatory No. 11**

Please identify all software or systems you used to monitor Plaintiff's health condition, his incontinence supplies, and query or search issues relating to his health.

**Interrogatory No. 12**

Please identify any changes you made to your policies, practices, or guidelines for ADA inmates after the effective date of court-monitored settlement agreement entered on November 8, 2021 in the matter of *Disability Rights Florida, Inc. v. FDC*, Case No. 2019-CA-2825, in the Second Judicial Circuit in and for Leon County, Florida.

**Interrogatory No. 13**

Please identify all policies, practices, or procedures concerning the provision of pull-up diapers at the Facility.

/

**Interrogatory No. 14**

Please every case where an inmate received a score of 18 or lower on the Braden Scale at the Facility between January 1, 2020 to present.  For each such case, please identify every individual by name and inmate number, the date(s) of scoring, any medications prescribed, or treatment provided, and medical personnel involved in the scoring and any subsequent treatment.

/

/

/

## REQUESTS FOR ADMISSIONS

1.      No claim in the operative complaint is barred by a statute of limitations.

2.      Plaintiff is a qualified person with a disability under the ADA.

3.      Upon his transfer to the Facility, you knew that Plaintiff had a medical condition that required treatment.

4.      You had a duty to provide medical care to Plaintiff.

5.      You have a duty to provide ADA accommodations to Plaintiff.

6.      MHM is owned by Centurion.

7.      Centurion has a contract with FDC to provide medical care at the Facility.

8.      Medical care for incontinent prisoners includes ensuring those prisoners have enough incontinence supplies.

9.      Plaintiff previously sued you for alleged violations of his constitutional rights, Case No. 4:18-cv-139, pending in the Northern District of Florida ("FLND action").

10.      You settled the FLND action with Plaintiff.

11.      The FLND action did not involve your treatment or care of Plaintiff at the Facility.

12.      You communicated with FDC concerning the settlement agreement entered in the matter of *Disability Rights Florida, Inc. v. FDC*, Case No. 2019-CA-2825,

in the Second Judicial Circuit in and for Leon County, Florida (the "DRF settlement").

13. You were aware of the terms and conditions of the DRF settlement during the time period of the events at issue in this lawsuit that occurred after the effective date of the DRF settlement.

14. You are obligated to comply with the terms and conditions of the DRF settlement while providing care and medical treatment to FDC prisoners.

15. You changed your policies, practices, and procedures for ADA inmates after the effective date of the DRF settlement.

16. You did not change your policies, practices, and procedures for ADA inmates after the effective date of the DRF settlement.

17. One of the changes to FDC policy required by the DRF settlement was increased services for mobility-impaired inmates.

18. Plaintiff is a mobility-impaired inmate.

19. Plaintiff is a "Covered Inmate" as that term is defined in Section II, Paragraph 12 of the DRF settlement.

20. Pursuant to the DRF settlement, FDC agreed to provide permanent passes to inmates classified as PD2, PD3, ED3, ED4, HD3, HD4, and HD5.

21. At all times material to this lawsuit, Plaintiff was classified as PD3.

22. PD3 inmates are defined by Health Services Bulletin 15.03.13 (Effective February 2, 2018) as those with a permanent disability requiring assignment of a permanent wheelchair or other adaptive device.

23

23.     Plaintiff was not referred to the Chief Health Officer or Institutional Medical Director for assessment to determine the need for an Inmate Assistant.

24.     You violated the DRF settlement agreement by not referring Plaintiff to the Chief Health Officer or Institutional Medical Director for the assessment described in Request No. 23 immediately above.

25.     You violated Procedure Number 403.011 (Effective May 6, 2020) by not referring Plaintiff to the persons identified in Request No. 23 immediately above.

26.     Plaintiff was not assessed for an Inmate Assistant on a recorded DC4-706, Health Services Profile form.

27.     Plaintiff was not referred to an institutional ADA coordinator for assessment of his need for appropriate ADA accommodations.

28.     Plaintiff was not evaluated by your ADA liaison for assessment or determination of his mobility needs.

29.     Plaintiff was not evaluated by your ADA liaison for assessment or determination of his need for an Inmate Assistant.

30.     Plaintiff was not evaluated by your ADA liaison for assessment or determination regarding replacement mobility boots.

31.     You violated Number 403.011 (Effective May 6, 2020) by not referring Plaintiff to the persons identified in Request No. 27 immediately above.

32.     You violated Number 403.011 (Effective May 6, 2020) by not referring Plaintiff to your ADA liaison for an assessment or determination of his mobility needs.

24

33.     You violated Number 403.011 (Effective May 6, 2020) by not referring Plaintiff to your ADA liaison for an assessment or determination of his need for an Inmate Assistant.

34.     You violated Number 403.011 (Effective May 6, 2020) by not referring Plaintiff to your ADA liaison for an assessment or determination of his need for replacement mobility boots.

