UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| DONNY PHILLIPS,<br><br>      Plaintiff,<br><br>v.<br><br>RICKY DIXON, *et al.*,<br><br>      Defendants. | Case No. 3:22-cv-997-BJD-LLL |

**PLAINTIFF'S <u>FIRST</u> SET OF DISCOVERY REQUESTS
DIRECTED TO THE MEDICAL DEFENDANTS**

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff Donny Phillips hereby requests that Defendants Alexis Figueroa, Brittney Cannon, and Connie Lynn Adams (the "Medical Defendants") each within thirty days (1) provide written responses to the following Requests for Production and Admissions, (2) produce for inspection and copying the documents and things identified in the Requests for Production, and (3) answer the following Interrogatories, separately and fully under oath or affirmation. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests and Interrogatories are continuing in nature and may require supplementation.

Dated: December 6, 2022

Respectfully submitted,

SLATER LEGAL PLLC

By: */s/ James M. Slater*
      James M. Slater (FBN 111779)
      113 S. Monroe Street
      Tallahassee, Florida 32301
      james@slater.legal
      Tel.: (305) 523-9023
      *Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on December 6, 2022, I electronically served the foregoing document to counsel for the Medical Defendants via electronic mail.

By: */s/ James M. Slater*
      James M. Slater

## DEFINITIONS AND INSTRUCTIONS

### General Definitions

1.    The term "person" means any individual, natural person, witness, partnership, association, firm, corporation, organization, trust, governmental or public entity, and/or any of its agents, employees, assigns or representatives.

2.    The term "identify" when referring to a natural person or entity shall mean to provide the name, last known address, present or last known place of employment, and telephone number of the person or entity described in the specific request.

3.    The term "identify" when referring to a document shall mean to provide the type of document; name or title of the document; the date; the author(s), transmitter(s), addressee(s), and recipient(s); a description of the subject matter; and the location and custodian of the document.

4.    "Plaintiff" means Plaintiff Donny Phillips.

5.    "Defendant," "you" or "your" means the defendant responding to these Requests and/or his or her employees, agents, servants, representatives, and all other persons acting on his or her behalf.

6.    "Centurion" means Defendant Centurion of Florida, LLC and its employees, agents, servants, representatives, parents, subsidiaries, affiliates, and all other persons acting on its behalf.

7.     "MHM" means Defendant MHM Health Professionals, LLC and its employees, agents, servants, representatives, parents, subsidiaries, affiliates, and all other persons acting on its behalf.

8.     The "Complaint" shall refer to the current operative pleading in this action.

9.     The "Facility" shall refer to Suwannee Correctional Institute, including its annex.

10.     "FDC" shall refer to the Florida Department of Corrections.

11.     The terms "concerning," "relating to," or "relate to" shall mean to make a statement about, discuss, describe, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate, or in any way pertain (in whole or in part) to the subject.

12.     The words "and" as well as "or" shall be construed both disjunctively and conjunctively; the word "all" means "any and all"; the word "any" means "any and all"; the word "each" means "each and every"; the word "every" means "each and every.

13.     The singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each gender.

14.     The term "document" is defined to include, but is not limited to, any papers, writings, drafts, notes, letters, diaries, agreements, contracts, calendars, memoranda, reports, drawings, plans, blueprints, notation books, financial records, computer or other business machine records, communications sent via any electronic

means, including but not limited to internet, extranet and intranet, and any attachments to such electronic communications and any other data, compilations or written or graphic material stored in a tangible, electronic, mechanical or electric form, or any representation of any kind, including, but not limited to, materials stored on or in computer disks, networks, mainframes, hard drives, CD-ROM, tapes or other forms of memory, as well as back-up and deleted files of any computer, computer storage device or media, whether located on or off site, from which the information can be obtained, as well as any draft, nonidentical copy, and/or translation of the foregoing. A draft or non-identical copy is a separate document within the meaning of the term.

15.     The term "communication device" means any device customarily used to facilitate oral and/or written communication, including, without limitation, telephones, kiosks, tablets, computers, writing instruments, logbooks, or stationery supplies.

16.     The term "incontinence supplies" means diapers, pull-ups, underpads, wipes, protective skin creams, such as zinc-based or A&D ointments, cleansing foams and sprays, and other supplies used to absorb liquid or excrement, prevent leaks, and prevent skin irritation.

