UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

      Plaintiff,

v.                              Case No. 3:22-cv-997-BJD-LLL

RICKY DIXON, in his Official Capacity as
Secretary of the Florida Department of
Corrections, CENTURION OF FLORIDA,
LLC, MHM HEALTH PROFESSIONALS,
LLC, ALEXIS FIGUEROA, M.D.,
ELIZABETH HOLMES, BRITTNEY
CANNON, CONNIE LYNN ADAMS, SGT.
SAVONIA RICHARDSON-GRAHAM, SGT.
DEBRA ALDRIDGE, and OFCR TERESSA
FILLMORE HAWTHORNE

      Defendants,
_____/

## DEFENDANT HAWTHORNE'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Defendant Teressa Fillmore Hawthorne, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment and states the following in support thereof:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff has been forced to reduce his amended complaint to a small collection of unsupported allegations against Defendant Dixon in his official capacity and three FDC employees at Suwannee Correctional Institution Annex. Specifically, Plaintiff

1

presents these allegations in his Amended Complaint [Doc. 25] in a muddled attempt to conflate and commingle his medical and ADA issues and lay as many of them as possible at the feet of two correctional officer sergeants and one correctional officer, in addition to the secretary of the Florida Department of Corrections. He has been forced to attempt this legal legerdemain because co-defendants Centurion, MHM, and the individual medical defendants filed motions to dismiss on January 31, 2022 [Docs. 51-54, 59], and Plaintiff responded by immediately filing a Notice of Voluntary Dismissal the next day on February 1, 2022 [Doc. 60], to include not only Centurion and HM but also each of the individual medical defendants.

Thus, the three FDC defendants remain with the FDC secretary under Plaintiff's flawed and generally hyperbolic theory of his case for Eighth Amendment violations of interference with medical treatment; conspiracy to violate the Eighth Amendment; and for abuse or neglect of a vulnerable adult.

Importantly, Plaintiff settled his previous lawsuit (Case No. 4:18-cv-139-AW-MJF in the Northern District of Florida Tallahassee Division), on February 16, 2022, more than 19 months after he transferred to Suwannee CI Annex. *Ex. 1, Settlement Agreement*. He filed this current suit on September 15, 2022, raising the precise issues—First Amendment retaliation, ADA violations, various Eighth Amendment violations, deliberate indifference, failure to treat, etc.—with the same classifications of characters—doctors, nurses, correctional officers, the department's

secretary for injunctive relief purposes—as he did in 2018, and as he plans to do again. *Ex. 2, Plaintiff's Deposition, 123:8 – 124:10*. Defendants discuss this litigation history in detail below.

## II.   STATEMENT OF FACTS

### A. Plaintiff's Extensive Litigation History

Plaintiff has spent considerable time in federal court since 2015, suing the Florida Department of Corrections ("FDC") and its employees and contractors repeatedly at every institution in which FDC placed him. *See Phillips v. Pittman*, No. 1:15-cv-110 (N.D. Fla.) ("2015 case"); *Phillips v. Jones, et al.*, No. 4:18-cv-139 (N.D. Fla) ("2018 case"), and now *Phillips v. Dixon, et al.,* No. 3:22-cv-997 (M.D. Fla.) ("2022 case").

In the 2015 case, Plaintiff alleged FDC security staff at Mayo Correctional Institution violated his First Amendment rights when they harassed, insulted, and punished him for filing inmate grievances and a lawsuit. [2015 case, Doc 30, ¶¶ 31-41]. He claimed those same officers violated his Eighth Amendment rights because they refused him timely access to toilet facilities and deprived him of an adequate supply of adult diapers and other medical supplies. *Id*. at ¶¶ 43-45, 53. However, the Court granted the FDC officers' motion to dismiss the Eighth Amendment claim with prejudice and granted the motion to dismiss the First Amendment claim without prejudice. [*Id*., Doc. 44 at 24]. However, the Court soon dismissed all counts with

prejudice in November 2017 as a result of the parties' joint stipulation to do so. [*Id.,* Doc. 54]. This cleared the way for Plaintiff's second lawsuit.

