UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONNY PHILLIPS,

      Plaintiff,

v.                                   Case No. 3:22-cv-997-BJD-LLL

RICKY DIXON, in his Official Capacity as
Secretary of the Florida Department of
Corrections, CENTURION OF FLORIDA,
LLC, MHM HEALTH PROFESSIONALS,
LLC, ALEXIS FIGUEROA, M.D.,
ELIZABETH HOLMES, BRITTNEY
CANNON, CONNIE LYNN ADAMS, SGT.
SAVONIA RICHARDSON-GRAHAM, SGT.
DEBRA ALDRIDGE, and OFCR TERESSA
FILLMORE HAWTHORNE

      Defendants,

_____/

## DEFENDANT RICHARDSON's MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Defendant Savonia Richardson, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment and states the following in support thereof:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff has been forced to reduce his amended complaint to a small collection of unsupported allegations against Defendant Dixon in his official capacity and three FDC employees at Suwannee Correctional Institution Annex. Specifically, Plaintiff presents these allegations in his Amended Complaint [Doc. 25] in a muddled attempt

1

to conflate and commingle his medical and ADA issues and lay as many of them as possible at the feet of two correctional officer sergeants and one correctional officer, in addition to the secretary of the Florida Department of Corrections. He has been forced to attempt this legal legerdemain because co-defendants Centurion, MHM, and the individual medical defendants filed motions to dismiss on January 31, 2022 [Docs. 51-54, 59], and Plaintiff responded by immediately filing a Notice of Voluntary Dismissal the next day on February 1, 2022 [Doc. 60], to include not only Centurion and HM but also each of the individual medical defendants.

Thus, the three FDC defendants remain with the FDC secretary under Plaintiff's flawed and generally hyperbolic theory of his case for Eighth Amendment violations of interference with medical treatment; conspiracy to violate the Eighth Amendment; and for abuse or neglect of a vulnerable adult.

Importantly, Plaintiff settled his previous lawsuit (Case No. 4:18-cv-139-AW-MJF in the Northern District of Florida Tallahassee Division), on February 16, 2022, more than 19 months after he transferred to Suwannee CI Annex. *Ex. 1, Settlement Agreement*. He filed this current suit on September 15, 2022, raising the precise issues—First Amendment retaliation, ADA violations, various Eighth Amendment violations, deliberate indifference, failure to treat, etc.—with the same classifications of characters—doctors, nurses, correctional officers, the department's secretary for injunctive relief purposes—as he did in 2018, and as he plans to do again. *Ex. 2, Plaintiff's Deposition, 123:8 – 124:10*. Defendants discuss this litigation history in detail below.

2

## II.   STATEMENT OF FACTS

### A. Plaintiff's Extensive Litigation History

Plaintiff has spent considerable time in federal court since 2015, suing the Florida Department of Corrections ("FDC") and its employees and contractors repeatedly at every institution in which FDC placed him. *See Phillips v. Pittman*, No. 1:15-cv-110 (N.D. Fla.) ("2015 case"); *Phillips v. Jones, et al.*, No. 4:18-cv-139 (N.D. Fla) ("2018 case"), and now *Phillips v. Dixon, et al.,* No. 3:22-cv-997 (M.D. Fla.) ("2022 case").

In the 2015 case, Plaintiff alleged FDC security staff at Mayo Correctional Institution violated his First Amendment rights when they harassed, insulted, and punished him for filing inmate grievances and a lawsuit. [2015 case, Doc 30, ¶¶ 31-41]. He claimed those same officers violated his Eighth Amendment rights because they refused him timely access to toilet facilities and deprived him of an adequate supply of adult diapers and other medical supplies. *Id.* at ¶¶ 43-45, 53. However, the Court granted the FDC officers' motion to dismiss the Eighth Amendment claim with prejudice and granted the motion to dismiss the First Amendment claim without prejudice. [*Id.*, Doc. 44 at 24]. However, the Court soon dismissed all counts with prejudice in November 2017 as a result of the parties' joint stipulation to do so. [*Id.,* Doc. 54]. This cleared the way for Plaintiff's second lawsuit.

