**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DONNY PHILLIPS,**

     **Plaintiff,**

**v.**                             **Case No. 3:22-cv-997-BJD-LLL**

**RICKY DIXON, et al.,**

     **Defendants,**

_____/

**DEFENDANT DIXON'S MOTION FOR SUMMARY JUDGMENT WITH**
**INCORPORATED MEMORANDUM OF LAW**

Defendant Dixon, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment and states the following in support thereof:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff has been forced to reduce his amended complaint to a small collection of unsupported allegations against Defendant Dixon in his official capacity and three FDC employees at Suwannee Correctional Institution Annex (the individuals have now been settled, see Doc. 106]). Specifically, Plaintiff presents these allegations in his Amended Complaint [Doc. 25] in a muddled attempt to conflate and commingle his medical and ADA issues and lay as many of them as possible at the feet of two correctional officer sergeants and one correctional officer, in addition to the

1

secretary of the Florida Department of Corrections. He has been forced to posture this way because co-defendants Centurion, MHM, and the individual medical defendants filed motions to dismiss on January 31, 2022 [Docs. 51-54, 59], and Plaintiff responded by immediately filing a Notice of Voluntary Dismissal the next day on February 1, 2022 [Doc. 60].

Thus, the FDC secretary remains under Plaintiff's flawed and generally hyperbolic theory of his case for First Amendment Retaliation (Count I), Eighth Amendment claim (Count III), and ADA/RA claim (Count IV).

Importantly, Plaintiff settled his previous lawsuit (Case No. 4:18-cv-139-AW-MJF in the Northern District of Florida Tallahassee Division), on February 16, 2022, more than 19 months after he transferred to Suwannee CI Annex. *Ex. 1, Settlement Agreement*. He filed this current suit on September 15, 2022, raising the precise issues—First Amendment retaliation, ADA violations, various Eighth Amendment violations, deliberate indifference, failure to treat, etc.—with the same classifications of characters—doctors, nurses, correctional officers, the department's secretary for injunctive relief purposes—as he did in 2018, and as he plans to do again. *Ex. 2, Plaintiff's Deposition, 123:8 – 124:10*. Defendants discuss this litigation history in detail below.

## II.   STATEMENT OF FACTS

### A. Plaintiff's Extensive Litigation History

Plaintiff has spent considerable time in federal court since 2015, suing the Florida Department of Corrections ("FDC") and its employees and contractors repeatedly at every institution in which FDC placed him. *See Phillips v. Pittman*, No. 1:15-cv-110 (N.D. Fla.) ("2015 case"); *Phillips v. Jones, et al.*, No. 4:18-cv-139 (N.D. Fla) ("2018 case"), and now *Phillips v. Dixon, et al.,* No. 3:22-cv-997 (M.D. Fla.) ("2022 case").

In the 2015 case, Plaintiff alleged FDC security staff at Mayo Correctional Institution violated his First Amendment rights when they harassed, insulted, and punished him for filing inmate grievances and a lawsuit. [2015 case, Doc 30, ¶¶ 31-41]. He claimed those same officers violated his Eighth Amendment rights because they refused him timely access to toilet facilities and deprived him of an adequate supply of adult diapers and other medical supplies. *Id*. at ¶¶ 43-45, 53. However, the Court granted the FDC officers' motion to dismiss the Eighth Amendment claim with prejudice and granted the motion to dismiss the First Amendment claim without prejudice. [*Id*., Doc. 44 at 24]. However, the Court soon dismissed all counts with prejudice in November 2017 as a result of the parties' joint stipulation to do so. [*Id.,* Doc. 54]. This cleared the way for Plaintiff's second lawsuit.

