IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT IN AND
FOR LEON, FLORIDA

DISABILITY RIGHTS FLORIDA, INC.,      CASE NO.: 2019-CA-2825

     Plaintiff,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS, an agency of the State
of Florida,

     Defendant.

_____/

## SETTLEMENT AGREEMENT

     The Plaintiff, DISABILITY RIGHTS FLORIDA, INC., ("DRF") and the Defendant, the

FLORIDA DEPARTMENT OF CORRECTIONS, ("FDC") (collectively the "Parties"), have

entered into this Settlement Agreement ("Agreement") as a plan for settling this litigation. Both

Parties agree to comply with the following terms. As set forth below, this Agreement is a contract

enforceable in state court should the FDC significantly breach this Agreement. That this

Agreement is not a Consent Decree is a key factor in FDC's willingness to enter into this

Agreement.

### I.    BACKGROUND

     DRF initiated this action by filing a Complaint on December 4, 2019. A Second Amended

Complaint was filed on July 27, 2021. In the Second Amended Complaint, DRF alleges that FDC

has breached a settlement agreement entered into by the parties on July 7, 2017. FDC responded

to DRF's allegations by denying all liability. This Agreement is the product of multiple settlement

1



conferences, and the Parties believe that this Agreement represents a fair settlement of DRF's claims.

## II. DEFINITIONS

1. **Accommodation.** For purposes of the Agreement, an "accommodation" means an aid, device, modification, or service that is not assigned by the Office of Health Services (OHS) through an individualized clinical assessment, and therefore can be assigned by the ADA Team.

2. **Approved Accommodation**. For purposes of the Agreement, "approved accommodation" means a reasonable accommodation, aid, device, modification, or service approved by the ADA Team.

3. **Approved Medical Device**. For purposes of the Agreement, "approved medical device" means a clinically indicated aid, device, modification, or service approved by OHS after an individualized assessment.

4. **ADA Coordinator**. For purposes of the Agreement, "ADA Coordinator" means the central office employee assigned to coordinate FDC's efforts to comply with and carry out its responsibilities under the provisions of Title II and Title III of the ADA and Section 504 of the Rehabilitation Act of 1973

5. **ADA Team**. For purposes of the Agreement, "ADA Team" means the ADA Coordinator, his or her staff members, and the institutional staff members designated to address ADA issues.

6. **Captioned Telephones**. Abbreviated herein as "CapTels." This means captioned telephones or successor technology.

7. **Classification Grade**. For purposes of the Agreement, "classification grade" means the impairment or disability classification grades assigned by OHS.

2

8.      **Clinically Indicated**. For purposes of the Agreement, "clinically indicated," as it relates to the assignment of medical devices, will be based on a determination by OHS, taking into consideration the inmate's stated preferences, the results of an individualized assessment, the opinion of any outside specialist, and any medical devices used by the inmate prior to incarceration or previously approved by OHS.

9.      **Compelling Security Concern.** For purposes of this Agreement, a "compelling security concern," as it relates to an approved accommodation or approved medical device that has been provided or may be provided to a Covered Inmate, exists if the approved accommodation or approved medical device cannot be adequately searched by FDC for contraband, is contraband, has been used as a weapon, can be weaponized to harm the Covered Inmate or others, or can be used to facilitate an escape. Documentation of the compelling security concern shall be maintained.

10.     **Complaint Procedures**. For purposes of this Agreement, "Complaint Procedures" means FDC's established channels for resolution of inmate complaints, as may be amended from time to time, and includes the quarterly disabled inmate meetings, sick-call, medical encounters, reasonable modification or accommodation requests, grievances, and appeals of grievances. All inmates, regardless of impairment classification, will remain free to utilize the Complaint Procedures to assert that they have been improperly denied access to an accommodation, medical device, or program.

11.     **Confiscation**. For purposes of this Agreement, a "confiscation" occurs when FDC removes a Covered Inmate's approved accommodation or approved medical device because of a compelling security concern. The term "confiscation" does not include OHS's discontinuation of approved medical devices that occurs pursuant to a health determination.

3

12.     **Covered Inmates**. For purposes of this Agreement, Covered Inmates means any Deaf/Hard of Hearing (D/HOH) inmate, Inmate with Vision Disabilities (IVD), or Inmate with Mobility Disabilities (IMD).

13.     **Days.** Unless otherwise specified, references to "days" will be to calendar days. If the last day of the specified period falls on a weekend or holiday, the due date will be the next business day.

14.     **Deaf/Hard of Hearing Inmates**. Abbreviated herein as "D/HOH inmate." This means an FDC inmate with a disability that substantially limits the inmate's hearing, as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102.

15.     **Designated FDC Liaison**. For purposes of this Agreement, the "designated FDC Liaison" means the individual FDC identifies to DRF, in writing, as the point of contact for all matters related to or arising out of this Agreement.

16.     **Effective Date**. For purposes of this Agreement, "Effective Date" means the latest date on the signature page of this Agreement.

17.     **Inmate Assistant**. Abbreviated herein as "IA." This means appropriately trained inmates that may be assigned to Covered Inmates, either as part of a pool of IAs or an individual assignment.

18.     **Inmate Meeting**. For purposes of this Agreement, "Inmate Meeting" means the meetings between DRF and FDC described in paragraph 73.

19.     **Inmates with Mobility Disabilities**. Abbreviated herein as "IMD." This means an FDC inmate with a disability that affects the inmate's ability to move, which substantially limits the inmate's major life activities of walking, standing, bending, performing manual tasks, lifting,

4

reaching, or sitting, as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102 and 28 C.F.R. § 35.108.

20.   **Inmates with Vision Disabilities**. Abbreviated herein as "IVD." This means an FDC inmate with a disability that substantially limits the inmate's seeing, as defined in the Americans with Disabilities Act, 42 U.S.C. § 12102.

21.   **Hadley Institute for the Blind and Visually Impaired**. Abbreviated herein as "Hadley." This means the Hadley Institute for the Blind and Visually Impaired.

22.   **Health Determination.** For purposes of this Agreement, a "health determination" exists when, after an individualized assessment of an inmate, OHS makes a determination based on professional medical judgment, the inmate's medical history, medical needs, current diagnoses and passes, whether a device was previously approved by OHS, and the inmate's stated preferences, that a medical device is or is not clinically indicated.

23.   **Medical Device**. For purposes of this Agreement, a "medical device" means a device that can be assigned by OHS as a result of an individualized clinical assessment.

24.   **Office of Health Services**. Abbreviated herein as "OHS." This means the division responsible for overseeing the delivery of FDC's health care services, and, at the institutional level, this means FDC's contracted health services provider(s).

25.   **Pass**. For purposes of this Agreement, "pass" means a written authorization or badge for an approved accommodation or approved medical device.

26.   **Progress Meeting**. For purposes of this Agreement, "Progress Meeting" means the quarterly meetings between DRF and FDC, described in paragraph 72.

27.   **Qualified Inmate with a Disability.** For purposes of this Agreement, a "Qualified Inmate with a Disability" refers to a Covered Inmate who, with or without reasonable

5

modifications to rules, policies, or practices, the removal or architectural, communication, or transportation barriers, or the provision of an accommodation or medical device, meets the essential eligibility requirements of the department for the department program(s), service(s), or activity/activities at issue.

28. **Qualified Interpreter.** For purposes of this Agreement, a "qualified interpreter" means a sign language interpreter who, via a video remote interpreting service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, see 28 C.F.R. § 35.104. For the purpose of this Agreement, a Certified Deaf Interpreter is also considered a qualified interpreter. Preference will be given to interpreters who hold a valid certification from the National Registry of Interpreters for the Deaf. FDC will exercise reasonable efforts to utilize interpreters who hold a valid certification from the National Registry of Interpreters for the Deaf in hiring or contracting with interpreters.

29. **Reasonable Modification or Accommodation Request.** Abbreviated herein as "RMAR." This means a request, in writing, submitted by an inmate who is seeking an accommodation, specifying the type of accommodation requested and the purpose for the accommodation. Inmates who cannot put their requests in writing will make their verbal or sign language requests to classification, security, or to the ADA Team, who will document the request in writing.

30. **Special Housing.** For purposes of this Agreement, "special housing" means administrative confinement, disciplinary confinement, protective management, or close management.

6

31.     **Talking Book Program.** For purposes of this Agreement, "Talking Book Program" means the Florida Division of Blind Services' Talking Book Program.

32.     **Teletypewriters.** Abbreviated herein as "TTYs." This means a device that allows D/HOH Inmates, or those with speech impairments, to use a telephone to type messages, to include a successor technology.

33.     **TIPS Line.** For purposes of this Agreement, "TIPS line" means FDC's Prison TIPS program, which is used for the collection of intelligence on criminal activity inside and outside of the Florida prison system. As part of the TIPS program, callers are not required to identify themselves and caller identity is maintained as confidential.

34.     **Video Remote Interpreting.** Abbreviated herein as "VRI." This means an interpreting service that uses video conference technology over dedicated lines or wireless technology offering a high-speed, wide-bandwidth video connection that delivers high-quality video images as provided in 28 C.F.R. § 35.160(d).

35.     **Video Enabled Devices.** This means a device that can be used to make a) point to point video calls, and b) calls through the Video Relay Service.