35.     Defendant Alexis Figueroa violated your Policy regarding the provision of pull-up diapers to Plaintiff.

36.     Defendant Alexis Figueroa did not violate your Policy regarding the provision of pull-up diapers to Plaintiff.

37.     Defendant Alexis Figueroa violated your Policy regarding the frequency of diapers provided to Plaintiff.

38.     Defendant Alexis Figueroa did not violate your Policy regarding the frequency of diapers provided to Plaintiff.

39.     Defendant Alexis Figueroa violated your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

40.     Defendant Alexis Figueroa did not violate your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

41.     Defendant Alexis Figueroa violated your Policy regarding the treatment of cellulitis by not ensuring that Plaintiff was provided sufficient incontinence supplies.

42.     Defendant Alexis Figueroa did not violate your Policy regarding the provision of incontinence supplies to Plaintiff for treatment of his cellulitis.

43.     Defendant Alexis Figueroa violated your Policy when he discarded Plaintiff's incontinence supplies upon transfer to the Facility.

44.     Defendant Alexis Figueroa did not violate your Policy when he discarded Plaintiff's incontinence supplies upon transfer to the Facility.

45.     Defendant Alexis Figueroa violated your Policy when he limited Plaintiff to one diaper per day in October 2020.

46.     Defendant Alexis Figueroa did not violate your Policy when he limited Plaintiff to one diaper per day in October 2020.

47.     Defendant Alexis Figueroa violated your Policy when he did not renew Plaintiff's bathroom and shower passes in November 2020.

48.     Defendant Alexis Figueroa did not violate your Policy when he did not renew Plaintiff's bathroom and shower passes in November 2020.

49.     Defendant Elizabeth Holmes violated your Policy regarding the provision of pull-up diapers to Plaintiff.

50.     Defendant Elizabeth Holmes did not violate your Policy regarding the provision of pull-up diapers to Plaintiff.

51.     Defendant Elizabeth Holmes violated your Policy regarding the frequency of diapers provided to Plaintiff.

52.     Defendant Elizabeth Holmes did not violate your Policy regarding the frequency of diapers provided to Plaintiff.

53.     Defendant Elizabeth Holmes violated your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

54.     Defendant Elizabeth Holmes did not violate your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

55.     Defendant Elizabeth Holmes violated your Policy regarding the treatment of cellulitis by not ensuring that Plaintiff was provided sufficient incontinence supplies.

56.     Defendant Elizabeth Holmes did not violate your Policy regarding the provision of incontinence supplies to Plaintiff for treatment of his cellulitis.

57.     Defendant Elizabeth Holmes violated your Policy when she discarded Plaintiff's incontinence supplies upon transfer to the Facility.

58.     Defendant Elizabeth Holmes did not violate your Policy when she discarded Plaintiff's incontinence supplies upon transfer to the Facility.

59.     Defendant Elizabeth Holmes violated your Policy when she limited Plaintiff to one diaper per day in October 2020.

60.     Defendant Elizabeth Holmes did not violate your Policy when she limited Plaintiff to one diaper per day in October 2020.

61.     Defendant Elizabeth Holmes violated your Policy when she did not renew Plaintiff's bathroom and shower passes in November 2020.

62.     Defendant Elizabeth Holmes did not violate your Policy when she did not renew Plaintiff's bathroom and shower passes in November 2020.

63.     Defendant Brittney Cannon did not violate your Policy regarding the provision of pull-up diapers to Plaintiff.

64.     Defendant Brittney Cannon violated your Policy regarding the frequency of diapers provided to Plaintiff.

65.     Defendant Brittney Cannon did not violate your Policy regarding the frequency of diapers provided to Plaintiff.

66.     Defendant Brittney Cannon violated your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

67.     Defendant Brittney Cannon did not violate your Policy regarding ADA inmate mobility requirements by not assigning any aides to help Plaintiff in his wheelchair.

68.     Defendant Brittney Cannon violated your Policy regarding the treatment of cellulitis by not ensuring that Plaintiff was provided sufficient incontinence supplies.

69.     Defendant Brittney Cannon did not violate your Policy regarding the provision of incontinence supplies to Plaintiff for treatment of his cellulitis.

70.     Defendant Brittney Cannon violated your Policy when she discarded Plaintiff's incontinence supplies upon transfer to the Facility.

71.     Defendant Brittney Cannon did not violate your Policy when she discarded Plaintiff's incontinence supplies upon transfer to the Facility.

72.     Defendant Brittney Cannon violated your Policy when she limited Plaintiff to one diaper per day in October 2020.

73.     Defendant Brittney Cannon did not violate your Policy when she limited Plaintiff to one diaper per day in October 2020.

74.     Defendant Brittney Cannon violated your Policy when she did not renew Plaintiff's bathroom and shower passes in November 2020.