17.     "Including" shall mean including but not limited to.

## Instructions for Requests for Production and Admissions

1.      You shall identify and produce all documents that can be located or discovered through diligent effort by you, your employees, representatives, agents, attorneys, consultants or accountants.  This instruction applies to all documents that are in the business or personal files of, or accessible to you or your employees, or in the possession of, or accessible to your representatives, agents, attorneys, consultants or accountants. Each document shall be produced in the form in which it is maintained in the normal course of your activities.

2.      If you object to the production of any document covered by any of these Requests, in the response to the specific request that encompasses the document, state the objection, the basis for the objection and whether or not the document is being withheld because of the objection.  For each document being withheld for any reason, including a claim of privilege, state the following in the response to the request encompassing the document:

  a.      the reason or reasons you are withholding the document, including any specific privilege you claim protects the document;

  b.      the facts supporting the privilege or other reason or reasons for withholding the document;

  c.      the date when the document was prepared or originated;

  d.      the name(s) or the person(s) who wrote or prepared the document, along with information regarding their relationship

to the person(s);

e.    the names of each person to whom the document was addressed
      or copied, as well as the names of each person who may have
      seen the document, along with information regarding your
      relationship to each person;

f.    the subject matter of the document; and

g.    the name and address of each person who has personal
      knowledge of the subject matter of the document.

3.    If you object or otherwise refuse to respond or produce documents in
response to any portion of a document request, you shall provide all documents and
information called for by that portion of the request for production that you do not
object to and/or to which you do not refuse to respond as follows:

a.    If you object to a document request on the ground that it is too
      broad (i.e. if you believe it calls for information outside the
      scope of permissible discovery as defined by Rules 26 and 34 of
      the Federal Rules of Civil Procedure), you shall produce
      documents and things in response to that Request by producing
      all documents and things that are within the permissible scope
      of discovery and identify all categories of documents being
      withheld;

b.    If you object to a document request on the ground that to
      produce documents and things would constitute an undue

burden, then you shall produce as many of the requested documents and things as can be provided without undertaking an undue burden;

c.   If you object to any portion of a document request on the ground that it is vague or indefinite, then you shall set forth your understanding of the allegedly vague or indefinite term and shall then produce documents and things based upon that stated understanding.

4.   Please produce documents responsive to individual Requests as soon as possible and without waiting to produce documents responsive to other Requests whenever possible.

5.   Unless another time period is specified, this request for production is addressed to the time period from January 1, 2020 to the present, inclusive of records that were effective during that time period even if they were generated before it.

6.   These Requests are continuing in nature, and must be supplemented to the extent that, subsequent to responding to these Requests, you obtain additional information that renders any of your initial responses inaccurate or incomplete.

## Instructions for Interrogatories

1.   In answering these interrogatories, you are required to provide all information that is available to you or within your control, including information in

the possession of your attorneys, investigators, employees, or other agents.

2.      Where terms are defined, interrogatories containing those defined terms cannot be properly answered unless the definitions are followed.

3.      If you object to any part of an interrogatory and refuse to answer that part, state you objection and answer the remaining portion of that interrogatory. If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and answer the interrogatory for the scope or time period you believe is appropriate. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your ability to answer the remainder and stating the information you have concerning the unanswered portions. If your answer is qualified in any particular manner, set forth the details of that qualification.

5.      When an interrogatory requests documents, data, knowledge, or information in your possession, that interrogatory includes the knowledge of your attorneys, accountants, agents, representatives and experts, and any professional employed or retained by you relating to any of the facts or issues involved in this proceeding.

6.      If you contend that a response to an interrogatory calls for the disclosure of privileged information, in whole or in part, or if you otherwise object to any part of any interrogatory, you are required to provide a complete response to the portion of the interrogatory that is not privileged or objectionable. With respect

to the remainder of the interrogatory, state the following:

  a. the reason for such objection or ground for exclusion;

  b. the identity of each person having knowledge of the factual basis and the identity of individual documents, if any, on which the privilege or other ground is asserted;

  c. the nature of the claim or privilege; and

  d. the brief description of the item, document, or thing in a manner so as not to waive the privilege.