Plaintiff filed his next case in March 2018 while he was incarcerated at Northwest Florida Reception Center. The allegations against FDC did not change: First and Eighth Amendment violations, plus violations of his Americans with Disability Act and Rehabilitation Act rights. [2018 case, Doc. 311 (Third Am. Compl.) *Id.* at 29-30. The specific allegations reprised those of the 2015 case: inadequate diapers, wipes, soap, and ointments; security staff interfering with Plaintiff's hygiene supplies and teasing him about them, I*d.* at ¶ 242(a)-(i); retaliating against him for filing inmate grievances by preventing willing inmates from assisting him, and denying him an ADA-compliant cell. This suit was settled when Plaintiff received a monetary award of $25,000 from FDC and signed a settlement agreement and release of all claims on February 16, 2022. *Ex. 1,* Settlement Agreement. This settlement agreement is significant because this instant lawsuit is a direct breach of these settlement terms.

### B. 2018 Case Settlement Agreement Executed in 2022

In this Settlement Agreement, Plaintiff:

> forever releases, acquits, and discharges …  the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors of and from any and all claims, actions, causes of actions, demands, rights, damages … which [Plaintiff] **now has or which may hereafter accrue on account of or in any way growing out of the events and injuries that**

4

**were at issue in this action,** including any and all known and unknown, foreseen and unforeseen bodily and personal injuries.
*Id (emphasis added).*

In the instant suit, Defendants have held that Plaintiff's allegations arise from the moment he arrived at Suwannee Correctional Institution Annex on October 15, 2020, as Plaintiff readily acknowledges and admits this. [Doc. 25, ¶¶ 41-42]; *Ex. 2, Plaintiff's Deposition, 13:21-24.* However, the language of the settlement agreement states that any claim made before the date of the settlement agreement (February 16, 2022) to be null and void. It also bars claims made *after* the settlement agreement "growing out of the same events and injuries that were at issue in this action." *Ex. 1, Settlement Agreement.* In his effort to have his litigation both ways in clear violation of the Settlement Agreement, Plaintiff stated in this instant case that "the discrimination and violations followed Plaintiff [from Northwest Florida Reception Center] upon his transfer to Suwannee C.I., which form the basis for this new action." [Doc. 25, ¶ 41].

Finally, Plaintiff signed a settlement agreement and release of all claims with Centurion on February 9, 2022, accepting $20,000 in settlement. The language of this document is virtually identical in all relevant parts to the one Plaintiff signed with FDC. *Ex. 3, Centurion Settlement.* After Plaintiff filed suit in September 2022, the Centurion medical defendants filed their motions to dismiss on January 31, 2023. [Docs. 51-54, 59] Plaintiff filed a Notice of Voluntary Dismissal [Doc. 60] on

February 1, 2023. Clearly Centurion's arguments regarding breaching the terms of the settlement agreement by filing an identical suit gave Plaintiff significant pause. Despite that dismissal, Plaintiff continues forward with a fatally diminished collection of arguments to support the allegations with which the Defendants are all too familiar.

### C. Plaintiff's Incarceration at Suwannee C.I. Annex

Plaintiff paints his arrival at Swannee C.I. Annex on October 15, 2020, in dramatic though inaccurate terms: someone stole his "therapeutic boots" almost before he exited the transport van; another someone confiscated his hygiene supplies and later refused to replace them; and a group of officers summarily marched him off to confinement. [Doc. 25, ¶¶ 46, 52-53]. It is standard procedure to confiscate any and all medical supplies of any kind from inmates transferred to an until they are medically evaluated. It is also standard procedure to place newly transferred inmates in administrative confinement until a classification officer reviews his documents and assigns him to an appropriate dorm or cell based upon his status. Plaintiff has conflated and comingled Suwannee C.I. Annex medical staff and security staff together and claims they have concocted a conspiracy to deny him his medical supplies, prevent him from receiving necessary medical care, and refused to give him access to any reasonable accommodations, all in retaliation against him

because he complains about these acts, writes frequent inmate grievances, and files lawsuits.

Because of his February 1, 2023, voluntary dismissal, Plaintiff may no longer direct his allegations toward any "medical defendants" and any comments and allegations involving them should essentially be stricken as they are entirely irrelevant to the Corrections Defendants. Instead, Plaintiff is limited to Secretary Dixon, Sergeants Richardson and Aldridge, and Officer Hawthorne.

Plaintiff's single allegation against Defendant Hawthorne is that she would not allow him access to the showers before 5:00 p.m. When asked, Plaintiff could not recall when this alleged access denial occurred, or how often. *Ex. 2, Plaintiff's Deposition, 13:9-20*. Plaintiff even conceded that showering after 5:00 p.m. is a standard procedure. *Ex. 2, Plaintiff's Deposition, 33:5-13*. Moreover, he openly acknowledges that Hawthorne never impeded his ability to communicate with the medical staff during their rounds in confinement. *Ex. 2, Plaintiff's Deposition, 56:9-12*. Plaintiff also did not bother to depose Defendant Hawthorne.