Plaintiff filed his next case in March 2018 while he was incarcerated at Northwest Florida Reception Center. The allegations against FDC did not change:

First and Eighth Amendment violations, plus violations of his Americans with Disability Act and Rehabilitation Act rights. [2018 case, Doc. 311 (Third Am. Compl.) *Id.* at 29-30. The specific allegations reprised those of the 2015 case: inadequate diapers, wipes, soap, and ointments; security staff interfering with Plaintiff's hygiene supplies and teasing him about them, I*d.* at ¶ 242(a)-(i); retaliating against him for filing inmate grievances by preventing willing inmates from assisting him, and denying him an ADA-compliant cell. This suit was settled when Plaintiff received a monetary award of $25,000 from FDC and signed a settlement agreement and release of all claims on February 16, 2022. *Ex. 1,* Settlement Agreement. This settlement agreement is significant because this instant lawsuit is a direct breach of these settlement terms.

## B. 2018 Case Settlement Agreement Executed in 2022

In this Settlement Agreement, Plaintiff:

> forever releases, acquits, and discharges …  the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors of and from any and all claims, actions, causes of actions, demands, rights, damages … which [Plaintiff] **now has or which may hereafter accrue on account of or in any way growing out of the events and injuries that were at issue in this action,** including any and all known and unknown, foreseen and unforeseen bodily and personal injuries.
> *Id (emphasis added).*

In the instant suit, Defendants have held that Plaintiff's allegations arise from the moment he arrived at Suwannee Correctional Institution Annex on October 15, 2020, as Plaintiff readily acknowledges and admits this. [Doc. 25,  ¶¶ 41-42]; *Ex. 2, Plaintiff's Deposition, 13:21-24.* However, the language of the settlement agreement states

4

that any claim made before the date of the settlement agreement (February 16, 2022) to be null and void. It also bars claims made *after* the settlement agreement "growing out of the same events and injuries that were at issue in this action." *Ex. 1, Settlement Agreement.* In his effort to have his litigation both ways in clear violation of the Settlement Agreement, Plaintiff stated in this instant case that "the discrimination and violations followed Plaintiff [from Northwest Florida Reception Center] upon his transfer to Suwannee C.I., which form the basis for this new action." [Doc. 25, ¶ 41].

Finally, Plaintiff signed a settlement agreement and release of all claims with Centurion on February 9, 2022, accepting $20,000 in settlement. The language of this document is virtually identical in all relevant parts to the one Plaintiff signed with FDC. *Ex. 3, Centurion Settlement.* After Plaintiff filed suit in September 2022, the Centurion medical defendants filed their motions to dismiss on January 31, 2023. [Docs. 51-54, 59] Plaintiff filed a Notice of Voluntary Dismissal [Doc. 60] on February 1, 2023. Clearly Centurion's arguments regarding breaching the terms of the settlement agreement by filing an identical suit gave Plaintiff significant pause. Despite that dismissal, Plaintiff continues forward with a fatally diminished collection of arguments to support the allegations with which the Defendants are all too familiar.

### C. Plaintiff's Incarceration at Suwannee C.I. Annex

Plaintiff paints his arrival at Swannee C.I. Annex on October 15, 2020, in dramatic though inaccurate terms: someone stole his "therapeutic boots" almost before he exited the transport van; another someone confiscated his hygiene supplies and later refused to replace them; and a group of officers summarily marched him off

to confinement. [Doc. 25, ¶¶ 46, 52-53]. It is standard procedure to confiscate any and all medical supplies of any kind from inmates transferred to an until they are medically evaluated. It is also standard procedure to place newly transferred inmates in administrative confinement until a classification officer reviews his documents and assigns him to an appropriate dorm or cell based upon his status. Plaintiff has conflated and comingled Suwannee C.I. Annex medical staff and security staff together and claims they have concocted a conspiracy to deny him his medical supplies, prevent him from receiving necessary medical care, and refused to give him access to any reasonable accommodations, all in retaliation against him because he complains about these acts, writes frequent inmate grievances, and files lawsuits.