Plaintiff filed his next case in March 2018 while he was incarcerated at Northwest Florida Reception Center. The allegations against FDC did not change: First and Eighth Amendment violations, plus violations of his Americans with Disability Act and Rehabilitation Act rights. [2018 case, Doc. 311 (Third Am. Compl.) *Id*. at 29-30. The specific allegations reprised those of the 2015 case: inadequate diapers, wipes, soap, and ointments; security staff interfering with Plaintiff's hygiene supplies and teasing him about them, I*d*. at ¶ 242(a)-(i); retaliating against him for filing inmate grievances by preventing willing inmates from assisting him, and denying him an ADA-compliant cell. This suit was settled when Plaintiff received a monetary award of $25,000 from FDC and signed a settlement agreement and release of all claims on February 16, 2022. *Ex. 1,* Settlement Agreement. This settlement agreement is significant because this instant lawsuit is a direct breach of these settlement terms.

## B. 2018 Case Settlement Agreement Executed in 2022

In this Settlement Agreement, Plaintiff:

[F]orever releases, acquits, and discharges … the State of Florida, the Florida Department of Corrections, and their agents, contractors, servants, employees, former employees, and successors of and from any and all claims, actions, causes of actions, demands, rights, damages … which [Plaintiff] **now has or which may hereafter accrue on account of or in any way growing out of the events and injuries that were at issue in this action,** including any and all known and unknown, foreseen and unforeseen bodily and personal injuries. *Id. (emphasis added).*

4

In the instant suit, Defendants have held that Plaintiff's allegations arise from the moment he arrived at Suwannee Correctional Institution Annex on October 15, 2020, as Plaintiff readily acknowledges and admits this. [Doc. 25, ¶¶ 41-42]; *Ex. 2, Plaintiff's Deposition, 13:21-24.* However, the language of the settlement agreement states that any claim made before the date of the settlement agreement (February 16, 2022) to be null and void. It also bars claims made *after* the settlement agreement "growing out of the same events and injuries that were at issue in this action." *Ex. 1, Settlement Agreement.* In his effort to have his litigation both ways in clear violation of the Settlement Agreement, Plaintiff stated in this instant case that "the discrimination and violations followed Plaintiff [from Northwest Florida Reception Center] upon his transfer to Suwannee C.I., which form the basis for this new action." [Doc. 25, ¶ 41].

Finally, Plaintiff signed a settlement agreement and release of all claims with Centurion on February 9, 2022, accepting $20,000 in settlement. The language of this document is virtually identical in all relevant parts to the one Plaintiff signed with FDC. *Ex. 3, Centurion Settlement.* After Plaintiff filed suit in September 2022, the Centurion medical defendants filed their motions to dismiss on January 31, 2023. [Docs. 51-54, 59] Plaintiff filed a Notice of Voluntary Dismissal [Doc. 60] on February 1, 2023. Clearly Centurion's arguments regarding breaching the terms of the settlement agreement by filing an identical suit gave Plaintiff significant pause.

Despite that dismissal, Plaintiff continues forward with a fatally diminished collection of arguments to support the allegations with which the Defendant is all too familiar.

### C. Plaintiff's Incarceration at Suwannee C.I. Annex

Plaintiff paints his arrival at Swannee C.I. Annex on October 15, 2020, in dramatic though inaccurate terms: someone stole his "therapeutic boots" almost before he exited the transport van; another someone confiscated his hygiene supplies and later refused to replace them; and a group of officers summarily marched him off to confinement. [Doc. 25, ¶¶ 46, 52-53]. It is standard procedure to confiscate any and all medical supplies of any kind from inmates transferred until they are medically evaluated. It is also standard procedure to place newly transferred inmates in administrative confinement until a classification officer reviews his documents and assigns him to an appropriate dorm or cell based upon his status. Plaintiff has conflated and comingled Suwannee C.I. Annex medical staff and security staff together and claims they have concocted a conspiracy to deny him his medical supplies, prevent him from receiving necessary medical care, and refused to give him access to any reasonable accommodations, all in retaliation against him because he complains about these acts, writes frequent inmate grievances, and files lawsuits.

Because of his February 1, 2023, voluntary dismissal, Plaintiff may no longer direct his allegations toward any "medical defendants" and any comments and

allegations involving them should essentially be stricken as they are entirely irrelevant to the Corrections Defendants. Instead, Plaintiff is now limited to Secretary Dixon.