### III.     COMPLIANCE REQUIREMENTS

36.     **Initial Identification of Disabilities and Accommodations and Medical Devices at Reception**. At Reception, FDC will make reasonable efforts to identify whether an inmate has a hearing, vision, or mobility disability and will assign a classification grade, if appropriate.

A. The initial determination of whether an inmate is a "Covered Inmate" will be made by OHS, either at reception or at the institution where the inmate is assigned, based upon the inmate's record of an existing physical disability or individualized assessment and clinical evaluation of the inmate.

7

B.  If it is determined that the inmate is a Covered Inmate, FDC will determine the extent of the disability. Results of this assessment will be documented and placed in the Covered Inmate's medical record, documented in FDC's electronic system (currently called "Offender Based Information System" or "OBIS"), and will be made available as needed, to FDC staff responsible for the inmate's medical care, programs, or custody and supervision at both Reception and the permanent prison.

C.  FDC will conduct an individualized assessment of the need for accommodations and approved medical devices required by the Covered Inmate. This includes a determination by OHS as to which medical devices are clinically indicated and a determination by the ADA Team as to which accommodations are approved.

D.  For D/HOH inmates, FDC will evaluate the verbal and written communication skills, reading level, and, where appropriate, the inmate's proficiency in sign language (including American Sign Language) or lip-reading/speech-reading by an appropriate professional. The sign language evaluation must be completed by a qualified interpreter.

E.  For IVDs, FDC will evaluate the visual acuity of an inmate to ascertain their ability to access print, video, audio, and other materials to determine the format needed to provide access to such materials.

37.  **"P1" and "P2" Inmates**. FDC will amend HSB 15.03.13 ("Assignment of Health Classification Grades to Inmates") to specify that the "P2" classification grade means an inmate with a short-term physical impairment not to exceed one year or an inmate with significant permanent ambulatory instability that does not rise to the level of a PD3. Inmates classified as "P2" will be evaluated annually to determine the appropriateness of the classification grade. Inmates classified as "P1" or "P2" will not presumptively be entitled to being located at an Exhibit

A facility/dormitory/wing, but, if any such inmate submits an RMAR seeking to be located at an Exhibit A facility/dormitory/wing, the request will not be denied solely on the basis of the inmate's classification grade. Moreover, inmates classified as "P1" or "P2" will not be presumptively denied an accommodation or medical device request based solely on their grade; any such inmates will be afforded an individualized evaluation to determine the need for an accommodation regardless of their classification grade.

38.     **Changes In Classification Grade**. If a Covered Inmate's classification grade is downgraded, FDC will document in the Covered Inmate's medical record the reason for the downgrade. The documentation will be available to DRF upon request.

A. For D/HOH inmates, in conjunction with its new health services contract, anticipated to begin in July 2023, FDC will require its vendor to provide the following: if after undergoing the on-line hearing test a D/HOH inmate's hearing loss is downgraded to reflect less hearing loss, resulting in the change of classification grade, the inmate will undergo audiological testing by an onsite audiologist. Before July 2023, FDC will make reasonable efforts to do this.

39.     **Location of Covered Inmates**. FDC will locate Covered Inmates classified as PD3, HD3, HD4, HD5, ED3, ED4, and ED5 in the facilities/dormitories/wings listed in Exhibit A. FDC will not transfer a Covered Inmate classified as PD3, HD3, HD4, HD5, ED3, ED4, and ED5 to a facility that is not listed on Exhibit A unless the inmate requests a transfer. If a Covered Inmate submits an RMAR to request a transfer to a facility that is not listed on Exhibit A, FDC will provide the name and DC number of that inmate to DRF as soon possible but no later than the next scheduled Progress Meeting.  D/HOH inmates and IVD inmates will not be denied placement at a facility or dorm listed on Exhibit A that is otherwise accessible to them solely because the long-term architectural modifications have not been completed at that facility or dorm. The services

9

contemplated in this Agreement for the Covered Inmates will be provided at the facilities listed in Exhibit A. FDC has the discretion to revise Exhibit A; however, it must maintain approximately the same percentage of facilities/dormitories/wings as ADA accessible, keeping the same or similar variation in geography, mission, and work/educational/vocational opportunities, as presently exists with respect to the facilities/dormitories/wings listed in the initial version of Exhibit A associated with this Agreement. Prior to revising Exhibit A, FDC will provide DRF with a draft revision.  DRF will have 30 days to provide comments on the proposed revision.

40.   **Clustering**.  FDC will make reasonable efforts to avoid "clustering" Covered Inmates at certain institutions, and to ensure that Covered Inmates can be housed at any facility/dormitory/wing listed on Exhibit A.  Aside from the restrictions listed on Exhibit A, FDC will not further limit where Covered Inmates may be housed on the basis of their disability.

41.   **Transfers**. FDC will make reasonable efforts to ensure that, during transfers or temporary housing assignments, Covered Inmates are housed in facilities/dormitories/wings that can accommodate their disabilities.

42.   **Procedure for Requests for Accommodations**. If a Covered Inmate submits an RMAR, FDC will consider the request in good faith, interview the inmate if necessary, and refer the inmate to OHS or classification as needed. If a Covered Inmate submits an RMAR or grievance that requires an appointment with OHS and/or classification, FDC will forward the request to the appropriate department with instructions to follow up with the Covered Inmate.

43.   **Use of Classification Grades**. Subject to paragraph 39 (Location of Covered Inmates), FDC will not deny access to accommodations, programs, or medical devices solely because of the inmate's classification grade (or lack thereof).

44.     **Periodic Re-assessments of Covered Inmates.** At least once per year, FDC will conduct periodic re-assessments of Covered Inmates to determine whether any changes in accommodations are necessary. These re-assessments will include, but not be limited to determining whether the Covered Inmate is receiving effective accommodations for his or her disability, whether the Covered Inmate should be approved for any other accommodations, and whether an appointment with OHS is necessary for the assessment of clinically indicated medical devices. Any such re-assessment will be documented in the inmate's medical file and available to DRF upon request.

45.     **Other Requests for Accommodation or Medical Devices.** If a Covered Inmate requests an accommodation or medical device that is not covered elsewhere in this Agreement, FDC will provide the accommodation or medical device to the Covered Inmate unless: (1) FDC has a documented compelling security concern, (2) the inmate already has an effective accommodation or medical device, (3) the accommodation or medical device would cause an undue financial or administrative burden to FDC, (4) another reasonable and effective accommodation or medical device is available,  (5) the medical device is not clinically indicated; or (6) the accommodation or medical device would constitute a fundamental alteration of an identifiable FDC program, service, or activity. The reasons for the denial must be documented in writing in the Covered Inmate's record.

46.     **Passes**. FDC will issue passes to Covered Inmates to implement any approved accommodations or approved medical devices. Passes for inmates with permanent disabilities (inmates classified as PD3, ED3, ED4, ED5, HD3, HD4, HD5) and/or inmates with significant permanent ambulatory instability that are classified as P2, will be issued permanently, absent a documented compelling security concern or documented health determination that would render a

11

permanent pass not clinically indicated. A Covered Inmate will not lose his or her passes, approved accommodations, or approved medical devices solely because of transfer to another facility. Covered Inmates will be allowed to keep their approved accommodations or approved medical devices in special housing, absent a documented compelling security concern.

47.     **No Co-Pay or Charge for Approved Accommodations or Approved Medical Devices**. If FDC refers an inmate to OHS to assess the need for an accommodation or medical device, no medical co-pay will be charged to the inmate. No charges will be assessed to an inmate for approved accommodations or approved medical devices, including batteries necessary to use an approved accommodation or approved medical device.

48.     **Confiscation of Approved Accommodations and Approved Medical Devices**. FDC will not confiscate a Covered Inmate's approved accommodation unless there is a compelling security concern. All confiscations of Covered Inmates' approved accommodations must be approved by the institutional warden who will, in conjunction with the confiscation, confer with a member of the ADA Team and the Chief Health Officer of the institution. If an approved accommodation is confiscated, a Covered Inmate will be required to submit an RMAR or grievance to request a new accommodation. All confiscations will be documented and such documentation provided to DRF upon request.

A.     If an approved medical device is confiscated for a compelling security concern, the confiscation must be approved by the institutional warden who will, in conjunction with the confiscation, confer with a member of the ADA Team and the Chief Health Officer of the institution. If an approved medical device is confiscated for a compelling security concern, a Covered Inmate can submit a request for sick call to request a new medical device.

12

B. If FDC determines that any accommodation or medical device listed in the Agreement poses a compelling security concern in all situations, and decides to categorically deny access to the accommodation or medical device, FDC will communicate this to DRF within 30 days of making such a determination, and shall work with DRF to determine an appropriate alternative accommodations or medical devices. The Parties will then make efforts to amend this Agreement accordingly.  If the Parties cannot agree to an appropriate alternative accommodation or medical device, FDC will have the final authority to select an appropriate alternative accommodation or medical device.  If FDC unreasonably refuses to consider DRF's recommended appropriate alternative accommodation or medical device, it shall be a breach of this Agreement.