75.     Defendant Brittney Cannon did not violate your Policy when she did not renew Plaintiff's bathroom and shower passes in November 2020.

76.     You have a Policy regarding management and submission of sick calls.

77.     Defendant Brittney Cannon violated your Policy on sick calls by misplacing Plaintiff's sick calls.

78.     Defendant Brittney Cannon did not violate your Policy on sick calls by misplacing Plaintiff's sick calls.

79.     Defendant Alexis Figueroa violated your Policy on sick calls by misplacing Plaintiff's sick calls.

80.     Defendant Alexis Figueroa did not violate your Policy on sick calls by misplacing Plaintiff's sick calls.

81.     Defendant Elizabeth Holmes violated your Policy on sick calls by misplacing Plaintiff's sick calls.

82.     Defendant Elizabeth Holmes did not violate your Policy on sick calls by misplacing Plaintiff's sick calls.

83.     You knew that Plaintiff had obtained injunctive relief in the FLND action requiring FDC to provide Plaintiff with a certain number of adult diapers per day.

84.     You knew that the Medical Defendants at the Facility provided Plaintiff with fewer diapers than the number set forth in the preliminary injunction in the FLND action.

85.     You do not have any written Policies concerning compliance with court-ordered treatment of prisoners.

86.     Upon his arrival at Facility or shortly thereafter, you knew that Plaintiff relied on a wheelchair for mobility.

87.     You were informed that Plaintiff was an "ADA inmate" when he was transferred to the Facility and put in your care.

88.     You have a Policy prohibiting the provision of adult or pull-up diapers at the Facility.

89.     Pull-up diapers were allowed at the Facility in 2020.

90.     Pull-up diapers were allowed at the Facility in 2021.

91.     Pull-up diapers were allowed at the Facility in 2022.

92.     There is no FDC policy prohibiting pull-up diapers in FDC facilities or the Facility.

93.    You provided at least one other prisoner with pull-up diapers in 2020.

94.    You provided at least one other prisoner with pull-up diapers in 2021.

95.    You provided at least one other prisoner with pull-up diapers in 2022.

96.    In 2020, Plaintiff had visible red sores on his legs.

97.    In 2021, Plaintiff had visible red sores on his legs.

98.    In 2022, Plaintiff had visible red sores on his legs.

99.    You were aware of Plaintiff's sores in 2020.

100.    You were aware of Plaintiff's sores in 2021.

101.    You were aware of Plaintiff's sores in 2022.

102.    You knew that Plaintiff had a history of cellulitis when he was transferred to the Facility.

103.    Cellulitis is a serious medical condition.

104.    Cellulitis requires medical attention and treatment.

105.    Cellulitis can cause skin breaks that lead to infection.

106.    Infections from cellulitis can be fatal.

107.    Antibiotics may be required to treat cellulitis.

108.    In certain cases, intravenous antibiotics may be required.

109.    Defendant Alexis Figueroa violated your Policy when he delayed the provision of antibiotic treatment to Plaintiff in November 2021.

110.    Defendant Alexis Figueroa did not violate your Policy when he delayed the provision of antibiotic treatment to Plaintiff in November 2021.

111.    You did not perform any skin checks on Plaintiff in 2020.

112.   You did not perform any skin checks on Plaintiff in 2021.

113.   You did not perform any skin checks on Plaintiff in 2022.

114.   You have a Policy requiring your employees use the "Braden Scale" to rate the skin integrity of inmates with cellulitis.

115.   When a prisoner is rated at an 18 or below on the Braden Scale, your clinicians are required to perform a skin check per your Policy.

116.   Your staff rated other inmates at the Facility besides Plaintiff on the Braden Scale in 2020.

117.   Your staff rated other inmates at the Facility besides Plaintiff on the Braden Scale in 2021.

118.   Your staff rated other inmates at the Facility besides Plaintiff on the Braden Scale in 2022.

119.   At least one other inmate at the Facility was rated at or below 18 on the Braden Scale in 2020 by your staff.

120.   At least one other inmate at the Facility was rated at or below 18 on the Braden Scale in 2021 by your staff.

121.   At least one other inmate at the Facility was rated at or below 18 on the Braden Scale in 2022 by your staff.

122.   Your staff performed a skin check on at least one prisoner at the Facility in 2020.

123.   Your staff performed a skin check on at least one prisoner at the Facility in 2021.

124.   Your staff performed a skin check on at least one prisoner at the Facility in 2022.

125.   In 2021, Centurion reduced the size of antiseptic soap provided to inmates.

126.   Centurion reduced the size from 8-ounce bottles to 4-ounce bottles.

127.   Centurion reduced the size of antiseptic soap as a cost-saving measure.

128.   At the time of the matter sued upon, Plaintiff suffered from a disabling physical condition that required accommodations.

129.   At the time of the matter sued upon, you were acting under color of law.

130.   Plaintiff exhausted his administrative remedies.