  7. If the response to all or part of any interrogatory is that you lack knowledge of the requested information, set forth the remaining information that is known to you and describe all efforts made by you or your attorneys, accountants, agents, experts, representatives or any professional employed or retained by you to obtain the information necessary to respond to the interrogatory. If any estimate or approximation can reasonably be made in place of the unknown information, also set forth your best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

  8. You are cautioned against providing boilerplate objections without providing a detailed basis for the objection. Such objections are improper under Rule 33(b)(4).

## DOCUMENT REQUESTS

1.      All communications in your possession, custody, or control relating to the matter sued upon between you and any witness listed in your Rule 26(a)(1)(A)(i) disclosures.

2.      All records, including electronically stored information, in your possession, custody, or control, that you may use to dispute Plaintiff's claims or support your defenses.

3.      All records listed in your Rule 26(a)(1)(A)(ii) disclosures.

4.      All public records requests made by you or on your behalf relating to Plaintiff or the facts in the Complaint, and all responses made by the person or entity from whom the records were requested.

5.      All records relating to the facts in the Complaint that have been otherwise provided to you whether based on public records requests or not.

6.      A copy of your application to Centurion and/or MHM and your periodic evaluations.

7.      Your application for any promotions and all Centurion and/or MHM responses to the applications.

8.      All records relating to corrective actions against you during your career at Centurion and/or MHM, any appeals of corrective action, and final disposition.

9.      All records supporting any affirmative defense raised by you.

10.     All records, exhibits, graphs, displays, charts, computer printouts, recordings and photographs which you may use at any stage of this proceeding (noting the continuing duty to produce).

11.     A copy of your degrees or certifications including any FDC, Centurion, or MHM certification and any resume or curriculum vitae you have produced.

12.     All documents, including without limitation any models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, communications, notes, letters, text messages, direct messages, SMS messages, internet or social media posts, and e-mails, not privileged, relating to any of the facts identified in the Complaint.

13.     All records, including models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, and communications, including e-mails, relating to a fact or issue in this controversy.

14.     All communications with the other defendants in this case relating to the matter sued upon or facts identified in the Complaint, including texts and e-mails.

15.     All communications with the other defendants in this case related to Plaintiff that were made, whether orally or in writing, from 1/1/2020 through present, including texts and e-mails.

12

16.    All communications with any person expressing dislike of or negative opinions or attitudes regarding Plaintiff.

17.    All records of disciplinary and corrective actions against you related to the matter sued upon or facts identified in the Complaint.

18.    All photographs or video or audio recordings relating to the matter sued upon or any other facts identified in the Complaint, including clips downloaded to cell phones or other devices.

19.    Any records relied on by you relating to FDC policies and/or training, including related to Americans with Disabilities Act of 1990 (ADA) compliance, disability accommodation, and inmate medical care.

20.    Any records relied on by you relating to Centurion policies and/or training, including related to Americans with Disabilities Act of 1990 (ADA) compliance, disability accommodation, and inmate medical care.

21.    Any records relied on by you relating to MHM policies and/or training, including related to Americans with Disabilities Act of 1990 (ADA) compliance, disability accommodation, and inmate medical care.

22.    All records relating to purchases and inventories of (a) adult diapers; (b) barrier creams; (c) antiseptic soap; (d) medical wipes, at Suwannee C.I. for 2020 through 2022.

23.    All records or documents supporting any responses to Plaintiff's Requests for Admissions directed to you where the statement is not unequivocally admitted.

24.    All records or documents not privileged that you created as a result of any events alleged or identified in the Complaint, including but not limited to, letters, memos, logs, forms, reports, and transcripts.

25.    All search queries you made in internet searches, UP TO DATE, or other software, concerning cellulitis, including documents sufficient to show the date and time of such search or query and the documents generated by the search or query.

26.    All search queries you made in internet searches, UP TO DATE, or other software, concerning bladder and/or bowel incontinence, including documents sufficient to show the date and time of such search or query and the documents generated by the search or query.

27.    Any and all reports you made concerning Plaintiff's infection(s), including all infectious disease outbreak reports and worksheets.

28.    All nonprivileged communications with any person not employed or formerly employed or contracted at the Facility concerning Plaintiff.