## MEMORANDUM OF LAW

### III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no

probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

### A. Plaintiff is prohibited from bringing this lawsuit by the plain language of the 2018 Case's Settlement Agreement he entered into.

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement.") Thus, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. Accordingly, courts should "attempt to effectuate the parties' intent," which requires courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id.* at 1290. In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod v. Sch. Bd. of Palm Beach Cty.*, 550 F. App'x 809

(11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that in cases of dismissal pursuant to a settlement agreement *res judicata* determinations are governed by "traditional rules of contract interpretation"). As this Court knows, the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis.[1]

### 1.  The intentions of both parties are clear.

Defendants[2] made their intentions patently obvious in the Settlement Agreement by declaring they "intend merely to avoid litigation and buy their peace" with a payment of $25,000.00 to Plaintiff. *Ex. 1, Settlement Agreement*. In exchange, Plaintiff released Defendants from "any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation, whatsoever, including attorney's fees, **which the (Plaintiff) now has or which may hereafter accrue** on account of or in any way growing out of the events and injuries that were at issue in this action …" *Id*. (emphasis added). Based on the plain language of the Settlement Agreement, Plaintiff's intent was to secure a monetary

---

[1] "Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document …." *Norfolk*, 371 F.3d at 1290; *see also Sherrod*, 550 F. App'x at 812 ("Under Florida law, '[w]ords in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

[2] All Defendants in this lawsuit are covered by that Settlement Agreement as it released in pertinent part, "the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors…" *Ex. 1, Settlement Agreement*.

sum and FDC remitted $25,000.00 to Plaintiff via his counsel, James Cook, thereby satisfying FDC's obligations.

**2. The terms of the Settlement Agreement are complete.**

Plaintiff, who was represented by Mr. Cook when he signed the Settlement Agreement on February 16, 2022, not only agreed to releasing the Defendants from all existing claims and causes of action at the time of its execution, but he also agreed that the three-page document contained the entirety of the terms of the agreement between the parties. *Ex. 1, Settlement Agreement*. This is central to the issue at hand because there is not a single mention of any accommodations related to Plaintiff's disability and or condition including, but certainly not limited to, provisions of wipes or ointments/creams, the quantity or type of diapers Plaintiff will receive, bathroom and shower passes or therapeutic boots.

Certain allegations in the Amended Complaint that occurred at Suwannee C.I. Annex precede Plaintiff's signing the Settlement Agreement. These are:

The March 9, 2021, allegation against Defendant Aldridge and Plaintiff's "legal journal;" [Doc. 25, ¶ 71]

The May 7, 2021, allegation that Defendant Richardson refuse to charge Plaintiff' tablet; [Doc. 25, ¶ 74].

The May 9, 2021, allegation that Defendant Hawthorne refused to allow Plaintiff to shower before 5:00 p.m. [Doc. 25, ¶ 75].

The sole allegation occurring after February 16, 2022, concerns an alleged threat on May 13, 2022, from inmate Carl Johnson to Plaintiff that he should stop writing grievances about Defendants Richardson and Aldridge. [Doc. 25, ¶ 95]. Plaintiff provided no further details, including the specific nature of the threat, or whether inmate Johnson ever pursued his threat.

Plaintiff does not provide any dates or number of occurrences for his remaining generic and conclusory allegations regarding medical supplies, medical treatment, denial of passes, etc., but in light of how quickly he began filing grievances after his transfer to Suwannee C.I. Annex, it is safe to say that these would also fall within days of his transfer and months before he signed the settlement agreement.

Based on the foregoing, every allegation Plaintiff has raised against the four Defendants in the instant case is prohibited by the Settlement Agreement, thus making summary judgment required.

### B. Plaintiff has failed to meet the legal elements of his Deliberate Indifference (Interference with Treatment) claim.

"[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1999). To prevail on a deliberate indifference claim, a Plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser*

*Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A medical need is serious when it 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *King v. Henry*, No. 5:09cv365/MCR/EMT, 2011 U.S. Dist. LEXIS 135579 at *33 (N.D. Fla. Sep. 19, 2011) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To establish deliberate indifference, a Plaintiff must prove, "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original). "The defendants must have been 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and then actually draw that inference." *Easley v. Dep't of Corr.*, 590 F. Appx 860, 868 (11th Cir. 2014) (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)). "Deliberate indifference may be evidenced by the intentional interference of a prison official with medical treatment once it is prescribed." *King v. Henry*, No. 5:09cv365/MCR/EMT, 2011 U.S. Dist. LEXIS 135579 at *33 (N.D. Fla. Sep. 19, 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