Because of his February 1, 2023, voluntary dismissal, Plaintiff may no longer direct his allegations toward any "medical defendants" and any comments and allegations involving them should essentially be stricken as they are entirely irrelevant to the Corrections Defendants. Instead, Plaintiff is limited to Secretary Dixon, Sergeants Richardson and Aldridge, and Officer Hawthorne.

Plaintiff alleged that Defendant Richardson retaliated against him. He alleges that she denied him access to his tablet [Doc. 25, ¶ 74] forbade him from showering until after 5:00 pm [Doc. 25, ¶ 77], labeled him a snitch in the presence of other inmates [Doc. 25, ¶ 92], imposed "group punishment" on fellow inmates and held him responsible [Doc. 25, ¶ 94], prevented him from going to call out, and refused him access to a wheelchair. [Doc. 25, ¶¶ 74, 77, 93, 94].

In his sworn deposition testimony, Plaintiff expanded his allegations by claiming that Defendant Richardson refused to charge his tablet on multiple occasions. *Ex. 2, Plaintiff's Deposition, 71:12-25*. Defendant Richarson denied any such refusal. *Ex. 4, Richardson Deposition, 30:11 – 31:1*. Plaintiff filed a grievance regarding this alleged refusal; it was denied on appeal. *Ex. 5, Appeal 23-6-26185*. The basis for the denial reminded Plaintiff that inmate tablets were a privilege and he could charge his tablet himself in the Suwannee C.I. Annex mail room and the charging kiosks. Plaintiff certainly knew this in light of the high volume of his communications with individuals, especially his sister, outside the institution.

Plaintiff alleged that Defendant Richardson deliberately prevented his access to the dorm showers until after 5:00 p.m. [Doc. 25, ¶ 77]. Evidently, he failed to recall this specific allegation because he admitted that this delayed shower access was standard procedure for other inmates and not directed solely at him. *Ex. 2, Plaintiff's Deposition, 33:7-11*. Defendant Richardson denied his allegation in her deposition, also pointing out the standard procedure. *Ex. 4, Richardson Deposition, p.35*.

Plaintiff claims that Defendant Richardson called him a snitch in front of other inmates in his dorm, an offense so serious that it was "tantamount to a death sentence." [Doc. 25, ¶ 93]. No credible evidence exists that Plaintiff was a "snitch" or an informant of any kind, nor that other inmates ever attempted to physically harm him, much less attempt to kill him, because of this non-event. Further, Plaintiff could not provide a date when Defendant Richardson allegedly called him a snitch. Defendant Richardson stated in her deposition testimony that she had never called

7

Plaintiff a snitch for any reason, including because he filed grievances. *Ex. 4, Richardson Deposition, 31:3-11.*

Although Plaintiff alleged that Defendant Richardson punished the inmates in his dorm because of their "association" with him, he could not provide any specific details, including the types of alleged punishment other than "hits," the identities of any other inmates involved, or any officers. He did state that Defendant Aldridge aided Defendant Richardson in this case, but then admitted he did not hear either of these defendants make any kinds of threats or indeed mete out any sort of punishment to him or anyone else. *Ex. 2, Plaintiff's Deposition, 187:1-7.* Defendant Richardson was not asked about this incident during her deposition, and Plaintiff did not depose Defendant Aldridge. However, Plaintiff embellished his claim bout the alleged group punishment by giving a lengthy disquisition of an alleged event in his dorm on an unspecified Friday night where three or four inmates were severely beaten by security staff and other inmates. The fact that there is no record of any such "altercation" at this level of severity underscores the obvious: Plaintiff is prevaricating to serve his own ends. *Ex. 2, Plaintiff's Deposition,* 186:21 – 189:3.

Finally, Plaintiff claims that Defendant Richardson took these specific actions to retaliate against him for filing inmate grievances, most of them against her. However, Defendant Richardson made it quite clear in her deposition testimony that not only was she unfamiliar with the details of the inmate grievance procedure, but she also had no knowledge of how many or what kinds of grievances Plaintiff had filed since his transfer to Suwannee CI Annex. She definitely had no knowledge of whether

Plaintiff had filed grievances regarding her alleged actions against him. *Ex. 4,*
*Richardson Deposition, 34:2-20.*

Plaintiff summed up his opinion of Defendant Richardson succinctly: "Sergeant
Graham *[sic]* didn't have to know about anything to retaliate, it just come natural to
her." *Ex. 2, Plaintiff's Deposition, 72:16-20.* Of course, Plaintiff himself has consistently
been unable to substantiate any of his claims against Defendant Richardson or indeed
any other defendant through deposition testimony, documentary evidence, inmate
declarations, or other accepted means, which places claims such as this one against
Defendant Richardson in serious doubt.