Plaintiff named Defendant Dixon as a defendant in his official capacity because he fully intended to file yet another Motion of Preliminary Injunctive Relief and for that purpose he needed Defendant Dixon. After the Centurion Defendants were voluntarily dismissed on February 1, 2023, Plaintiff directed his attention to Defendant Dixon and the "non-delegable duty" to ensure that Centurion, no longer a party, still provided appropriate medical care to inmates, including Plaintiff, whose "serious medical condition" was apparently so remarkably serious that Defendant Dixon must be aware of it.

The same is true of Plaintiff's claims that Defendant Dixon violated various ADA and Rehabilitation Act provisions despite the fact that he had actual knowledge of these allegations from the preliminary injunction filed—*but not renewed*—in Plaintiff's 2018 suit. [Doc 25, ¶ 134]. A litany of hyperbolic allegations follow, setting out what Defendant Dixon knew, how he knew it, and how he "authorized" his subordinates to act on his behalf in committing the alleged ADA violations. [Doc. 25, ¶¶ 134-137].

Plaintiff created a litany of acts for which he alleges Defendant Dixon is responsible: failure to ensure a continuous supply of medical supplies; denial of an

inmate assistance to push his wheelchair; failure to issue various passes; failure to provide therapeutic boots; deliberately delayed and denied medical treatment; and dismissed Plaintiff's grievances without any "meaningful review." [Doc. 25, ¶¶ 119-122]. Here are allegations more properly addressed to the dismissed medical provider, but are now aimed at Defendant Dixon because he must apparently monitor the care and treatment of every inmate, thus overseeing to a ridiculous extent the functions Centurion provided then and still provides. Plaintiff has also impermissibly conflated ADA issues with strictly medical ones and stretched the concept of a non-delegable duty past the breaking point.

Plaintiff's contention that Defendant Dixon and his subordinates refused his request for therapeutic medical boots illustrates his conflation of what is a medical issue and what is an ADA issue. [Doc. 25, ¶¶ 46-47]. The authority to prescribe medical boots belongs to the medical providers at Suwannee C.I. Annex, although Plaintiff insinuates that Defendant Dixon, who apparently should be personally monitoring the medical providers' decisions, ought to have made certain his request was granted. Responses to Plaintiff's grievances on the issue of medical boots stated simply—and correctly—that his medical condition, specifically his ankles, did not justify the boots. *Ex. 4, Informal Grievance 231-2209-0139; Ex. 5, Grievance Appeal 23-6-19827.*

The remainder of Plaintiff's claims against Defendant Dixon follow the same familiar pattern: the failure to provide medical supplies and treatment, access to medical treatment, bathroom and shower passes, and other issues such as these that have no real home once Centurion was dismissed. Plaintiff's attempt to make Defendant Dixon liable for what he alleges were Centurion's failings are illogical at best. Plaintiff filed a Motion for Preliminary Injunction on August 18, 2023, a veritable compendium of the many ways Defendant Dixon and his subordinates at all levels have failed to provide Plaintiff with everything he has demanded. [Doc. 74]. Again, this motion conflated ADA and medical issues. Defendant Dixon responded to the motion on August 21, 2023 [Doc. 76], and the Court denied the motion on September 12, 2023. [Doc. 89]. The latter two documents substantially diminish Plaintiff's claims and the bases for them.

Plaintiff also alleges that Defendant Dixon—and his subordinates—failed to meaningfully review his grievance appeals and summarily denied them as a result. No record evidence supports this claim. Every administrative appeal Plaintiff filed while at Suwannee CI Annex contains a detailed explanation of the action taken in each instance. While Plaintiff may not agree with the response, it is nevertheless clear that the grievances at each level were processed in accordance with the provisions of Ch. 33-103, F.A.C.