49.    **Discontinuance of Approved Medical Devices**. If OHS determines that a Covered Inmate's approved medical device is no longer clinically indicated, OHS will provide a detailed explanation for the discontinuance in the inmate's medical record, unless the approved medical device was provided on a temporary basis due to an acute injury or trauma or as a post-operative measure. Devices provided on a temporary basis will be provided to inmates as long as clinically indicated. FDC will advise OHS to consider the age of the inmate in determining the length of time the provision of a medical assistive device may be clinically indicated. The documentation will be available to DRF upon request. OHS will not discontinue an approved medical device without seeing the inmate in a medical encounter or sick call.

A. Approved mobility medical devices, such as wheelchairs, canes, crutches, walkers, and prosthetics will not be discontinued unless it was issued to assist with a temporary impairment of a major life activity (e.g. cane or crutches for a broken leg), if the impairment the medical device was issued to assist no longer exists and cannot be reasonably expected to return (e.g. physical therapy makes use of a cane no longer needed in the future), or there is a documented compelling

13

security concern or documented health determination that would render a permanent pass not clinically indicated.

50.   **Work/Educational/Vocational Programming**. The work/educational/vocational programming available for Qualified Inmates with a Disability is listed in Exhibit B. FDC has the discretion to revise Exhibit B; however, it must make reasonable efforts to maintain approximately the same variation in work positions, vocational opportunities, and educational opportunities as reflected in the initial version of Exhibit B associated with this Agreement. FDC will notify DRF at the earliest possible Progress Meeting if Exhibit B is modified. It is not a breach of this Agreement if FDC discontinues a work/vocational/educational program if the discontinuance applies to both Covered and non-Covered Inmates equally.

A. FDC will not deny a Qualified Inmate with a Disability access to any work, vocational, or educational programming listed in Exhibit B on the basis of that inmate's disability.

B. If a Qualified Inmate with a Disability applies for a work position, a vocational opportunity, or an educational opportunity listed in Exhibit B, and that inmate meets the skill, experience, and education requirements, medical restrictions not related to the Covered Inmate's disability, custody level, criminal history and time remaining on sentence requirements, FDC will not deny that individual the position or opportunity without documentation by a member of the ADA Team. A member of the ADA Team will document whether (1) FDC cannot make reasonable modifications in policies, practices or procedures to permit the inmate to meet the essential functions of the position or opportunity, and/or (2) the modifications fundamentally alter the nature of the program, service or activity.

14

C.   Enrollment in courses offered by Hadley will not serve as the basis for denying an IVD inmate access to work, vocational, or educational programming that would otherwise be available to a Qualified Inmate with a Disability.

D.   Within six months of the Effective Date, and every six months thereafter, FDC will conduct an audit of the Covered Inmates that are designated as ineligible for transfer to a work camp and will provide the results of the audit to DRF within thirty (30) days of completing the audit.

E.   Within six months of the Effective Date, FDC will conduct an audit of any Covered Inmates who submits an RMAR or grievance asserting that he or she is a Qualified Inmate with a Disability who was denied access to a work, vocational, or educational programming opportunity, and will provide the results of the audit to DRF within thirty (30) days of completing the audit.

F.   FDC will open a work camp in Region 4 accessible to Covered Inmates if and when it is reasonably possible to do so.

G.   FDC will open or maintain incentivized dorms for both male and female Covered Inmates if and when it is reasonably possible to do so. If any incentivized dorms are available for inmates, then FDC will ensure that at least one is accessible for male Covered Inmates and one is accessible for female  Covered Inmates.  In addition, the incentivized program at Everglades CI will be made accessible to Covered Inmates.

H.   FDC will establish agreed-upon programs (including a veterans' program and a PRIDE program) at certain agreed-upon ADA facilities. The Parties shall agree to the programs on or before November 29th, 2021, which will be memorialized as Exhibit "B." This paragraph shall not be construed as limiting the type of programs that can be made available by FDC to Covered Inmates.

51.    **Inmate Assistants.** FDC will create and use reasonable efforts to maintain a pool of trained IAs at each facility listed on Exhibit A ("IA Pool"). "Reasonable efforts" for purposes of this section will include at a minimum implementing a centralized tracking system to monitor training, assignment, and retention of IAs, and engaging in reasonable recruiting efforts. FDC has discretion to not use the pool system at institutions with a small number of Covered Inmates who can be assigned individual IAs.

A. IVDs and IMDs will have access to the IA Pool or an individually-assigned IA, if clinically indicated. A request for an IA from an inmate classified as P1 or P2 will not be denied based solely on the inmate's classification grade. If an inmate requests a specific IA, FDC will give strong consideration to that request.

B. FDC will ensure there is a system in place to address the needs of Covered Inmates who have an approved IA while in special housing.

C. Natural Supports. A Covered Inmate shall not be punished on the sole basis that he or she asked another inmate for help due to his or her disability, or accepted such help, and an inmate shall not be punished on the sole basis that he or she provided such help.

52.    **IA Training and Monitoring.** FDC will make reasonable efforts to ensure each IA has the ability to perform his or her assigned duties. IAs will receive initial training as to their assigned duties, which will be designed to educate IAs to (A) a Covered Inmate's needs, (B) the use and evaluation of impaired inmate assistants, (C) general information as to how to effectively work with Covered Inmates, (D) functional implications of being deaf/hard of hearing, blind/visually impaired, or having a mobility disability; and (E) common misunderstandings about an individual's remaining sight, hearing, and mobility.

16

A.  Training for IAs that assist IVD inmates will also include topics such as guiding, assisting with talking watches, assistance in recreational activities, reading aloud, assistance at meals, traveling stairs, and maintaining confidentiality of information.

B.  Training for IAs that assist with IMDs will also include topics such as safely pushing a wheelchair, helping someone to transfer to another seat, and assistance with daily life activities.

C.  FDC will periodically evaluate IAs for fulfillment of assigned duties and performance criteria, and FDC will consider any information provided by the Covered Inmate as part of the evaluation.

D.  FDC will continue to investigate options to incentivize inmates to serve as IAs and make reasonable efforts to implement them.

53.     **Health, Safety, & Welfare**. FDC reserves the right to temporarily suspend a Covered Inmate's access to any approved accommodation or approved medical device to protect the health, safety, and welfare of inmates or staff.

**Deaf or Hard of Hearing Inmates**

54.     **Video Enabled Devices**. FDC will install and maintain video enabled devices as indicated on Exhibit A, including in classification for confidential calls, by June 30, 2022. FDC will investigate all reasonable options, including using tablets and placing calls through classification using the legal calls procedure, to provide access to the TIPS line through a video enabled device. FDC will provide DRF quarterly video enabled device testing reports of a representative sample of devices, commencing with a report for third-quarter 2022.

55.     **Captioned Telephones**. FDC will provide CapTels for Covered Inmates who can speak but cannot hear on the telephone. FDC shall conduct a pilot program for the CapTels

beginning on or before December 1, 2021 (the "Pilot Program"). Following the Pilot Program, by June 1, 2022, FDC and DRF will agree on a list of institutions specified on the attached Exhibit A where captioned telephones must be installed. FDC will install and maintain captioned telephones at half of the agreed-upon facilities by December 31, 2022, and the other half by June 30, 2023. FDC will investigate all reasonable options and work with its vendor to provide CapTel access to the TIPS line. FDC will provide DRF quarterly CapTel testing reports of a representative sample of at least 25% of the devices, commencing in third-quarter 2023.

56.    **Teletypewriters.** FDC will install and maintain TTYs as indicated on Exhibit A. Following the Pilot Program, FDC and DRF will agree on a list of institutions specified on Exhibit A where TTYs must be installed and/or maintained. FDC will provide DRF quarterly TTY testing reports of a representative sample of at least 25% of the devices, commencing with a report for second quarter 2022. Following the transition to CapTels, FDC will provide DRF annual TTY testing reports, for any TTY that remains in use. D/HOH inmates shall be permitted the lesser of two times the normal time or an hour to use the TTY. The FDC shall ensure that staff is trained on how to operate the TTYs. Broken TTYs will be repaired or replaced within thirty (30) days. The TTY paper will be replaced when necessary. While the TTY is unavailable due to needed repairs, FDC will ensure that the inmate has access to another TTY or CapTel. The FDC shall ensure that D/HOH inmates have access to the TIPS line using a TTY. For legal calls, a TTY, for which a printout will not be maintained, will be available in another location on the compound which permits privacy.

57.    **Visual Alert Systems/Light Boards.** The FDC will install light boards or other visual alert systems at the facilities and dormitories as specified in Exhibit A by December 31,

18

2022. FDC will provide DRF quarterly testing reports of the lightboards, commencing with a report for second quarter 2022.

58. **Qualified Interpreters: American Sign Language, Oral Interpreters and Transliterators.** FDC will make reasonable efforts to maintain a minimum of five qualified, on-site, staff interpreters. "Reasonable efforts" for purposes of this section will include, at a minimum, regularly advertising, via the MyFlorida Jobs webpage and professional interpreter publications, any vacant positions and setting the current salary for the FDC interpreter position at $55,000-$60,000 per year, exclusive of benefits. The salary can be increased if it is determined to be needed by the FDC.