29.    All social media posts posted by yourself (on your own social media or someone else's) for all social media in which you have been involved, including Twitter, Facebook, Truth Social, Reddit, Parler, Gab, YouTube, Telegram, Gettr, Instagram, Rumble, etc., in which you have expressed opinions or attitudes relating prisons, prisoners, the Facility, FDC, and your profession.

30.    All social media posts posted by yourself (on your own social media or someone else's) related to any events alleged or identified in the Complaint.

14

31.     A privilege log that includes (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

/

/

/

## INTERROGATORIES

**Interrogatory No. 1**

Please state the name and title of each person who participated in responding to these Interrogatories and the Interrogatory number(s) they participated in responding to.

**Interrogatory No. 2**

Please describe in detail your understanding of the policies and procedures of FDC, Centurion and/or MHM that you are required to follow in the treatment of disabled inmates who are incontinent of bladder and bowel, including ensuring access to adequate incontinence supplies.

**Interrogatory No. 3**

Please provide a brief summary of your education starting with high school (or GED), including the name of every educational institution, the city and state of the same, the beginning and ending month and year of attendance, and identify the course of study and any degrees awarded.

**Interrogatory No. 4**

Please provide a brief summary of your work experience since high school (or GED), providing the name of each employer, the city and state of employment, your start and end dates (month and year), all job assignments, including secondary duties, ranks achieved, and a brief description of the tasks associated with each job.

**Interrogatory No. 5**

Please identify all corrective actions against you, including counseling, by any law enforcement employer, including the date of the corrective action, the date of the incident on which it was based, the reason for the corrective action, the type of corrective action given, and whether you appealed the corrective action taken against you and the outcome of any such appeal.

**Interrogatory No. 6**

Identify all prior investigations, arrests, detentions, criminal charges (including final disposition), of yourself made by any law enforcement officer or agency before the date of the incident that is the subject of plaintiff's complaint. Include the following:

     a. The dates of each arrest.
     b. The arresting agency and officer.
     c. The offense(s) charged.
     d. The final disposition of the charge(s).
     e. Any other result of the arrest or detention.

**Interrogatory No. 7**

Have you have ever been a defendant in any other civil rights lawsuit and, if so, please identify the case by name, court, trial docket number, describe in detail the allegations against you and state the outcome of the case, including the terms of any settlement.

**Interrogatory No. 8**

Please identify your username or account name for all social media accounts, including without limitation, Twitter, Facebook, Truth Social, Reddit, Parler, Gab, YouTube, Telegram, Gettr, Instagram, and Rumble.

**Interrogatory No. 9**

Please identify all conversations or communications you had, whether oral or in writing, by type, time, and person involved, concerning or related to the events alleged or identified in the Complaint.

**Interrogatory No. 10**

Please identify all conversations or communications you had, whether oral or in writing, by type, time, and person involved, concerning or related to Plaintiff's medical care, including his access to incontinence supplies, and to the extent that the communications exist in documentary form (including e-mails), identify the custodians of those records.

**Interrogatory No. 11**

Please describe the process for determining the medical needs, including access to incontinence supplies, of inmates who are transferred to or otherwise received at the Facility.

**Interrogatory No. 12**

Please explain best practices for ensuring the health and safety of inmates who are incontinent of bladder and bowel and describe any training that you received to inform your understanding of these best practices.

**Interrogatory No. 13**

Please describe the process and/or procedure for determining the amount and type (i.e. briefs, pull-ups, wipes, ointments, etc.) of incontinence supplies an inmate who is incontinent of bladder and bowel receives at the Facility, including the title and/or general description of any written policies.

**Interrogatory No. 14**

Please describe the process and/or procedure for recording an inmate's stated need for additional necessary medical care, including for additional incontinence supplies, and describe the process and/or procedure to ensure the additional necessary medical care, including additional incontinence supplies, is provided.

**Interrogatory No. 15**

Please describe the process and/or procedure for conducting and completing health evaluations of inmates, including the process and/or procedure for assigning the inmate a Braden Scale score.

**Interrogatory No. 16**

Please state whether you have conducted and/or completed a health evaluation of Plaintiff, including whether you have assigned him a Braden Scale score, and state the process you followed in conducting and/or completing each such evaluation.