Plaintiff has failed to plead facts sufficient to support a claim of Deliberate Indifference against Defendant Hawthorne. For Plaintiff to succeed on his claim of Deliberate Indifference, Plaintiff must allege facts sufficient to support the claim that

(1) Plaintiff had a serious medical need, (2) Defendant Hawthorne was deliberately indifferent to that need, and (3) that causation existed between this deliberate indifference and Plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

Plaintiff alleges that on May 10, 2021, Defendant Hawthorne denied Plaintiff access to the shower and instructed Plaintiff to clean himself with a washcloth at the sink when Plaintiff asked if he could rinse urine off of himself. [Doc. 25, ¶ 75]. Plaintiff offers no evidence that supports the requirement of Defendant Hawthorne having a subjective knowledge of a risk or serious harm to him. Although Plaintiff's Amended Complaint states that Plaintiff's right leg became swollen and red with open sores on May 9, 2021, Plaintiff does not mention whether Defendant Hawthorne saw his leg, was notified of his condition, or had subjective knowledge of Plaintiff's condition. [Doc. 25, ¶ 75]. Further, even if Plaintiff was able to produce evidence of Defendant's subjective knowledge of the risk or serious harmed posed to Plaintiff in refusing to allow Plaintiff to cleanse himself of the urine, Plaintiff admits in both his deposition and Amended Complaint that Defendant Hawthorne allowed him to wash the urine off his body with a washcloth. [Doc. 25, ¶ 75]. In fact, Plaintiff has completely contradicted any allegation of Defendant Hawthorne's denial of medical treatment in his deposition:

Q: Did Teressa Fillmore Hawthorne ever block you or prohibit you
   from communicating with medical staff when they made their daily
   rounds in confinement?
A: No, ma'am. I don't think so.
*Ex. 2, Plaintiff's Deposition, 56:9-12.*

Q: Did any of – did Richardson, Aldridge, or Hawthorne ever prevent
   you from going to medical to pick up the new passes?
A: No, not these new passes.
*Ex. 2, Plaintiff's Deposition, 101:25 – 102:3.*

For the reasons discussed above, Plaintiff has failed to plead facts sufficient
to support a claim of Deliberate Indifference against Defendant Hawthorne. Firstly,
there is no evidence to support the element of Defendant's subjective knowledge of
a risk or serious harm to Plaintiff. Further, Defendant Hawthorne did not disregard
Plaintiff's request to clean the urine off his body and allowed him to do so and
regularly provided Plaintiff with adequate medical care, as addressed in Plaintiff's
deposition. Summary judgement is therefore necessary on this claim.

**C. Plaintiff has failed to meet the legal elements of his Conspiracy claim,
which also must be denied based on the intracorporate conspiracy
doctrine.**

A plaintiff may state a § 1983 claim for conspiracy to violate constitutional
rights by showing a conspiracy existed that resulted in the actual denial of some
underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d
1359, 1370 (11th Cir. 1998). "A plaintiff claiming a § 1983 conspiracy must prove
the defendants reached an understanding to violate the plaintiff's constitutional
rights." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he

15

linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). While a plaintiff may not rely on conclusory allegations to state a claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), facts supporting a conspiracy may be circumstantial. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992)). "To state a claim for civil conspiracy under Florida law, a plaintiff must allege (1) an agreement between two or more parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in pursuance of the conspiracy and (4) damage to the plaintiff as a result of the act." *Walton v. Fla. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 81007, at *23 (M.D. Fla. May 14, 2019) (applying elements of Conspiracy under Florida common law to the § 1983 context).

Plaintiff fails to satisfy any of the elements of proving a conspiracy under § 1983 outlined in *Walton* and further fails to provide even circumstantial evidence supporting a claim of conspiracy against Defendant Hawthorne. In Plaintiff's Amended Complaint, his sole allegation against Hawthorne is that after he asked Defendant if he could use the ADA shower, Officer Hawthorne instructed him to use a washcloth although he alleges that Hawthorne routinely allowed other prisoners to do so. [Doc. 25, ¶ 75]. Plaintiff reiterates this allegation in his deposition, however, alleges no material facts concerning Defendant Hawthorne having communication with any parties other than Plaintiff.