**MEMORANDUM OF LAW**

**III.   SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when the moving party
shows that "…there is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317,
322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c).* An otherwise
correctly supported motion for summary judgment cannot be defeated simply due to
the existence of some factual disputes between the parties. The precise requirement is
that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such
that a reasonable jury could return a verdict for the nonmoving party. *Id.* An issue of
fact is "material" if it is a legal element of the claim under the applicable substantive

law which might affect the outcome of the case. *Tipton v. Bergrohr GMBH—Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record because failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   ARGUMENT

**A. Plaintiff is prohibited from bringing this lawsuit by the plain language of the 2018 Case's Settlement Agreement he entered into.**

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement.") Thus, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. Accordingly, courts should "attempt to effectuate the parties' intent," which requires courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id.* at 1290. In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod v. Sch. Bd. of Palm Beach Cty.*, 550 F. App'x 809 (11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that in cases of dismissal pursuant to a settlement agreement *res judicata* determinations are governed by "traditional rules of contract interpretation"). As this Court knows, the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis.[1]

---

[1] "Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document …." *Norfolk*, 371 F.3d at 1290; *see also Sherrod*, 550 F. App'x at 812 ("Under Florida law, '[w]ords in a contract are to be given their plain

## 1.  The intentions of both parties are clear.

Defendants[2] made their intentions patently obvious in the Settlement Agreement by declaring they "intend merely to avoid litigation and buy their peace" with a payment of $25,000.00 to Plaintiff. *Ex. 1, Settlement Agreement*. In exchange, Plaintiff released Defendants from "any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation, whatsoever, including attorney's fees, **which the (Plaintiff) now has or which may hereafter accrue** on account of or in any way growing out of the events and injuries that were at issue in this action …" *Id.* (emphasis added). Based on the plain language of the Settlement Agreement, Plaintiff's intent was to secure a monetary sum and FDC remitted $25,000.00 to Plaintiff via his counsel, James Cook, thereby satisfying FDC's obligations.

## 2.  The terms of the Settlement Agreement are complete.

Plaintiff, who was represented by Mr. Cook when he signed the Settlement Agreement on February 16, 2022, not only agreed to releasing the Defendants from all existing claims and causes of action at the time of its execution, but he also agreed that the three-page document contained the entirety of the terms of the agreement between

---

and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

[2] All Defendants in this lawsuit are covered by that Settlement Agreement as it released in pertinent part, "the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors…" *Ex. 1, Settlement Agreement*.

the parties. *Ex. 1, Settlement Agreement*. This is central to the issue at hand because there is not a single mention of any accommodations related to Plaintiff's disability and or condition including, but certainly not limited to, provisions of wipes or ointments/creams, the quantity or type of diapers Plaintiff will receive, bathroom and shower passes or therapeutic boots.

Certain allegations in the Amended Complaint that occurred at Suwannee C.I. Annex precede Plaintiff's signing the Settlement Agreement. These are:

The March 9, 2021, allegation against Defendant Aldridge and Plaintiff's "legal journal;" [Doc. 25, ¶ 71]

The May 7, 2021, allegation that Defendant Richardson refuse to charge Plaintiff' tablet; [Doc. 25, ¶ 74].

The May 9, 2021, allegation that Defendant Hawthorne refused to allow Plaintiff to shower before 5:00 p.m. [Doc. 25, ¶ 75].

The sole allegation occurring after February 16, 2022, concerns an alleged threat on May 13, 2022, from inmate Carl Johnson to Plaintiff that he should stop writing grievances about Defendants Richardson and Aldridge. [Doc. 25, ¶ 95]. Plaintiff provided no further details, including the specific nature of the threat, or whether inmate Johnson ever pursued his threat.