Plaintiff alleges that Defendant Dixon prevented him from participating in services, programs, and activities offered at Suwannee C.I. Annex. As usual, he does not provide any specific information regarding these services, programs, and activities. To allegedly prove his point, however, Plaintiff filed a grievance stating he was placed in confinement as retaliation for some undisclosed reason and therefore denied access to his "OP drug program." *Ex. 6, Formal Grievance 2012-231-004*. A minimum amount of research shows that Plaintiff was not in confinement on the date identified in his grievance—October 29, 2020—and had access to his drug program.

Finally, for someone so interested in his rights and privileges under the ADA, Plaintiff did very little to take advantage of what clearly was available at Suwannee C.I. Annex. He refused to follow established procedures to obtain various forms of assistance, such as an impaired inmate assistant or bathroom and shower passes. He also refused to attend most of the ADA quarterly meetings, and when he did, he refused to discuss any issues or problems he may have had. Instead, he apparently preferred to claim that Defendant Dixon and his subordinates denied him the same privileges and opportunities as other inmates at Suwannee C.I. Annex. Finally, when his condition improved somewhat and his medical providers changed his medical classification from ADA to "impaired," Plaintiff was outraged and claimed this specific action was attributable to Defendant Dixon and was nothing more than

retaliation. Plaintiff has failed to depose any corporate representatives in a blatant failure to pursue his claims as well.

## MEMORANDUM OF LAW

### III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S.

at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## IV.   ARGUMENT

### A. Plaintiff's Section 1983 claims are barred from bringing this lawsuit against Defendant Dixon under the 11th Amendment.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

In the absence of consent, "a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

In *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (internal quotations modified), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979). Furthermore, after reviewing specific

12

provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See *Gamble v. Fla. Dep't of Health & Rehab. Serv.*, 779 F.2d 1509, 1513-20 (11th Cir. 1986).

Accordingly, in *Zatler*, the court found that the FDC Secretary was immune from suit in his official capacity. *Id*. Thus, insofar as Plaintiff seeks monetary damages from Defendant Dixon in his official capacity, the Eleventh Amendment bars suit.

### B. Plaintiff is prohibited from bringing this lawsuit by the plain language of the 2018 Case's Settlement Agreement he entered into.

When parties stipulate to a dismissal with prejudice based upon a settlement agreement, the principles of *res judicata* apply," albeit in "a somewhat modified form." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004); *Real v. Goodell*, 2019 WL 2211111, at *4 (M.D. Fla. May 22, 2019) ("A plaintiff's complaint is subject to dismissal where it asserts claims precluded by a settlement agreement.") Thus, "[d]ismissal [is] not determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement." *Norfolk*, 371 F.3d at 1289. Accordingly, courts should "attempt to effectuate the parties' intent," which requires courts to "look[] to the Settlement Agreement to determine what claims it precluded from future litigation." *Id*. at 1290. In doing so, the court must "construe [the] settlement agreement [by] applying Florida contract law." *Sherrod v. Sch. Bd. of Palm Beach Cty.*, 550 F. App'x 809

(11th Cir. 2013); *Norfolk*, 371 F.3d at 1290 (explaining that in cases of dismissal pursuant to a settlement agreement *res judicata* determinations are governed by "traditional rules of contract interpretation"). As this Court knows, the plain meaning of the Settlement Agreement controls the Court's "four corners" analysis.[1]

### 1. The intentions of both parties are clear.

Defendants made their intentions patently obvious in the Settlement Agreement by declaring they "intend merely to avoid litigation and buy their peace" with a payment of $25,000.00 to Plaintiff. *Ex. 1, Settlement Agreement*. In exchange, Plaintiff released Defendants from "any and all claims, actions, causes of actions, demands, rights, damages, costs, loss of service, expenses and compensation, whatsoever, including attorney's fees, **which the (Plaintiff) now has or which may hereafter accrue** on account of or in any way growing out of the events and injuries that were at issue in this action …" *Id*. (emphasis added). Based on the plain language of the Settlement Agreement, Plaintiff's intent was to secure a monetary sum and FDC remitted $25,000.00 to Plaintiff via his counsel, James Cook, thereby satisfying FDC's obligations.