A. In conjunction with its new health services contract, anticipated to begin in July 2023, FDC will require its vendor to hire at least one qualified on site staff interpreter for medical evaluations and treatment to be located in Region 2. In the interim, OHS will significantly increase its monitoring of its current contract with its current health services vendor to ensure that, prior to the roll out of the new contract, the current health services vendor is fulfilling its obligation to ensure in-person or video remote interpreting services are available as needed for medical appointments.

59. **Access to Qualified Interpreters: American Sign Language, Oral Interpreters or Transliterators**. FDC will make available, at the designated facilities on Exhibit A, a qualified interpreter to any D/HOH inmate whose effective means of communication is sign language or speech-reading/lip-reading in the following situations: (A) medical, dental, and mental health appointments; (B) meetings with classification officers; (C) education programs; (D) substance abuse programs; (E) intake and orientation; (F) disciplinary hearings; (G) work and job training,

19

including at PRIDE; (H) religious services; (I) any training for matters that are outside the routine

day-to-day schedule; (J) PREA training; and (K) any pre-release and re-entry instructions.

    A. FDC will designate a Lead Interpreter to create a mechanism for statewide

interpreting requests, who will oversee the system to provide coverage of interpreting assignments.

    B. FDC will identify current and new D/HOH inmates who need an oral interpreter or

oral transliterators and make available interpreters for those inmates.

    C. The phrase "make available" includes making a qualified interpreter available by

VRI, or by an on-site appearance. VRI will not be utilized if:

        i. A qualified interpreter is available to provide onsite interpretation;

        ii. The event at issue is long or complex;

        iii. The individual has a secondary disability (such as low vision or physical mobility) that may impede the ability of the inmate to fully access the communications; or

        iv. The individual has cognitive, psychiatric, or linguistic difficulties which impede effective communication through VRI.

    D. To the extent that FDC provides qualified interpreters via VRI services, FDC will

provide as required in 28 C.F.R. §35.160 (d):

        i. Real-time, full-motion video and audio over a dedicated high-speed, wideband width video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;

        ii. A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;

        iii. A clear, audible transmission of voices;

        iv. Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI; and

  v. Use of the VRI equipment in a location which safeguards the inmate's privacy, to the same extent as any non-disabled inmate's privacy is protected.

  60. **Other Accommodations and Medical Devices**. FDC will continue to provide D/HOH inmates other approved accommodations and approved medical devices including modified use of handcuffs to ensure D/HOH inmates whose effective means of communication is sign language can have use of their hands, provision of hearing aids, hearing aid batteries, and hearing aid repair free of charge, vibrating watches, open or closed captioning, and FM transmitters and receivers, absent documented compelling security concerns. Except when an inmate is being transported, FDC shall, as a reasonable accommodation, handcuff in the front D/HOH inmates whose effective means of communication is by sign language or writing, and shall only handcuff those inmates behind the back when there is a compelling security reason to do so. During disciplinary hearings, FDC will ensure that a D/HOH inmate whose effective means of communication is by sign language or writing, shall have sufficient freedom of movement for their hands. This paragraph shall not be construed as limiting the type of accommodations or medical devices that can be provided by FDC.

**Inmates with Vision Disabilities**

  61. **White Canes**. FDC will offer white canes as an available medical device for those IVD inmates who are totally or legally blind, or those who have low vision with the inability to refract adequately and have difficulty safely and independently moving on, and negotiating, steps, curbs, terrain, and facilities. White cane passes will be issued permanently. Covered Inmates in special housing will be entitled to keep their white canes, absent a documented compelling security concern or documented health determination.

A. The length of the white cane will be based on an individual's height, and generally should stand at least at shoulder height, but the preference of the inmate will be considered.

B. FDC will make reasonable efforts to replace white canes within one week. FDC will provide an alternative approved medical device or accommodations in the interim.

C. If an inmate files an RMAR for a white cane, it will be forwarded to OHS with instructions for OHS to conduct an in-person evaluation of the inmate and to issue the white cane if the inmate is totally or legally blind, or has low vision with the inability to refract adequately and has difficulty safely and independently moving on, and negotiating, steps, curbs, terrain, and facilities, or is otherwise clinically indicated.

D. Within six months of the Effective Date, FDC will conduct an audit of current E3s, E4s, and E5s to ensure those inmates have been issued white canes if clinically indicated and that the inmate's white cane is at least at shoulder height, by scheduling individual medical evaluations for all E3s, E4s, and E5s, and providing documentation of the evaluations to DRF.

E. There will be a presumption that white canes will not be taken away in confinement unless there is a documented compelling security concern.

62. **Talking Book Program**. The Talking Book Program will be an available accommodation to IVDs. FDC will assist IVDs with registering for the Talking Book Program, selecting Talking Book Program resources, and sending and receiving Talking Book Program resources. An IVD's access to resources with regard to the number of resources that can be taken out at one time, the use of the Talking Book players, etc. will be in accordance with the policies of the Talking Book Program.

A.  FDC will revise its policy to be consistent with the federal regulations and clarify that access to the Talking Book Program will not be denied solely based on the inmate's classification grade.

B.  Inmates that have been denied access to the Talking Book Program or were suspended from the Talking Book Program may submit a RMAR to be admitted or reinstated into the Talking Book Program, and DRF may submit a list of inmates requesting admission or reinstatement. FDC will review any such requests received and will not deny admission or reinstatement to any inmate solely on the basis of his or her classification grade.

63.   **Correspondence Courses from Hadley**. Hadley will be an available accommodation to IVDs. FDC will assist IVDs with registering for the Hadley courses, selecting Hadley courses, and sending and receiving Hadley resources. An IVD's access to Hadley resources will be in accordance with the policies of Hadley.

64.   **Other Accommodations and Medical Devices**. FDC will continue to provide IVDs other approved accommodations and approved medical devices including talking watches, magnifying glasses, magnifying sheets, font enlargement and screen magnifiers on computers in library, text-to-speech software (JAWS) and training on the use of the software in the law library, additional time to work with assistants (IAs, library clerks, or law clerks) in the law library, large-font call out lists, FM transmitters and receivers, CCTV video magnifiers, recorders/players, key locks, dedicated charging stations for electronic accommodation devices, housing IVDs with reasonable access to IAs, and accommodations and medical devices to access to grievance, RMAR, and DR systems, absent documented compelling security concerns.  When IVDs are housed in open bay dorms, they shall receive appropriate accommodation for access to the bathroom, which can include orientation to the dorm, a clear path to the bathroom, and, if

practicable, a bed close to the bathroom.  IVD inmates will not be housed on the second floor of dormitories, except for compelling reasons on a temporary basis, or in the event of an emergency. This paragraph shall not be construed as limiting the type of accommodations or medical devices that can be provided by FDC.

**Inmates With Mobility Disabilities**

65.     **Wheelchairs**. FDC will provide wheelchairs to IMDs if a wheelchair is clinically indicated. FDC will utilize an appropriate professional to determine the size and type of wheelchair. An IMD who has been provided a wheelchair as an approved medical device may keep the wheelchair he or she had when he or she entered prison, absent a documented compelling security concern or documented health determination. If that occurs, FDC will provide an alternative medical device if one can be provided without similarly implicating compelling security concerns or health determination. A wheelchair pass will be issued permanently to IMDs and inmates with permanent ambulatory instability that are classified as P2, absent a documented compelling security concern or documented health determination that would render a permanent pass not clinically indicated.

66.     **Wheelchair Repair or Replacement.** FDC will conduct quarterly inspections of wheelchairs assigned to IMDs and inmates with permanent ambulatory instability that are classified as P2, to determine whether the wheelchair is in need of repair or maintenance. Additionally, these inmates may apply to sick call to have their wheelchair repaired or replaced. If repair or replacement is needed, FDC will make reasonable efforts to complete the repair or replacement within sixty (60) days of when it is made aware of the need for the repair or replacement, unless due to the severity of the repair more time is necessary, in which case FDC will make reasonable efforts to ensure the repair or replacement is completed within ninety (90)

24

days. In the interim, the IMD will be provided with a temporary wheelchair. If an appropriate temporary wheelchair is not available, FDC will make reasonable efforts to expedite the repair or replacement of the inmate's wheelchair, to be completed within fifteen (15) days. To the extent these timelines cannot be met, FDC will make reasonable efforts to communicate to the inmate in writing why it cannot meet these timelines (e.g., parts shipment is delayed, etc.). All such communications will be available to DRF upon request.

67.     **Other Accommodations and Medical Devices.** FDC will continue to provide IMDs other approved accommodations and approved medical devices including prosthetic devices (and quarterly inspections of prosthetic devices), canes, walkers, walkers with seats, trapeze bars, orthopedic shoes and socks, braces, wedges, appropriate mattresses, cushions, wheelchair gloves, elevated lockers, housing in the same dorm as assigned IA (when not in special housing), grab bars, elevated toilets, shower chairs and seats, shower wands, and privacy screens, absent documented compelling security concerns. Finally, this paragraph shall not be construed as limiting the type of accommodations or medical devices that can be provided by FDC.