**Interrogatory No. 17**

Please identify any policy applicable to the Facility which concerns the type(s) of incontinence supplies that may be issued to inmates.

**Interrogatory No. 18**

Please identify and describe in detail the policies and procedures for providing accommodations to prisoners with disabilities under the ADA/RA, including the assignment of persons as ADA liaisons and coordinators, the procedures for meeting and designing ADA service plans, the frequency of such meetings and the persons invited to participate, the qualifications of prisoners as "ADA inmates," the role of the ADA inmate in designing and critiquing his ADA plan, and the final decision in drafting the ADA plans.

**Interrogatory No. 19**

Please identify all software or systems you used to monitor Plaintiff's health condition, his incontinence supplies, and query or search issues relating to his health.

## REQUESTS FOR ADMISSIONS

1.      No claim in the operative complaint is barred by a statute of limitations.

2.      Plaintiff is a qualified person with a disability under the ADA.

3.      You had a duty to provide medical care to Plaintiff.

4.      Centurion has a duty to provide medical care to prisoners at the Facility.

5.      You have a duty to provide ADA accommodations to Plaintiff.

6.      You were employed by MHM during the events at issue in the lawsuit.

7.      MHM is owned by Centurion.

8.      Centurion has a contract with FDC to provide medical care at the Facility.

9.      Medical care for incontinent prisoners includes ensuring those prisoners have enough incontinence supplies.

10.      During your care for Plaintiff, you knew that he had previously sued medical staff employed by MHM and/or Centurion regarding their alleged failure to provide adequate medical care.

11.      Plaintiff told you that a court had previously ordered FDC to provide him with a certain number of diapers.

12.      You did not inquire to ensure that there was no court order mandating the number of diapers Plaintiff needed.

13.      You do not have any training on how to comply with court orders requiring the provision of medical care to prisoners.

21

14.    It is Centurion's practice and policy to exercise its own discretion in whether to honor federal court orders regarding medical supplies or medication for prisoners.

15.    It is MHM's practice and policy to exercise its own discretion on whether to honor federal court orders regarding medical supplies or medication for prisoners.

16.    At the time of the matters sued upon, you were required by your work assignment to provide inmates with medical care, including incontinence supplies when needed.

17.    On October 15, 2020, Plaintiff was transferred to the Facility.

18.    Upon his arrival at Facility or shortly thereafter, you knew that Plaintiff was incontinent of bladder and bowel.

19.    Upon his arrival at Facility or shortly thereafter, you knew that Plaintiff relied on a wheelchair for mobility.

20.    You were informed that Plaintiff was an "ADA inmate" when he was transferred to the Facility and put in your care.

21.    When Plaintiff arrived at the Facility, his medications and incontinence supplies were confiscated.

22.    Following his arrival at the Facility, Plaintiff was not provided enough incontinence supplies to avoid soiling his clothing with urine and feces.

23.    At or around his transfer to the Facility, you knew that Plaintiff had not been issued enough incontinence supplies to avoid soiling himself.

24.     At or around his transfer to the Facility, you knew that Plaintiff needed 3-5 pull-up diapers a day.

25.     At or around his transfer to the Facility, you knew that Plaintiff was only receiving one pull-up diaper per day.

26.     You told Plaintiff he could not receive pull-up diapers.

27.     You told Plaintiff that pull-up diapers were not permitted at the Facility.

28.     Centurion's policy was not to permit pull-up diapers at the Facility.

29.     You were following Centurion's policy or practice when you told Plaintiff that pull-up diapers were not permitted at the Facility.

30.     Pull-up diapers were allowed at the Facility in 2020.

31.     Pull-up diapers were allowed at the Facility in 2021.

32.     Pull-up diapers were allowed at the Facility in 2022.

33.     There is no FDC policy prohibiting pull-up diapers in FDC facilities or the Facility.

34.     You provided at least one other prisoner with pull-up diapers in 2020.

35.     You provided at least one other prisoner with pull-up diapers in 2021.

36.     You provided at least one other prisoner with pull-up diapers in 2022.

37.     Plaintiff cannot put on diapers that are not pull-up diapers.

38.     You knew that Plaintiff could not put on regular diapers when you told him that pull-up diapers were prohibited at the Facility.