Nowhere in Plaintiff's Complaint or deposition does Plaintiff mention, exhibit, or allege any instance of Defendant Hawthorne engaging in communication, let alone an agreement with any other correctional staff or prisoners to violate Plaintiff's constitutional rights. Defendant Hawthorne's allegation has been comingled with that of the other Defendant Correctional Officers as well as Centurion and MHM, however, he confirmed in his deposition that Defendant Hawthorne did not block Plaintiff from receiving medical access or conspire to:

> Q: Did Teressa Fillmore Hawthorne ever block you or prohibit you from communicating with medical staff when they made their daily rounds in confinement?
> A: No, ma'am. I don't think so.
> *Ex. 2*, *Plaintiff's Deposition, 56:9-12.*

Plaintiff cannot raise any issue of material fact as to Hawthorne's conduct where he could *honestly* claim that she had an agreement with anyone as to how to commit an unlawful act, let alone that she in fact carried out any violation of Plaintiff's rights. Plaintiff brings this conclusory allegation while having no evidence of who she conspired with, what they conspired to do, or what precise damages he sustained as a result of their actions.

As plaintiff has failed to plead factual allegations sufficient to support a claim against Defendant Hawthorne for conspiracy under § 1983 and can point to no issue of material fact in his attempt to prove that claim, summary judgment is required and this claim must be dismissed.

17

Furthermore, Plaintiff's conspiracy claim fails due to the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Moss v. Dixon*, 2023 U.S. Dist. LEXIS 92809 at *24 (M.D. Fla. May 26, 2023) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). "The doctrine recognizes that '[a] corporation cannot conspire with its employees and its employees, while acting within the scope of their employment, cannot conspire among themselves.'" *Id.* (quoting *McPhie v. Yeager*, 819 F. App'x 696, 701 (11th Cir. 2020). "The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). *See also, Nassar v. Fla. Dep't of Agtic.*, 754 Fed. App'x 903, 907 (11th Cir. 2018).

### D. Plaintiff is barred from bringing his Abuse or Neglect of a Vulnerable Adult claim against corrections officials.

"The Florida legislature enacted the Adult Protective Services Act to protect 'vulnerable adult' from 'abuse, neglect, and exploitation' by 'caregivers.'" *Bobbin v. Corizon Health, Inc.*, 2014 U.S. Dist. LEXIS 154289 at *11-12 (M.D. Fla. Oct. 29, 2014) (citing *Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So.2d

717, 718 (Fla. 1st DCA 2008)). "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(28), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult." *Bohannon v. Shands Teaching Hosp. & Clinic, Inc.*, 983 So.2d 717, 721 (Fla. 1st DCA 2008).

"'Vulnerable adult' means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(28). "'Neglect' means the failure or omission on the part of the caregiver or vulnerable adult to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, which a prudent person would consider essential for the well-being of a vulnerable adult." Fla. Stat. § 415.102(16). "Abuse is defined as any willful act or threatened act by a relative, caregiver, or household member which causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or

emotional health. Fla. Stat. § 415.102(1). "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15)…."

"Thus, a plaintiff alleging 'abuse' [or neglect] must establish the defendant is a … caregiver…. *Grasso v. Grasso*, 131 F.Supp. 3d 1303, 1313 (M.D. Fla. 2015) (internal quotations omitted); *See also Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So.2d 717 (Fla. 1st DCA 2008). "'Caregiver' means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists. 'Caregiver' includes, but is not limited to, relatives, household members, guardians, neighbors, and employees and volunteers of facilities as defined in subsection (9). Section 415.102(5), Florida Statutes.

For the purpose of departmental investigative jurisdiction, the term "**caregiver" does not include law enforcement officers or employees of municipal or county detention facilities or the Department of Corrections while acting in an official capacity**." Fla. Stat., § 415.102(5) (emphasis added). Further,

allegations concerning alleged inaction of non-medical jail staff do not amount to 'neglect' as defined in § 415.102(16). *Lamego v. Mascara*, 2021WL 561655 (S.D. Fla. Jan. 7, 2021).

## V.    CONCLUSION

Plaintiff is now continuing his repetitive series of lawsuits based around the same classification of violations with the same category of players and admits to having more lawsuits in the works despite settling his claims against Defendants, including past, present, and future claims, which may arise. Plaintiff cannot proceed on these recycled claims or has failed to meet the requisite elements as detailed above.

Wherefore, Defendant Hawthorne respectfully requests this Court enter final summary judgment in her favor as to Plaintiffs' Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Tom@jsh-pa.com
*Attorneys for Defendants Dixon,*
*Richardson, Aldridge, and Hawthorne*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served

on all counsel of record by CM/ECF on February 5, 2024.

*/s/ Thomas Buchan*
Thomas Buchan