Plaintiff does not provide any dates or number of occurrences for his remaining generic and conclusory allegations regarding medical supplies, medical treatment, denial of passes, etc., but in light of how quickly he began filing grievances after his

13

transfer to Suwannee C.I. Annex, it is safe to say that these would also fall within days of his transfer and months before he signed the settlement agreement.

Based on the foregoing, every allegation Plaintiff has raised against the four Defendants in the instant case is prohibited by the Settlement Agreement, thus making summary judgment required.

**B. Plaintiff has failed to meet the required elements of his First Amendment Retaliation claim.**

"To prove a First Amendment retaliation claim, an inmate must show that (1) his speech was constitutionally protected, (2) he suffered an adverse action that would likely deter a person of ordinary firmness from engaging in such speech, and (3) a causal relationship between the retaliatory action and the protected speech existed." *Lopez v. United States*, 656 Fed. Appx. 957, 964 (11th Cir. 2016) (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

As to the third element, "[o]nce the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant. The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." *Jacoby v. Mack*, 755 Fed.Appx. 888, 902 (11th Cir. 2018) (citing *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013)).

"An official-capacity suit is, 'in all respects other than name, to be treated as a suit against the entity [of which the defendant is an agent].'" *Fischer v. Ellegood*, 238 Fed.Appx. 428, 431 (11th Cir. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166

14

(1985)) (alteration in original). "To prevail under § 1983 against that entity, a plaintiff must show that the entity itself was the 'moving force' behind this constitutional deprivation, and the only way to do that is by identifying a 'policy or custom' [of the entity that] played a part in the violation of federal law.'" *Id.* (alteration in original).

Plaintiff has failed to allege facts supporting a claim of First Amendment Retaliation against Defendant Richardson. As discussed above, given Plaintiff's extensive records of family phone calls and emails from his tablet and the prison phone kiosk as well as his litany of litigation and grievance proceedings concerning Plaintiff's constitutional right to file grievances, Plaintiff cannot honestly demonstrate he suffered any restriction on that First Amendment right to free speech.

Plaintiff alleges that on May 7, 2021, Defendant Richardson refused to charge Plaintiff's tablet although she had charged other inmates. However, Plaintiff was still able to communicate with his sister through the prison kiosk if he had chosen to, which he admits to in his deposition. *Ex. 2*, *Phillips Deposition, 72:13-15*. Further, Defendant Richardson denied this allegation when deposed by Plaintiff's attorney. *Ex. 4, Richardson Deposition, 30:4 – 31:1.*

Plaintiff also alleges in his Amended Complaint that he was threatened by another inmate due to Defendant Richardson telling other inmates in Plaintiff's presence that Plaintiff was a "snitch". [Doc. 25, ¶¶ 92-96]. Defendant Richardson has denied this allegation when deposed by Plaintiff's attorney. *Ex. 4, Richardson Deposition*, *31:2-19.* Further, Plaintiff has not suffered any 'harm' due to any of the allegations of retaliation against Defendant Richardson to begin with. *Fischer v. Ellegood*, 238

Fed.Appx. 428, 431 (11th Cir. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (alteration in original). He was never assaulted by the inmate that allegedly threatened him, who was also wheelchair bound.

Defendant Richardson has caused no harm to Plaintiff, and Plaintiff's constitutional right to free speech that encompasses his right to file grievances against the prison and communicate with family members has not been restricted in the least or violated whatsoever. For the reasons discussed above, this claim must be dismissed.