---

[1] "Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document …." *Norfolk*, 371 F.3d at 1290; *see also Sherrod*, 550 F. App'x at 812 ("Under Florida law, '[w]ords in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement.'") (citation omitted).

## 2.  The terms of the Settlement Agreement are complete.

Plaintiff, who was represented by Mr. Cook when he signed the Settlement Agreement on February 16, 2022, not only agreed to releasing the Defendants from all existing claims and causes of action at the time of its execution, but he also agreed that the three-page document contained the entirety of the terms of the agreement between the parties. *Ex. 1, Settlement Agreement*. This is central to the issue at hand because there is not a single mention of any accommodations related to Plaintiff's disability and or condition including, but certainly not limited to, provisions of wipes or ointments/creams, the quantity or type of diapers Plaintiff will receive, bathroom and shower passes or therapeutic boots.

Certain allegations in the Amended Complaint that occurred at Suwannee C.I. Annex precede Plaintiff's signing the Settlement Agreement. These are:

The March 9, 2021, allegation against Defendant Aldridge and Plaintiff's "legal journal;" [Doc. 25, ¶ 71]

The May 7, 2021, allegation that Defendant Richardson refuse to charge Plaintiff' tablet; [Doc. 25, ¶ 74].

The May 9, 2021, allegation that Defendant Hawthorne refused to allow Plaintiff to shower before 5:00 p.m. [Doc. 25, ¶ 75].

The sole allegation occurring after February 16, 2022, concerns an alleged threat on May 13, 2022, from inmate Carl Johnson to Plaintiff that he should stop

writing grievances about Defendants Richardson and Aldridge. [Doc. 25, ¶ 95]. Plaintiff provided no further details, including the specific nature of the threat, or whether inmate Johnson ever pursued his threat.

Plaintiff does not provide any dates or number of occurrences for his remaining generic and conclusory allegations regarding medical supplies, medical treatment, denial of passes, etc., but in light of how quickly he began filing grievances after his transfer to Suwannee C.I. Annex, it is safe to say that these would also fall within days of his transfer and months before he signed the settlement agreement.

Based on the foregoing, every allegation Plaintiff has in the instant case is prohibited by the Settlement Agreement, thus making summary judgment required.

## C. Plaintiff has failed to meet the required elements of his First Amendment Retaliation claim.

"To prove a First Amendment retaliation claim, an inmate must show that (1) his speech was constitutionally protected, (2) he suffered an adverse action that would likely deter a person of ordinary firmness from engaging in such speech, and (3) a causal relationship between the retaliatory action and the protected speech existed." *Lopez v. United States*, 656 Fed. Appx. 957, 964 (11th Cir. 2016) (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

As to the third element, "[o]nce the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to

the defendant. The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." *Jacoby v. Mack*, 755 Fed.Appx. 888, 902 (11th Cir. 2018) (citing *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013)).

"An official-capacity suit is, 'in all respects other than name, to be treated as a suit against the entity [of which the defendant is an agent].'" *Fischer v. Ellegood*, 238 Fed.Appx. 428, 431 (11th Cir. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (alteration in original). "To prevail under § 1983 against that entity, a plaintiff must show that the entity itself was the 'moving force' behind this constitutional deprivation, and the only way to do that is by identifying a 'policy or custom' [of the entity that] played a part in the violation of federal law.'" *Id.* (alteration in original).

Since Defendant Dixon is being sued by Plaintiff in his official capacity, the precedent set in *Graham* and applied in *Fischer* controls. *See Id*. Therefore, Plaintiff's allegations must point to a specific policy or custom of FDC that violated Plaintiff's constitutional rights to free speech. *Id*. Plaintiff has failed to plead sufficient facts supporting a claim of First Amendment Retaliation.

In Plaintiff's Amended Complaint, Plaintiff points to a singular, specific policy or custom that he alleged violated his rights. Plaintiff alleges that the contracted medical providers, Centurion and MHM Health "had a policy, custom,

and practice at FDC institutions like Suwanee C.I. to disregard serious medical symptoms and refuse to provide adequate treatment, among other unconstitutional practices." [Doc. 25, ¶ 65]. Centurion and MHM Health have been dismissed from this lawsuit by Plaintiff and yet he continues to conflate those allegations with Defendant Dixon. Therefore, Plaintiff's allegation against them and consequently Defendant Dixon is without any merit.