**Architectural Modifications**

68.     **Recreational Tracks.** Existing recreational tracks at the facilities listed on Exhibit A, that are used for activities such as running and walking by inmates, will be paved so that they can be safely traversed by IVDs and IMDs. FDC has completed or will complete the track paving for Gadsden Re-Entry, Wakulla CI, Wakulla Annex, South Florida Reception Center Main, South Florida Reception Center South, Dade CI, Everglades CI, Everglades Re-Entry, Columbia CI, Columbia Annex, Zephyrhills CI, Florida Women's Reception Center, Lowell CI, Lowell Annex, Baker Re-Entry, Reception and Medical Center, New River Work Camp, and Santa Rosa Work

25

Camp on or before June 30, 2022. FDC will complete the remaining track paving at the remaining facilities in Exhibit A by June 30, 2023.

69. **Short-Term Architectural Modifications**. FDC will complete any remaining short-term items highlighted in yellow by December 31, 2022, as identified in Exhibit D. By June 30, 2023, VRL Architects Inc. ("VRL"), or a successor architect approved by both Parties, will conduct inspections to verify that the short term-items have been properly remedied and will provide copies of its reports to FDC and DRF as soon as reasonably possible. Exhibit "D" will be agreed upon on or before November 29, 2021.

70. **Long-Term Architectural Modifications**. FDC will complete one-third of the long-term architectural modifications highlighted in blue, as identified in Exhibit D (which will be memorialized on or before November 29, 2021), by December 31, 2023; two-thirds of the long-term architectural modifications by December 31, 2025; and the remaining long-term architectural modifications by December 31, 2027. VRL, or a successor architect approved by both parties, will conduct inspections within 90 days of the completion deadlines and issue a report to both Parties.

### IV.    IMPLEMENTATION OF COMPLIANCE REQUIREMENTS

71. **Agreement to Implement.** The Parties agree that the compliance requirements of the Agreement resolve all issues which have been raised in the Second Amended Complaint and should be implemented.

72. **Progress Meetings.** Until termination of the Agreement, FDC and DRF will meet quarterly to discuss FDC's implementation of the compliance requirements of the Agreement, including but not limited to what requirements have been met and not met. The meetings will be held in Tallahassee, Florida, at a location chosen by FDC, although the location and city may be adjusted with the consent of both Parties, or the meetings may be held by videoconference with

the consent of both Parties. DRF will notify FDC of topics it would like to discuss at least two weeks in advance of the meeting. DRF may raise inmate-specific issues at these progress meetings, if those issues are identified at least two weeks in advance of the meeting. FDC will make available one or more staff members that can speak directly to any topic DRF identifies in advance of the meeting. FDC and DRF will work collaboratively to address any issues that might arise and suggest improvements to the implementation plan. Within twenty-one (21) days of the progress meeting, FDC will produce to DRF minutes of the meeting. The discussions in the Progress Meetings, and the resulting minutes, will not be used by either Party should additional or subsequent litigation be necessary.

73.      **Inmate Meetings**. In addition to Progress Meetings, DRF may request an in-person meeting concerning specific inmates. The meetings will be held in Tallahassee, Florida, at a location chosen by FDC, although the location and city may be adjusted with the consent of both Parties, or the meetings may be held by videoconference with the consent of both Parties. The Inmate Meeting will be in lieu of communications concerning inmates via email and excel spreadsheets. DRF will notify FDC of the specific inmate concerns it would like to discuss at least two weeks in advance of the Inmate Meeting. FDC will make available at least one staff member from the ADA Team at the inmate's facility and one staff member from OHS to address DRF's concerns. The purpose of this meeting is to identify and address inmate-specific concerns that have not been resolved through the Complaint Procedures. If DRF believes that the Complaint Procedures cannot resolve the inmate-specific complaint or that urgent intervention is required, DRF may raise the issue without going through these processes, but it must provide an explanation specific to the individual complaint; otherwise FDC will expect that the inmate at issue will first utilize the Complaint Procedures before the specific complaint will be considered at an Inmate

27

Meeting. Both FDC and DRF will work collaboratively to address any issues that prevent the Complaint Procedures from being utilized. The discussions in the Inmate Meetings will not be used by either Party should additional or subsequent litigation be necessary.

74. **Monitor**. FDC will competitively procure a monitor and will agree to permit DRF to review and provide input on the competitive solicitation document. The Department will draft the solicitation documents so that, barring administrative challenges, a defect in the specifications necessitating re-procurement, a failure to receive any responsive bids, or other action or event outside of the control of the Department, the solicitation will include the following schedule and terms unless the Parties agree in writing otherwise:

A. The amount of the contract will not exceed $250,000 annually.

B. The monitor will be someone who is knowledgeable on the application of the Americans with Disabilities Act and other disability related laws to prisons and incarcerated people.

C. The monitor will make two visits to Florida per year, with the first visit scheduled to occur in the first half of 2023, the second visit scheduled to occur in the second half of 2023, the third visit scheduled to occur in the first half of 2024, and the fourth visit scheduled to occur in the second half of 2024. On each visit, the monitor will tour a representative sample of four to five prisons in one Region and produce a report within 60 days of each visit. After all regions are visited, the monitor may return to inspect facilities with significant noncompliance, but the cost of monitoring shall not exceed the amount identified in the above paragraph without FDC's written consent. If any of the events mentioned in this paragraph 74 occurs that delays the commencement of the scheduled visits, FDC will notify DRF and take reasonable steps to resolve the issue causing the delay and ensure that the visits begin at the earliest practicable time thereafter.

28

D. During inspections, the monitor will test and inspect the VRS kiosks, video enabled devices, TTYs, CapTels, VRI services/equipment, light boards and visual alert systems, the paved tracks, a sample of wheelchairs, and a sample of white canes.

E. During the inspections, the monitor will interview a sample of Covered Inmates, including those with IAs, inmates who work as IAs, and FDC staff, including the members of the ADA Team, members of OHS including, the ADA Nurse and Chief Health Officer, and any on-site interpreter. The monitor will be permitted to observe quarterly ADA inmate meetings if feasible.

F. After receiving the monitor's report, the Parties will discuss the report at the next scheduled Progress Meeting. The report shall be subject to the terms of paragraph 81.

75. **Reporting.** Every one-hundred and twenty days (120) until the termination of this Agreement (unless another time period is specified elsewhere in this Agreement) FDC will provide to DRF, at no cost and without a request, via email or some other electronic method, copies of the following records:

A. A report, in Excel format, listing every inmate who has been given an "impairment grade" for hearing, vision, or mobility, along with the classification grade that has been assigned to that inmate.

B. A report, in Excel format, of all completed RMAR forms (currently FDC form DC2-530a and DC2-530b) containing the names and DC numbers of each inmate who submitted a request, a summary of the request, the institution the inmate was at when the request was submitted, the institution's recommendation regarding the request, the action taken on the request, and the date of the decision.

29

C. A report, in Excel format, of all disability-related grievance appeals, currently labeled as "code 24," containing the Grievance Appeal case numbers, inmate names and DC numbers, the institution the inmate was at when the Grievance Appeal was received, when it was responded to, when it was mailed, and the disposition.

D. Documentation of sign language interpreter services, which provides the date, inmate name and DC number, and type of event, and whether the services were in-person or via a VRI service, when sign language interpreter services were provided to a D/HOH inmate.

E. All documentation showing the confiscation of any approved accommodation or medical devices as referenced in paragraph 48 (Confiscation of Approved Accommodations and Medical Devices).

76.   **Other Access to Records**. In addition to the regular reports referenced in the previous paragraph, DRF may request, in writing to the designated FDC liaison, the following additional records relating to hearing, vision, or mobility issues: medical, hospital, classification, and utilization management records; grievances (including appeals and responses); RMARs; inspector general reports; and applications for the talking book program; of specific inmates DRF reasonably believes to be Covered Inmates. FDC will promptly acknowledge such requests and provide the requested records, without charge, as soon as practicable after receiving a request. The Parties will enter into a Business Associate Agreement, which will be attached as Exhibit "C" to this Agreement on or before November 29, 2021, which may be modified from time to time, and which authorizes FDC to disclose these records to DRF to the extent that they contain protected health information. The Parties will comply with Exhibit C. Nothing in this Agreement prohibits DRF from serving public records requests or utilizing other authorized means to obtain information that may be related to this Agreement.

77.   **Continued Protection and Advocacy Activities**. The Parties agree that this Agreement in no way limits DRF's protection and advocacy activities, and DRF may continue these efforts during the implementation of this Agreement.

78.   **Deadlines**. If it is determined that any of the deadlines identified herein cannot be met, FDC will provide an explanation to DRF at the earliest possible Progress Meeting, and FDC and DRF will work collaboratively to ensure the projects are completed. However, this reporting does not excuse a missed deadline; missed deadlines shall constitute a breach of the Agreement, subject to the other provisions of this Agreement.

79.   **Specific Inmates Concerns**. The Parties agree that they will continue to meet in order to come to an agreement on whether to provide accommodations, medical devices, access to programming and other services, and appropriate passes for the inmates listed in Exhibit E by November 29, 2021.  FDC will either provide the requested items listed above or provide an explanation to DRF as to why those requested items cannot be provided with respect to all the inmates listed in Exhibit E by the November 29, 2021, deadline.

80.   **Non Retaliation**. FDC will not retaliate against any inmate involved with the litigation resolved by this Agreement, or any inmate who assists with ongoing compliance of this Agreement.