39.     Despite knowing that Plaintiff could not put on regular diapers without assistance, you continued to provide him with regular diapers.

40.     On one or more occasions, Plaintiff expressed to you that he required more incontinence supplies than he was receiving.

41.     Plaintiff told you in 2020 that he urinated his clothing because he did not have enough incontinence supplies.

42.     You told Plaintiff that he would only be permitted one diaper at a time.

43.     You knew that Plaintiff needed more than one diaper per day.

44.     You denied Plaintiff additional diapers.

45.     On one or more occasion, you denied Plaintiff any diapers.

46.     One or more occasion you allowed Plaintiff's bathroom and shower passes to lapse.

47.     On or more occasion you denied Plaintiff's request for bathroom and/or shower passes.

48.     You have on one or more occasion denied Plaintiff's request for a medical pass.

49.     In 2020, Plaintiff had visible red sores on his legs.

50.     In 2021, Plaintiff had visible red sores on his legs.

51.     In 2022, Plaintiff had visible red sores on his legs.

52.     Plaintiff told you in 2020 that he had sores on his legs.

53.     You refused to inspect Plaintiff's sores on one or more occasion despite Plaintiff asking you to look at them.

54.     You knew that Plaintiff had a history of cellulitis when he was transferred to the Facility.

55.     Cellulitis is a serious medical condition.

56.     Cellulitis requires medical attention and treatment.

57.     Cellulitis can cause skin breaks that lead to infection.

58.     Infections from cellulitis can be fatal.

59.     Antibiotics may be required to treat cellulitis.

60.     In certain cases, intravenous antibiotics may be required to treat cellulitis.

61.     When you saw the sores on Plaintiff's legs, you diagnosed them as Cellulitis.

62.     Plaintiff's right leg became swollen in or around November 2021.

63.     Plaintiff was prescribed antibiotics when his leg became swollen.

64.     Plaintiff was also prescribed ointments for his swollen leg in November 2021.

65.     Plaintiff did not receive ointments prescribed in November 2021.

66.     You knew that Plaintiff needed ointment for his swollen leg in November 2021.

67.     You did not give Plaintiff any ointment for his swollen leg.

68.     You did not perform any skin checks on Plaintiff in 2020.

69.     You did not perform any skin checks on Plaintiff in 2021.

70.     You did not perform any skin checks on Plaintiff in 2022.

71.    You used the "Braden Scale" to rate Plaintiff's skin integrity when you examined his legs.

72.    You never rated Plaintiff at an 18 or below on the Braden Scale.

73.    When a prisoner is rated at an 18 or below on the Braden Scale, a clinician is required to perform a skin check per Centurion policy or practice.

74.    You examined Plaintiff's legs in accordance with Centurion's practices and policies.

75.    You have rated prisoners at or below 18 on the Braden Scale in other instances.

76.    You performed a skin check on at least one prisoner in 2020.

77.    You performed a skin check on at least one prisoner in 2021.

78.    You performed a skin check on at least one prisoner in 2022.

79.    You were aware that Plaintiff grieved your conduct.

80.    Plaintiff needed ointment and barrier creams for his skin sores.

81.    Plaintiff needed antiseptic soap for his wounds.

82.    Plaintiff initially received 8-ounce bottles of antiseptic soap.

83.    Plaintiff later received 4-ounce bottles of antiseptic soap.

84.    Centurion reduced the size of the antiseptic soap in 2021.

85.    Centurion reduced the size of other sanitation supplies in 2021.

86.    After the reduction in the size of his supplies, Plaintiff complained that he was running out of supplies before he received new ones.

87.    At the time of the matter sued upon, Plaintiff did not receive adequate medical care and access to incontinence supplies sufficient to meet his needs.

88.    At the time of the matter sued upon, Plaintiff suffered from a serious medical condition and was incontinent of bladder and bowel.

89.    At the time of the matter sued upon, Plaintiff suffered medical complications related to inadequate access to incontinence supplies, including cellulitis, sores, and skin breakdown.

90.    At the time of the matter sued upon, Plaintiff suffered from a disabling physical condition that required accommodations.

91.    At the time of the matter sued upon, you were acting under color of law.

92.    Plaintiff exhausted his administrative remedies.