**C. Plaintiff has failed to meet the legal elements of his Eighth Amendment Deliberate Indifference (Interference with Treatment) claim.**

"[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1999). To prevail on a deliberate indifference claim, a Plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A medical need is serious when it 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *King v. Henry*, No. 5:09cv365/MCR/EMT, 2011 U.S. Dist. LEXIS 135579 at *33 (N.D. Fla. Sep. 19, 2011) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To establish deliberate indifference, a Plaintiff must prove, "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th

Cir. 2010) (alteration in original). "The defendants must have been 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and then actually draw that inference." *Easley v. Dep't of Corr.*, 590 F. Appx 860, 868 (11th Cir. 2014) (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)). "Deliberate indifference may be evidenced by the intentional interference of a prison official with medical treatment once it is prescribed." *King v. Henry*, No. 5:09cv365/MCR/EMT, 2011 U.S. Dist. LEXIS 135579 at \*33 (N.D. Fla. Sep. 19, 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

Plaintiff has failed to plead facts sufficient to support a claim of Deliberate Indifference against Defendant Richardson. For Plaintiff to succeed, he must allege facts sufficient to support the claim that (1) Plaintiff had a serious medical need, (2) Defendant Richardson was deliberately indifferent to that need, and (3) that causation existed between this deliberate indifference and Plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

For Plaintiff to prove that he had a serious medical need, Plaintiff must allege facts that support a finding that Defendant Richardson had subjective knowledge of this medical need. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).

Plaintiff alleges no facts in his Amended Complaint concerning Defendant Richardson having notice of Plaintiff's medical condition. Further, Defendant Richardson could not have drawn an 'inference' based on medical facts, since she is not medically trained or licensed as medical staff. *Easley v. Dep't of Corr.*, 590 F. Appx

860, 868 (11th Cir. 2014) (quoting *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

Defendant Richardson also has not been deliberately indifferent towards Plaintiff's medical needs if it existed. Defendant Richardson has never blocked Plaintiff from receiving any medical attention, treatment, or supplies. In fact, when asked in his deposition if Defendant Richardson had ever blocked Plaintiff from communicating with medical staff during their daily rounds, Plaintiff replied that she had not. *Ex. 2, Plaintiff's Deposition, 56:17 – 57:4*. Further,

> Q: Did any of – did Richardson, Aldridge, or Hawthorne ever prevent
> you from going to medical to pick up the new passes?
> A: No, not these new passes.
> *Ex. 2, Plaintiff's Deposition 101:25 – 102:3.*

Plaintiff has received adequate medical attention that he has requested, and Defendant Richardson neither had notice of Plaintiff's medical need nor was deliberately indifferent to such. Plaintiff certainly can point to no injury that he ties to any specific conduct of Richardson. For these reasons, summary judgment is required.

### D. Plaintiff has failed to meet the legal requirements of his Conspiracy claim, which also must be denied based on the intracorporate conspiracy doctrine.

A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998). "A plaintiff claiming a § 1983 conspiracy must prove the defendants reached an understanding to violate the plaintiff's constitutional rights." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he linchpin for

conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992). While a plaintiff may not rely on conclusory allegations to state a claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), facts supporting a conspiracy may be circumstantial. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992)). "To state a claim for civil conspiracy under Florida law, a plaintiff must allege (1) an agreement between two or more parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in pursuance of the conspiracy and (4) damage to the plaintiff as a result of the act." *Walton v. Fla. Dep't of Corr.*, 2019 U.S. Dist. LEXIS 81007, at *23 (M.D. Fla. May 14, 2019) (applying elements of Conspiracy under Florida common law to the § 1983 context).

Plaintiff has failed to plead sufficient facts in support of a claim of conspiracy under § 1983 against Defendant Richardson. First, Plaintiff fails to satisfy the threshold *Walton* element of alleging facts supporting evidence of an agreement between Defendant Richardson and another party in his Amended Complaint. *Id.* (applying elements of Conspiracy under Florida common law to the § 1983 context). For this reason alone, Plaintiff's claim should be dismissed. However, Plaintiff also contradicts his allegations in his deposition by confirming that Defendant Richardson never attempted to block Plaintiff from receiving medical attention.

When asked in his deposition if Defendant Richardson had ever blocked Plaintiff from communicating with medical staff during their daily rounds, Plaintiff replied that she had not. *Ex. 2, Plaintiff's Deposition, 56:19 – 57:4*. Plaintiff admits:

19

Q: Did any of – did Richardson, Aldridge, or Hawthorne ever prevent
you from going to medical to pick up the new passes?
A: No, not these new passes.
*Ex. 2, Plaintiff's Deposition, 101:25 – 102:3.*

Additionally, Plaintiff has not suffered any damages. He has been given access to requisite medical care and communication with family members and FDC administration; no constitutional rights have been violated. For these reasons, summary judgment is required.