It is worth noting that Plaintiff is claiming that his First Amendment rights to free speech have been violated and since he is incarcerated, the only individuals that Plaintiff would be able to reach out to and communicate with would be FDC officials for legal grievances and his family through the prison phone. Plaintiff has voluminous records of both grievances and phone calls made regularly and without waiver throughout his entire incarceration and has also been a party to extensive, continuous litigation. Plaintiff cannot honestly point to any deprivation of his First Amendment rights and summary judgment is necessary.

### D. Plaintiff has failed to meet the legal elements of his Eighth Amendment Deliberate Indifference claim.

"[N]ot every claim of inadequate medical treatment states a violation of [the Eighth] amendment." *Leonard v. Dep't of Corr. Fla.*, 232 Fed.Appx. 892, 894 (11th Cir. 2007) (citing *Estelle v. Gamble*, 97 S. Ct. 285, 291 (1976)). "Medical treatment violates the Eighth amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Id.* (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). "To state a claim of deliberate indifference, the plaintiff must allege both an objectively serious medical need and the subjective intent of deliberate indifference." *Smith v. Fla. Dep't of Corr.*, 375 Fed.Appx. 905, 909 (11th Cir. 2010) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). To establish there has been deliberate indifference to the serious medical need, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.*

A mere difference in medical opinion between the inmate and the prison medical staff in regard to the treatment course does not state an Eighth Amendment claim. *Id.* "[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Id.* (quoting *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)) (internal quotation marks omitted). "Plaintiff must demonstrate that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Leonard,* 232 Fed.Appx. 892, 894 (11th Cir. 2007) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)) (internal quotation marks omitted).

Plaintiff is unable to articulate exactly what Dixon or FDC officials knew of a risk, let alone disregarded that risk, by conduct amounting to more than mere negligence. In attempting to articulate these reasons, Plaintiff cannot do so without bringing in Centurion and the medical Defendants. Plaintiff tries to conflate and commingle the allegations to the best of his ability to muddle what occurred. He relies on a "non-delegable duty" as requiring Dixon to be omniscient as to what every inmate's personal medical condition and care plan is, which is absurd. Plaintiff's disagreement with the decisions of his medical providers is misdirected at Defendant Dixon and cannot support his conclusory allegations littered throughout his Amended Complaint. For these reasons, summary judgment is required.

### E. Plaintiff's ADA claim Against Defendant Dixon must fail due to failing to meet the legal requirements and his impermissible reliance on vicarious liability.

A claim of discrimination under the ADA and RA requires a plaintiff to establish "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F.

App'x 475, 477 (11th Cir. 2015) (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Establishing a violation under the ADA and RA entitles Plaintiff to injunctive relief. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). However, to recover monetary damages, Plaintiff "must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022) (quoting *Silberman*, 927 F.3d at 1134). Deliberate indifference "is an 'exacting standard,' which requires showing more than gross negligence." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (citation omitted). "To establish deliberate indifference, a plaintiff must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *Id.* (quotations omitted).

"Title II of the ADA 'prohibits discrimination by public entities' against disabled individuals." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1321 (11th Cir. 2021) (citing *Garthright-Dietrich v. Atlanta Landmarks*, Inc., 452 F.3d 1269 (11th Cir. 2006)). "As a preliminary matter, there is no individual capacity liability under Title II of the ADA." *Nestor v. Day*, 2021 U.S. Dist. LEXIS 154021 at *19 (M.D. Fla. Aug. 16, 2021) (citing *Badillo v. Thorpe*, 158 F.App'x 208, 211 (11th Cir. 2005)). "To state a claim under Title II of the ADA, a plaintiff must allege:

(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or … denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; (3) by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132) (internal quotations omitted).