**Procedures for Allegations of Significant Breach of this Agreement**.

81.   The Parties agree that this Agreement represents a written contract binding under state law and enforceable as a contract in state court; however, the Parties have agreed that the sole remedy, should a breach of contract action be filed, would be specific performance. Before any alleged violation of this Agreement is brought in state court, the Parties will, in good faith, attempt to resolve the problem among themselves as follows:

31

A.  <u>Notification Commencement</u>: Any time after twelve (12) months following the Effective Date, if DRF believes that FDC has significantly breached this Agreement, the following Notice and Cure Procedures apply:

B.  <u>Notice of Significant Breach</u>. DRF will endeavor to notify FDC of a significant breach at the earliest possible Progress Meeting. The Parties will work together collaboratively to attempt to reach resolution. If after two Progress Meetings the Parties have been unable to reach resolution, DRF will provide a written Notice of Significant Breach to counsel for FDC alleging that FDC has significantly breached this Agreement and containing sufficient detail for FDC to understand the nature and scope of the significant breach, to investigate it, and to take necessary corrective action. DRF will identify any corrective action it believes FDC should take in the notice.

C.  <u>Response to Notice of Significant Breach</u>. FDC will promptly investigate and take corrective action to remedy the significant breach and will provide a written response to DRF as soon as practicable but not to exceed sixty (60) days after receiving the Notice of Significant Breach. FDC's written response will contain an outline of the steps FDC took to investigate the problem, the results of the investigation and a specific corrective action plan for addressing the stated problem. If FDC's response includes a corrective action plan, FDC will provide to DRF a written update on the status of the results of the corrective action plan every thirty (30) days until either party deems the problem to be resolved or DRF seeks to enforce this Agreement. If no corrective action is anticipated, or if FDC denies a significant breach, FDC's response will include the reason and any statutes, regulations or other bases upon which FDC is relying.

D.  <u>Reply Regarding Significant Breach</u>. The purpose of the Notice and Response described in the two preceding paragraphs is to enable the Parties to work to avoid DRF taking further action to enforce this Agreement. To this end, DRF agrees to promptly advise FDC within

32

fourteen (14) days of receipt of FDC's response whether DRF continues to assert that FDC has significantly breached this Agreement. Adherence to the notice and cure provisions described herein will be a condition precedent to further action to enforce this Agreement as described below.

82.    **DRF's Remedy for FDC's Alleged Significant Breach.** If, after completing the Notice and Cure Procedures described above, DRF, in its sole discretion, believes that FDC has still significantly breached this Agreement, DRF may file a breach of contract action in state court asserting a significant breach, in which event the sole remedy will be for specific performance. To the extent that DRF brings such a breach of contract seeking specific performance as the sole remedy, FDC will not assert sovereign immunity as a defense. If a breach of contract action is pending as of November 1, 2028, the termination of the specific terms of the Agreement at issue in the breach of contract action will be tolled.

83.    **Termination.** Except as provided in the preceding paragraph, or subject to further agreement by the Parties, this Agreement will terminate on November 1, 2028.

84.    **Effect of DRF's Inaction or Action With Respect To A Suit To Enforce.** Failure by DRF to enforce this entire Agreement or any provision thereof with regard to any deadline or any other provision herein will not be construed as a waiver of DRF's right to enforce other deadlines and provisions of this Agreement provided DRF complies with the Notice and Cure Provisions above. Moreover, if DRF seeks to enforce certain provisions in this Agreement by bringing a breach of contract action, and not seeking enforcement of other provisions at the same time, seeking enforcement of select provisions of this Agreement does not void the unchallenged terms of the Agreement and it remain in full force and effect throughout the entire term of this Agreement. Furthermore, DRF is not prohibited from bringing multiple breach of contract actions against FDC.

33

85.    **Force Majeure.** A. Should a war, riot, fire, flood, hurricane, typhoon, earthquake, lightning, explosion, strike, lockout, pandemic, or prolonged shortage of energy supplies substantially impede FDC in its compliance with any of the terms of this Agreement, or substantially impede FDC's timely compliance with any of the terms of this Agreement, the Parties agree that the failure to comply or comply timely will be excused and will not be considered a failure to meet the terms of the Agreement. Should any of the events in this paragraph occur and substantially impede compliance, FDC will make reasonable efforts to restore or alternatively achieve compliance as soon as it is possible to do so.

B. It is not a breach of the Agreement if FDC cannot satisfy a compliance requirement when compliance is rendered impracticable due to undue fiscal burden or impossible due to actions of third parties or unavailability of labor and supplies outside of FDC's control.

C. If FDC contends that an event as described in subparagraph A or B of this paragraph has impeded FDC's compliance, FDC will notify DRF within ninety (90) days and explain a) what deadlines FDC cannot meet, and b) how and a reasonable estimate of when they will attempt to come into compliance. FDC's failure to notify under this paragraph will not result in a waiver of a force majeure defense should future litigation occur, however failure to notify will be treated as a breach of the Agreement.

### V.    OTHER PROVISIONS

86.    **Authentication of Documents.** If DRF files a breach of contract action, the Parties agree that any documents or reports provided by either Party pursuant to this Agreement will be deemed to be authenticated.

87.    **No Admission.** FDC has entered into this Agreement in order to avoid the necessity of trial. Nothing in this Agreement should be construed as an admission of liability by FDC, and

34

the Agreement cannot be used as an admission by either Party in this or any other proceeding. Nothing in this Agreement or FDC's compliance with this Agreement will be construed as an admission or concession by DRF that FDC is in compliance with the Americans with Disabilities Act, the Rehabilitation Act, or any other statutory or constitutional provision.

88.    **Agreement is the Product of Multiple Sessions**. The Agreement is the product of multiple lengthy negotiation sessions and compromise by both DRF and FDC.

89.    **Modification of the Manner in Which FDC Provides Accommodations or Medical Devices to Covered Inmates**. FDC specifically reserves the right to change, alter, amend, or rescind the manner in which it treats Covered Inmates, to the extent that such amendments, alterations, or changes are required by federal law in order to retain or obtain federal funding or to avoid federal sanctions. If DRF believes FDC has violated any constitutional, statutory, regulatory, or other legal provision in a manner that is not covered by this Agreement, DRF specifically reserves the right to bring a separate action against the official capacity agency head of FDC for such alleged violation and FDC agrees to not raise the defense of collateral estoppel or res judicata in an action for prospective declaratory and injunctive relief.

90.    **Modification of Agreement**. Except as stated otherwise herein, should the Parties in the future jointly determine to modify any provision of this Agreement, any modifications must be reduced to writing and signed by both Parties. No modification will take effect unless it is reduced to writing and signed by both Parties. These actions must receive the prior written approval of both Parties, which approval will not be unreasonably withheld or delayed.

91.    **Agreement Binding on Successors**. It is the intent of the Parties that this Agreement will be binding upon the Parties, and their successors, assigns, employees, contractors and agents.

92.   **Agreement Constitutes Entire Agreement**. This Agreement, including any attachments, constitutes the entire Agreement of the Parties with respect to its subject matter and supersedes any and all other prior agreements and all negotiations leading up to the execution of this Agreement, whether oral or written, regarding the subject covered in this Agreement. The Parties acknowledge that no representations, inducements, promises, or statements related to this settlement or the subjects covered in this Agreement, oral or written, have been made by any of the Parties or by anyone acting on behalf of the Parties which are not embodied or incorporated by reference in this Agreement, and further agree that no other agreement, covenant, representation, inducement, promise, or statement relating to this settlement or the subjects covered in this Agreement not set forth in writing in this Agreement have been made by any Party.

93.   **Effective Date of Agreement**. This Agreement will become effective on the Effective Date. It may be executed by the Parties in multiple counterparts and will constitute one final Agreement which will be binding upon each party hereto, notwithstanding the fact that all of the signatures required to effectuate this Agreement do not appear on the same page. An electronic signature will have the same force and effect as an original signature.

94.   **Agreement Subject to Legislative Appropriations**. The Parties recognize that this Agreement includes plans for activities extending beyond the current fiscal year, and fiscal year 2021-2022.

A. The Parties recognize that the continued implementation of this Agreement past July 1, 2022, is dependent upon legislative appropriation. FDC will make reasonable efforts to secure the legislative appropriations necessary to meet the terms of this Agreement, with funding anticipated to commence in the 2022-23 fiscal year. The inability to perform any act required under this Agreement due to non-appropriation of funds, so long as those funds are necessary to

implement or support this Agreement, will not be deemed to be a significant breach by FDC so long as FDC exercises reasonable efforts to secure the appropriations at issue. If FDC does not receive appropriations in subsequent years, DRF may file a separate lawsuit with respect to those issues which it contends amount to systemic violations of federal law and the official capacity agency head of FDC will not raise the defense of collateral estoppel or res judicata in an action for prospective declaratory and injunctive relief.

B. **Compliance with Section 45.062**. Each of the signatories to this Settlement Agreement on behalf of FDC represents that they will take all necessary steps to comply with the requirements of section 45.062, Florida Statutes.

95.     **Release**. Contingent on FDC meeting its obligations under the Agreement, DRF hereby releases and discharges FDC, including its successors and assigns, of and from any claims or causes of action arising out of the matters described in the Second Amended Complaint.