Furthermore, Plaintiff's conspiracy claim fails due to the intracorporate conspiracy doctrine. "The doctrine recognizes that '[a] corporation cannot conspire with its employees and its employees, while acting within the scope of their employment, cannot conspire among themselves.'" *Moss v. Dixon*, 2023 U.S. Dist. LEXIS 92809 at *24 (M.D. Fla. May 26, 2023) (quoting *McPhie v. Yeager*, 819 F. App'x 696, 701 (11th Cir. 2020)). "The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). *See Nassar v. Fla. Dep't of Agtic.*, 754 Fed. App'x 903, 907 (11th Cir. 2018).

### E. Plaintiff is barred from bringing his Abuse or Neglect of a Vulnerable Adult claim against corrections officials.

The Florida legislature enacted the Adult Protective Services Act to protect 'vulnerable adult' from 'abuse, neglect, and exploitation' by 'caregivers.'" *Bobbin v. Corizon Health, Inc.*, 2014 U.S. Dist. LEXIS 154289 at *11-12 (M.D. Fla. Oct. 29, 2014)

(citing *Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So.2d 717, 718 (Fla. 1st DCA 2008)). "To state a cause of action under section 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(28), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15), or 'exploitation' as defined by section 415.102(7) with respect to the vulnerable adult." *Bohannon v. Shands Teaching Hosp. & Clinic, Inc.*, 983 So.2d 717, 721 (Fla. 1st DCA 2008).

"'Vulnerable adult' means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(28). "'Neglect' means the failure or omission on the part of the caregiver or vulnerable adult to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, which a prudent person would consider essential for the well-being of a vulnerable adult." Fla. Stat. § 415.102(16). "Abuse is defined as any willful act or threatened act by a relative, caregiver, or household member which causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or emotional health. Fla. Stat. § 415.102(1). "To state a cause of action under section 415.1111, a complaint must set

forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a 'vulnerable adult' as defined by section 415.102(27), that the defendant was a 'caregiver' as defined by section 415.102(4), and that the defendant committed 'abuse' as defined by section 415.102(1), or 'neglect' as defined by section 415.102(15)…."

"Thus, a plaintiff alleging 'abuse' [or neglect] must establish the defendant is a … caregiver…. *Grasso v. Grasso*, 131 F.Supp. 3d 1303, 1313 (M.D. Fla. 2015) (internal quotations omitted); *See also Bohannon v. Shands Teaching Hosp. & Clinics, Inc.*, 983 So.2d 717 (Fla. 1st DCA 2008). "'Caregiver' means a person who has been entrusted with or has assumed the responsibility for frequent and regular care of or services to a vulnerable adult on a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person's guardian that a caregiver role exists. 'Caregiver' includes, but is not limited to, relatives, household members, guardians, neighbors, and employees and volunteers of facilities as defined in subsection (9). Section 415.102(5), Florida Statutes.

For the purpose of departmental investigative jurisdiction, the term "**caregiver" does not include law enforcement officers or employees of municipal or county detention facilities or the Department of Corrections while acting in an official capacity**." Fla. Stat., § 415.102(5) (emphasis added). Further, allegations concerning alleged inaction of non-medical jail staff do not amount to 'neglect' as defined in § 415.102(16). *Lamego v. Mascara*, 2021WL 561655 (S.D. Fla. Jan. 7, 2021).

## V.    CONCLUSION

Plaintiff is now continuing his repetitive series of lawsuits based around the same classification of violations with the same category of players and admits to having more lawsuits in the works despite settling his claims against Defendants, including past, present, and future claims which may arise. Plaintiff cannot proceed on these recycled claims or has failed to meet the requisite elements as detailed above.

Wherefore, Defendant Richardson respectfully requests this Court enter final summary judgment in her favor as to Plaintiffs' Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

/s/ Thomas Buchan
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Tom@jsh-pa.com
Attorneys for Corrections Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF on February 5, 2024

/s/ Thomas Buchan
Thomas Buchan