### 1. Plaintiff failed to show what programs he was denied the benefits of or that he was discriminated against by reason of any disability.

Plaintiff cannot point to a specific program, benefit, or service that he was excluded from. The complaints he has include his medical supplies, therapeutic boots, and his tablet. Medical supplies are handled by medical staff. Despite his insistence on that, he voluntarily dismissed the Centurion medical defendants. The boots, once again, are physician ordered – also dismissed. As explained above, he has routinely been able to communicate with his relatives by phone and email. Plaintiff is wholly unable to isolate with specificity what he was denied by FDC, let alone that the reason was his disability. For these reasons, summary judgment is required.

### 2. Plaintiff's claim must fail because vicarious liability cannot sustain an ADA claim.

The 11th Circuit Court of Appeals, as recently as April 7, 2022, has held that "vicarious liability is unavailable under Title II" of the ADA and § 504 of the RA. *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022). *See also Jones v. City of*

*Detroit Michigan*, 20 F.4th 1117 (6th Cir. 2021) (holding that vicarious liability does not apply to Title II of the ADA of § 505 of the Rehabilitation Act).

Further, this Court has recognized in its Order on Defendant Dixon's Motion to Dismiss [Doc. 80] that "Plaintiff's claim under Title II of the ADA cannot be based on vicarious liability. [I]nstead, [Plaintiff must allege facts establishing] the deliberate indifference of an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [entity's] behalf and who has *actual knowledge* of the discrimination in the [entity's] programs and fails adequately to respond." *Ingram v. Kubik*, 30 F.4th 1241, 1259 (11th Cir. 2014) (internal quotations omitted).

Plaintiff's Amended Complaint explicitly blames subordinates for supporting this suit against Dixon. Plaintiff is unable to point to any facts as to what Dixon should have been addressing, what actions he should have taken to correct the conduct, and what programs of FDC discriminated against him. Instead, he proceeds by blaming FDC for the decisions of his medical providers.

The Amended Complaint cannot be clearer as to its reliance on vicarious liability. These allegations include:

- "Dixon and/or his predecessor, turned a blind eye to **his subordinates who retaliated** against disabled prisoners, including Plaintiff, for exercising their First Amendment rights. Dixon knew that his **subordinates would act unlawfully**, and he failed to stop **them from doing so**." [Doc. 25, ¶ 135 (Emphasis added.)]

23

- "Dixon, or his predecessor, authorized his **agents and employees to act for him when they committed** the ADA violations alleged herein. Defendant Dixon, or his predecessor, had control over its agents and employees when they committed the ADA violations alleged herein. [Doc. 25, ¶ 136 (Emphasis added.)]

- "His **agents and employees** accepted the undertaking of **acting on behalf of him when they committed** the ADA violations alleged herein and had knowledge of the consequences of their ADA violations. [Doc. 25, ¶ 137 (Emphasis added.)]

- "The ADA violations alleged herein and **committed by Defendant's agents and employees** were done while acting within the course and scope of their employ and/or agency with FDC." [Doc. 25, ¶ 138 (Emphasis added.)]

Plaintiff's own characterization of his claim makes clear he is relying on vicarious liability to support his ADA/RA claim against Defendant Dixon. Furthermore, Plaintiff failed to depose any corporate representatives of FDC to support this claim. This theory of vicarious liability is impermissible and summary judgment is required.

## V.    CONCLUSION

Plaintiff is now continuing his repetitive series of lawsuits based around the same classification of violations with the same category of players and admits to having more lawsuits in the works despite settling his claims against Defendants, including past, present, and future claims which may arise. Plaintiff cannot proceed on these recycled claims or has failed to meet the requisite elements as detailed above.

Wherefore, Defendant Dixon respectfully requests this Court enter final summary judgment in his favor as to Plaintiffs' Amended Complaint and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Thomas Buchan*
Thomas Buchan
Florida Bar No. 1010923
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Tom@jsh-pa.com
*Attorneys for Defendant Dixon*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF on April 15, 2024.

*/s/ Thomas Buchan*
Thomas Buchan