96.     **Voluntary Dismissal**. Ten (10) days after the resolution of the issue of attorneys' fees and costs as specified in the following paragraph, and payment of said fees and costs, the Parties will file a Stipulated Notice of Dismissal with Prejudice.

97.     **Attorneys' Fees and Costs.** The Parties will continue to attempt to resolve the amount of DRF's attorneys' fees and costs, including but not limited to attempting to schedule a mediation. However, should the Parties be unable to resolve the amount of attorneys' fees and costs, the parties have agreed to a subsequent hearing, which will include (1) a determination of a liability percentage; and (2) a determination as to the amount of attorneys' fees and costs to which DRF would be entitled if FDC were determined to be 100% liable for all fees and costs. The Parties will be entitled to submit competing memoranda on both issues, limited to 35 pages total exclusive of exhibits to be filed at least thirty (30) days in advance of the hearing. The Parties will be entitled

37

to submit up to a 25-page response to the initial memoranda at least ten (10) days in advance of the hearing. The Parties will be entitled to attach supporting evidence to the initial and response memoranda. The hearing itself will consist of (1) argument relating to the liability percentage, (2) an evidentiary hearing relating to the amount of attorneys' fees and costs to which DRF would be entitled if FDC were determined to be 100% liable for all fees and costs, and (3) any other procedures required by the court in its discretion.  The only evidence that will be presented and considered at the hearing will be the testimony of the respective Parties' expert on fees and costs, any documentary evidence on which the respective experts rely, and any exhibits submits with the memoranda. Subsequent to the hearing, the amount of fees and costs to be awarded to DRF will be determined by multiplying the amount of fees and costs to which DRF would be entitled if FDC were determined to be 100% liable for all fees and costs as determined by the court during the evidentiary component of the hearing by the liability percentage determined by the court on the basis of the Parties' memoranda and argument.

In the event of a breach of contract action, the Parties agree that DRF shall be entitled to its reasonable attorneys' fees and expenses if a state court finds FDC significantly breached this Agreement. If either Party appeals a decision from said breach of contract action, FDC agrees to pay DRF's reasonable attorneys' fees and expenses for the appeal if DRF prevails on the appeal.

Signature Page to Follow.

IN WITNESS WHEREOF, the Parties to this Settlement Agreement have executed the same as of 8th day of November, 2021.

**FLORIDA DEPARTMENT OF CORRECTIONS**

**By:    Sean Anderson**
**Assistant General Counsel**

**DISABILITY RIGHTS FLORIDA**

**By:    Peter Sleasman**
**Executive Director**

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| **Wakulla CI** (Interpreters) | B | All | Faith and Character | OB | |
| | C | 1, 2 | Faith and Character | OB | Light Board, Video Enabled Device, AHA |
| | D | All | Faith and Character | OB | |
| **Wakulla-Annex** (Interpreters) | | | | | |
| | J | 1, 2 | Confinement | SC | AHA |
| | J | 4 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | K | 1, 2 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | L | 1, 2 | Protective Management | OB | Light Board, Video Enabled Device, AHA |
| | M | all | Protective Management | OB | |
| | N | 1, 4 | DTU (Diversionary Treatment Unit) | SC | Light Board, Video Enabled Device, AHA |
| | O | 1, 4 | STU (Secure Treatment Unit) | SC | Video Enabled Device, AHA |
| | P | 1, 4 | Future STU (Secure Treatment Unit) | SC | Video Enabled Device, |
| | Q | 1, 2, | Inpatient/Cognitive | SC | Video Enabled Device, AHA |

**\*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.**
**\*\*Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.**
**Note: all dorms and wings listed must have all accommodations for IVDs and IMDs**

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| | | 3, 4 | | | |
| **Santa Rosa - Main** | | | | | |
| | A | all | General Population | OB | |
| | C | 1, 2, 3 | Close Management | SC | |
| | F | 1, 2, 3 | Close Management | SC | |
| | G | 1, 2, 3 | Close Management | SC | |
| **Santa Rosa - Annex** | | | | | |
| | J | 1, 4 | TCU (Transitional Care Unit) | SC | |
| | K | 1, 4 | Confinement | SC | |
| | M | All | General Population | OB | |
| | N | All | General Population | OB | |
| | O | All | General Population | OB | |
| | P | All | General Population | OB | |
| | Q | 1, 2, 4 | Inpatient | SC | |
| **Santa Rosa WC** Currently closed | | | | | |
| | T | all | General Population | OB | |
| **NWFRC-Main** Interpreters | | | | | |
| | A | All | General Population | OB | Video Enabled Device |

*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
**Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| | B | All | General Population | OB | |
| | D | All | General Population | OB | |
| | E | All | General Population | OB | |
| | G | 1, 4 | Confinement | SC | |
| NWFRC-Annex Interpreters | | | | | |
| | J | 1, 4 | Confinement | SC | AHA |
| | K | 1, 4 | General Population | SC | |
| | L | 1, 4 | General Population | SC | Light Board, Video Enabled Device, AHA |
| | M | 1, 2 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | N | All | General Population | OB | |
| | O | All | General Population | OB | |
| | P | All | General Population | OB | |
| | Q | All | General Population | OB | |
| Gadsden Re-Entry Interpreters | | | | | |
| | B | all | General Population | OB | |
| | C | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| Region 2 | | | | | |
| RMC Main Unit Interpreters | | | | | |
| | C | 1, 2 | General Population | OB | Light Board, Video Enabled Device, |

**\*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.**
**\*\*Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.**
**Note: all dorms and wings listed must have all accommodations for IVDs and IMDs**

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| | | | | | AHA |
| | D | all | General Population | OB | |
| | E | all | General Population | OB | |
| | F | all | General Population | OB | |
| | H | all | Hospital CSU/TCU | RM/SC | Video Enabled Device, AHA |
| | J | all | Dialysis/IMR | OB/SC | Video Enabled Device, AHA |
| | K | 1 | Confinement | SC | AHA |
| | L | all | Cancer/Dialysis | OB | AHA |
| **Union CI** | | | | | |
| | P | 3, 4, 5, 6 | Death Row | SC | AHA |
| | U | All | Close Management | SC | |
| | V | all | Close Management | SC | |
| | T | 1 | Confinement | SC | AHA |
| **Union WC** Interpreters Working to reopen | | | | | |
| | A | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| **Suwannee CI** Interpreters | | | | | |
| | A | 1 | Confinement/YO | SC | |
| | A | 3 | Confinement/YO | SC | Light Board, Video Enabled Device, AHA |

*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
**Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
|  | B | All | General Population | OB |  |
|  | C | all | General Population | OB |  |
|  | D | all | General Population | OB |  |
|  | E | 1, 4 | Close Management | SC | Video Enabled Device, AHA |
|  | F | 1, 4 | Close Management | SC | AHA |
|  | G | 1, 4 | Close Management | SC | AHA |
|  | H | 1, 4 | Inpatient | SC | Video Enabled Device, AHA |
| **Suwannee-Annex** Interpreters |  |  |  |  |  |
|  | I | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
|  | J | All | General Population | OB |  |
|  | K | all | General Population | OB |  |
|  | L | All | General Population | OB |  |
|  | M | 2 | General Population | OB | Light Board, Video Enabled Device, AHA |
|  | N | All | General Population | OB |  |
|  | P | 1, 4 | Confinement | SC | AHA |
| **Suwannee WC** Interpreters Currently closed |  |  |  |  |  |
|  | A | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| **Columbia CI** |  |  |  |  |  |

**\*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.**
**\*\*Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.**
**Note: all dorms and wings listed must have all accommodations for IVDs and IMDs**

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| Interpreters | | | | | |
| | A | all | General Population | OB | Light Board, Video Enabled Device, AHA |
| | H | 1, 2, 3 | Confinement | SC | AHA |
| | Y | 2 | Confinement | SC | |
| | | | | | |
| Columbia-Annex Interpreters | | | | | |
| | N | 1, 4 | Confinement | SC | AHA |
| | O | all | Protective Management | PM | Light Board, Video Enabled Device, AHA |
| | P | all | General Population | OB | Light Board, Video Enabled Device, AHA |
| | Q | 2 | General Population/Pell | OB | Light Board, Video Enabled Device, AHA |
| | R | all | General Population | OB | |
| | S | 1, 4 | General Population | SC | |
| | T | 1, 4 | General Population | SC | |
| | U | 1, 4 | Gen. Pop./Faith and Char. | SC | Light Board, Video Enabled Device, AHA |
| Baker Re-Entry Interpreters | C | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |

*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
**Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| **Region 3** | | | | | |
| **Lake CI** | | | | | |
| | H | all | Inpatient/MHTF | SC | Video Enabled Device, AHA |
| **FWRC** Interpreters | | | | | |
| | A | 1, 4 | Confinement/GP | SC | AHA |
| | B | 1, 4 | Inpatient/MHTF | SC | Video Enabled Device, AHA |
| | C | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | D | all | General Population | OB | |
| | E | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | F | All | General Population | OB | |
| | G | all | General Population | OB | |
| | H | 2 | General Population | OB | Light Board, Video Enabled Device, AHA |
| **CFRC Main Unit** Interpreters | | | | | |
| | A | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | H | 2 | Confinement | SC | AHA |
| **CFRC South Unit** Interpreters | | | | | |
| | A | all | Intensive Medical | RM | Video Enabled Device, AHA |
| | B | all | Palliative Care | SC | Video Enabled Device, AHA |

\*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
\*\*Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| **Lowell CI** Interpreters | | | | | |
| | I | 1 | Pregnant Female | OB | Light Board, Video Enabled Device, |
| | D | all | Intensive Medical | OB | Video Enabled Device, AHA |
| **Lowell-Annex** Interpreters | | | | | |
| | N | all | General Population | OB | Light Board, Video Enabled Device, AHA |
| | O | all | General Population | OB | |
| | P | All | General Population | OB | |
| | Q | all | General Population | OB | |
| | R | all | Faith and Char/Drug Tr. | OB | Light Board, Video Enabled Device, AHA |
| | S | 2 | Confinement | SC | AHA |
| | T | 1, 2, 3, 4 | Close Management | SC | AHA |
| **Zephyrhills CI** | | | | | |
| | J | all | Intensive Medical | OB | AHA |
| | A | all | Intensive Medical/Elderly | OB | AHA |
| **Kissimmee CRC** Interpreters | | | | | |
| | C | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |

**\*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.**
**\*\*Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.**
**Note: all dorms and wings listed must have all accommodations for IVDs and IMDs**

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
| Region 4 | | | | | |
| **SFRC** Interpreters | | | | | |
| | C | 1 | General Population | OB | Light Board, Video Enabled Device, AHA |
| | E | all | Confinement | SC | |
| | F | all | Intensive Medical | OB | Light Board, Video Enabled Device, AHA |
| **SFRC South Unit** Interpreters | | | | | |
| | B | 2 | General Population | SC | Light Board, Video Enabled Device, AHA |
| | C | 1 | General Population | SC | Light Board, Video Enabled Device, AHA |
| **Dade CI** Interpreters | | | | | |
| | A | all | General Population | OB | Light Board, Video Enabled Device, AHA |
| | B | all | General Population | OB | Light Board, Video Enabled Device, AHA |
| | C | All | General Population | OB | |
| | D | all | General Population | OB | |
| | E | all | General Population | OB | |
| | F | 1, 2, 3 | Confinement | SC | AHA |

*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
**Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**REVISED EXHIBIT A**
**ADA Designated Institutions and Dorms**
**November 8, 2021**

| INSTITUTION | DORM | Wing | MISSION | DORM TYPE | Deaf/Hard of Hearing Accommodations |
|---|---|---|---|---|---|
|  | J | 2 | Inpatient | RM/SC | AHA |
|  | J | 4 | Inpatient | RM/SC | Light Board, Video Enabled Device, AHA |
| **Everglades Main Unit** Interpreters |  |  |  |  |  |
|  | B | 1 | General Population – Faith & Character | OB | Bottom Floor Light Board, Video Enabled Device, AHA |
|  | B | 2 | General Population | OB | Bottom Floor Light Board, Video Enabled Device, AHA |
| **Everglades Re-Entry** Interpreters |  |  |  |  |  |
|  | A | 1 | General Population | OB | First room Light Board, Video Enabled Device, AHA |
| **Hollywood CRC** Interpreters |  |  |  |  |  |
|  | C | 1 | General Population | OB | First room Light Board, Video Enabled Device, AHA |

*Alternative Hearing Accommodation (AHA) means TTY, flashing lights, and flash cards.
**Interpreters means Interpreting services are provided at the facility either through on-site interpreters or video remote interpreting, as specified in the Agreement.
Note: all dorms and wings listed must have all accommodations for IVDs and IMDs

**Exhibit E**

1. Regina Turner (H28840)
   a. Requests orthopedic/medical shoes with lift for left foot
   b. Requests wheelchair repair or replacement
   c. Alternatively, if issued walker with seat issued, would not need wheelchair
2. Margaret Burton (Y50128)
   a. Requests a wheelchair for longer distances (to access east side of Lowell).
3. Reginald Grant (900626)
   a. Requests new leg brace
   b. Request orthopedic boots to be replaced
   c. Requests wheelchair wheels repaired or replaced
   d. Requests IA
4. Demetrio Gabriele (638518)
   a. Requests enrollment in a veterans' program or other incentivized program
   b. Requests IA
5. William Vest (E36208)
   a. Requests enrollment in Hadley School for the Blind
   b. Requests orthopedic shoes to be replaced
   c. Requests wheelchair cushion
   d. Requests enrollment in a veterans' program
6. Larry Kendrick (392168)
   a. Requests enrollment in Hadley School for the Blind
   b. Requests IA
7. Marlon Valladares (198261)
   a. States white cane too short – requests replacement for one that goes to shoulders
8. William Moody (076154)
   a. Requests cane
   b. Requests wheelchair leg rests
   c. Requests orthopedic boots to be replaced
   d. Requests AFO brace
9. Cleveland Weaver (795809)
   a. Requests enrollment in Hadley School for the Blind
   b. Requests enrollment in incentivized program
   c. Requests IA
10. Lee Anderson (748317)
    a. Requests IA
11. Ray Crosby (711497)
    a. Requests enrollment in Hadley School for the Blind
    b. Requests IA
12. Robert Landreth (123798)
    a. Requests white cane
    b. Requests knee brace
    c. Requests orthopedic shoes with ankle supports

      d.  Requests wheelchair to be repaired or replaced
      e.  Requests wheelchair cushion
      f.  Requests enrollment in Hadley School for the Blind
      g.  Requests IA

13. Daniel Teneyck (H16212)
      a.  Requests enrollment in veterans' program or incentivized program
      b.  Requests enrollment in talking book program
      c.  Requests IA

14. Robert Brown (821163)
      a.  Requests enrollment in Hadley School for the Blind
      b.  Requests enrollment in incentivized program
      c.  Requests IA

15. Mandy Allen (Q13295)
      a.  Requests a wheelchair for long distances
      b.  Requests evaluation for leg braces
      c.  Requests IA
      d.  Requests bilateral hearing aids

16. Willie Davis (865355)
      a.  Requests enrollment in incentivized program (requests Everglades CI)

17. William Hubbard (T18410)
      a.  Requests IA

18. Kenneth Rickerson (319515)
      a.  Requests IA

19. Karen Blosser (155115)
      a.  Requests bilateral hearing aids

20. Robert Buchanan (148504)
      a.  Requests bilateral hearing aids

21. Dennis Deal (T20922)
      a.  Requests one hearing aid repaired or replaced
      b.  Requests rollator/walker with seat

22. Samuel Hart (079419)
      a.  Requests bilateral tinnitus hearing aids
      b.  Requests Sound Oasis Tinnitus device

23. Charles Johnson (708524)
      a.  Requests enrollment in PRIDE or similar program

24. Betty Kirk (721594)
      a.  Requests bilateral hearing aids

25. Vinal Lovely (65397)
      a.  Requests shower chair and seat
      b.  Requests IA

26. Beaver Reed (698664)
      a.  States bilateral hearing aids do not work and requests repair or replacement

27. James Roughton (114753)

     a.  Requests wheelchair gloves

     b.  States bilateral hearing aids do not work and requests repair or replacement

     c.  Requests IA

28. Dawn Ruff (154123)

     a.  Requests bilateral hearing aids

29. Scott Sheheane (G19948)

     a.  Requests one hearing aid repaired or replaced

30. David Stanley (139173)

     a.  Requests bilateral hearing aids to be repaired or replaced

31. Jack Thomas DC# 665331

     a.  Requests IA

32. Jose Oquendo DC# D86506

     a.  Requests his custom fitted brace be repaired or replaced

33. Andy Fontaine DC# 148904

     a.  Requests a new wheelchair

34. Jimmy Davis DC# 212933

     a.  Requests IA

35. Jason Kilpatrick DC# L92312

     a.  Requests a white cane

     b.  Requests a key lock

     c.  Requests tinted prescription glasses

     d.  Requests enrollment in talking book program

     e.  Requests enrollment in Hadley School for the Blind

36. Carl Johnson DC# 698769

     a.  Requests IA

37. Bruce Webber DC# 711902

     a.  Requests white cane

     b.  Requests enrollment in talking book program

     c.  Requests key lock

     d.  Requests enrollment in Hadley School for the Blind

     e.  Requests IA

38. Robert Cronin DC# K62309

     a.  Requests IA

39. Jose Canales, DC# 783993

     a.  Requests orthopedic shoes

     b.  Requests walker to be repair or replaced

40. Ronald Barker, # C11716

     a.  Requests bilateral hearing aids

     b.  Requests a magnifying sheet

41. John Casey, # 308188

     a.  Requests back brace

     b.  Requests walking cane

42. Charles Sanmann, # 089392

    a.   Requests wheelchair
43. David Belle, # S30291
    a.   Requests shower chair
44. Robert Barnason, # 063503
    a.   Requests enrollment in talking book program
    b.   Requests bilateral hearing aids
    c.   Requests walker
45. Melvin Thompson, # 959252
    a.   Requests IA
46. Donald Metzler, # C40098
    a.   Requests IA
47. Albert Salter (827143)
    a.   Requests IA
48. Robert Webb (I30445)
    a.   Requests IA